

1  Deron A. Kartoon  (State Bar No. 155925)
2  Law Offices of Deron A. Kartoon
   3 Francis Drake Boulevard
3  P.O. Box 1403
   Ross, CA 94957
4  Telephone: (415) 786-7737
5  Fax: (415) 453-3485
   Email: deron.kartoon@gmail.com
6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT
9                  NOTRTHERN DISTRICT OF CALIFORNIA

10

11  Thomas ("Leroy") A. Spitzer, and        ) Docket No.
    Craig J. Spitzer,                        )
12                                           )  **CV 13 5442**
            Plaintiffs                       )
13                                           )
                                             )
14         vs.                               )
                                             )
15                                           ) COMPLAINT FOR DAMAGES
                                             ) FOR VIOLATION OF CONSTITUTIONAL
16                                           ) AND STATE STATUTORY RIGHTS;
    Trisha A. Aljoe, Jonathan P. Lowell,     ) DEMAND FOR JURY TRIAL
17  George Thomas, Walter Wickboldt,         )
    City of Pleasanton, City of Pleasanton   )
18  Police Officer Does 1-10,                )
    and Other Does 1-10, inclusive           )
19                                           )
                                             )
20         Defendants                        )
                                             )
21  _____ )

22

23                          **JURISDICTION**

24      1. This a civil action to redress the deprivations under color of statute, ordinance,

25  regulations, custom or usage of rights, privileges, and immunities secured to plaintiffs by the

26  14th Amendment to the Constitution of the United States, namely their rights under the 1st, 4th

27  and 14th Amendments of the United States Constitution. This court has subject matter

28  jurisdiction under 42 USC § 1983, and 28 USC §§ 1331 and 1343(a)(3).

1    2. Plaintiffs further invoke the jurisdiction of this court under 28 USC § 1367(a) to hear
2    and decide claims arising out of the Constitution and laws of the State of California and the
3    City of Pleasanton. Plaintiffs filed a timely claim with the City of Pleasanton pursuant to the
4    California Government Claims Act on Feb 19, 2013. The City of Pleasanton did not serve
5    notice of rejection, thereby extending the time to file a claim in a court of law from 6 months
6    from the date of rejection to 2 years from accrual of the action. This Complaint is, therefore,
7    timely under the California Government Claims Act.

8
9                                **INTRADISTRICT ASSIGNMENT**

10   3. The location of the events of this action are in Alameda County, California, and
11   plaintiffs believe that the residences of the defendants are also in Alameda County. It,
12   therefore, appears that either the San Francisco or the Oakland Divisions of the Northern
13   District of California are proper venues under the local rules.

14
                                        **PARTIES**
15
                                        **Plaintiffs**
16
     4. Plaintiff Thomas ("Leroy") A. Spitzer and plaintiff Craig J. Spitzer (jointly "the
17
     Spitzers") are citizens of the United States by birth, and at all times relevant to the complaint
18
     were citizens of the State of California residing in Alameda or San Mateo, and San Francisco
19
     Counties respectively.
20
     5. The Spitzers are co-owners of the subject single family residence ("house") located at
21
     4719 Orangewood Court in the City of Pleasanton, California. The house has never been rented
22
     and never had tenants.
23
     6. Plaintiff Craig J. Spitzer ("Craig") is the son of Leroy. Craig inherited his interest in
24
     the house from his mother, Leroy's wife, who is deceased. Craig did not reside in the house at
25
     any time relevant to the subject matter of this complaint, and only a few things stored at the
26
     house were his personal property.
27
     7. Plaintiff Leroy is 74 years old, is the original owner of the house, and resided in it
28

                                           2

1   continuously from the time he and his wife first purchased it. Leroy is a certified welder with
2   multiple certifications, he has multiple skills and much knowledge in the mechanical arts. He
3   has always had, stored, and used at his house the parts, supplies, and tools necessary for the
4   exercise of his skills.

**Defendants**

6       8. Defendant City of Pleasanton is a municipal corporation of the State of California.

7       9. At all times relevant to this complaint, defendant Trisha A. Aljoe ("Aljoe") was an
8   agent and employee acting as Special Counsel, legal adviser, and consultant for the City of
9   Pleasanton on code enforcement and building code matters. Defendant Aljoe is sued in both her
10  personal and official capacities.

11      10. At all times relevant to this complaint, Defendant Jonathan P. Lowell ("Lowell")
12  was an agent and employee of the City of Pleasanton with the title of City Attorney. Defendant
13  Lowell is sued in both his personal and official capacities.

14      11. At all times relevant to this complaint, defendant George Thomas ("G. Thomas")
15  was an agent and employee of the defendant City of Pleasanton with the title of Chief Building
16  and Safety Official. Defendant G. Thomas is sued in both his personal and official capacities.

17      12. At all times relevant to this complaint, defendant Walter Wickboldt ("Wickboldt")
18  was an agent and employee of the City of Pleasanton with the title of Senior Code Enforcement
19  Officer. Defendant Wickboldt is sued in both his personal and official capacities.

20      13. At all times relevant to this complaint, City of Pleasanton police officers Does 1-10
21  were agents and employees of the City of Pleasanton. The true identities of the Defendant Doe
22  police officers are unknown to Plaintiffs because the Pleasanton Police Department has
23  repeatedly refused to release to the Spitzers the records of their arrest, and the Spitzer believe
24  that further requests for records would have been futile. Defendant Doe police officers are sued
25  in both their personal and official capacities.

26      14. At all times relevant to this complaint, Defendant other Does 1-10 were agents
27  and/or employees of the City of Pleasanton, and/or co-conspirators with City agents and
28  employees. The true names of these Doe defendants are unknown to the plaintiffs because their

identities can only be determined through discovery. Defendant other Does 1-10 are sued in both their personal and official capacities.

## CLAIMS FOR RELIEF

## PRELIMINARY STATEMENT OF CLAIMS

15. The following claims involve the defendants' conduct under color of law while seeking abatement of alleged dangerous State Housing Law violations in the Spitzers' house and property. The defendants pursued the abatement by unlawful means, and did so pursuant to multiple unlawful acts of an overall unlawful conspiracy, causing violations of the Spitzers' Constitutional, State statutory, and Pleasanton Municipal Code rights, and damages to the plaintiffs. The defendants knew that their actions were unlawful and would violate the Spitzers' Constitutional and statutory rights, and the actions and conduct of the individual defendants was the result of a policy, custom, and deliberate indifference on the part of defendant City of Pleasanton, and deliberate indifference on the part of the individual defendants.

## 1ST CLAIM

**Unlawful Seizure of, and  Unlawful Conspiracy to Seize and deprive Plaintiff Thomas Spitzer of his Vehicle**

Defendants Aljoe, Lowell, Pleasanton police officer Doe 1, other Does 1-10, and
City of Pleasanton

16. The plaintiff Spitzers incorporate by reference in this 1st Claim each and every allegation contained in the following Claims and in ¶¶ 1–15 and 28-94 of this Complaint, as though fully set forth herein.

17. On August 23, 2011 the City of Pleasanton ("City") entered into a written agreement with defendant Trisha A. Aljoe ("Aljoe").  Aljoe agreed, by this written agreement, to assist the City Attorney's Office in code enforcement and building code matters, and provide legal advice as well as litigate abatement actions as Special Counsel for the City.

18. On or about October 21, 2011, Aljoe obtained and executed an inspection warrant to enter the single family residence of plaintiff Thomas A. Spitzer ("Leroy")(Thomas Spitzer's

1   nickname is used to unambiguously distinguish plaintiff Thomas A. Spitzer from defendant
2   George Thomas). An inspection of the Spitzer house was made on or about this date by
3   defendant City staff including, but not limited to, defendant City of Pleasanton Senior Code
4   Enforcement Officer, Walter Wickboldt ("Wickboldt"), and defendant Chief Building and
5   Safety Official, George Thomas ("G. Thomas").

6       19. On or about Nov 11, 2011, plaintiff Leroy's Red Mazda pickup truck ("Mazda")
7   was ordered towed by an officer of the City of Pleasanton Police Department ("Police
8   Department") while it was parked in front of Leroy's house at 4719 Orangewood Court in the
9   City of Pleasanton, California. Leroy was not present when it was towed.

10      20. On or about Nov. 11, 2011, Leroy went to the Police Department to pay the
11  normally required fees in order to get the normally given release to pick up his Mazda from the
12  storage yard where it had been taken and stored.

13      21. Leroy was told by Police Department employees at the Police Department that his
14  Mazda couldn't be released, and to come back later to talk to defendant police officer Doe 1
15  who was not then available. Leroy's recollection of the name given by Police Department staff
16  for Doe 1 was "Lt. Leone." Such a name, however, could not be found in public records of the
17  Pleasanton Police Department. Doe 1's true and correct identity is, therefore, unknown.

18      22. Leroy did come back to the Police Department, and called the Police Department
19  asking for Doe 1 repeatedly over a period of over one week, but Doe 1 was either not in or
20  unavailable.

21      23. When defendant Doe 1 was finally in and available at the Police Department, he
22  came out to the front desk area, where Leroy was standing and waiting. Doe 1 had a file in one
23  hand and a paper in his other hand. He said that he couldn't release Leroy's Mazda because it
24  had been "abated," and waved the paper in his hand saying "we sent you a letter," as if it was
25  the authority for his statement, but he did not show the letter to Leroy.

26      24. Leroy never received a notice or order from the City stating that his Mazda was
27  subject to an order of abatement.

28      25. As a consequence of his inability to obtain a release, Leroy lost possession of his

5
COMPLAINT

1   Mazda pickup permanently on 12/15/11 by its sale by the storage company that had towed and
2   stored it.

3          26. Leroy has been damaged by the taking of his private property by the defendants, and
4   by the loss of the use of his Mazda pickup truck which he needed to carry out the ordered
5   abatement.

6          27. On the basis of the totality of the facts alleged and incorporated herein by reference,
7   the plaintiff Spitzers claim the following:

8          a. The seizure and sale of Leroy's Mazda was unlawful, and in violation of the 4th and
9   14th Amendments of the United States Constitution, and Articles 1, 7, and 13 of the California
10  Constitution, and the laws of the State of California.

11         b. Defendants Aljoe, Lowell, Doe 1, and other Does 1-10 jointly acted, and agreed or
12  had meeting of the minds to unlawfully seize and abate Leroy's Mazda without notice, process,
13  or hearing, and did so as one among multiple unlawful acts alleged herein of an overall
14  unlawful conspiracy to deprive the Spitzer's of their rights, privileges and immunities secured
15  by the Constitution and laws of the United States, the State of California, and the City of
16  Pleasanton.

17         c. Defendants Aljoe, Lowell, Doe 1, and other Does 1-10 knew that their actions would
18  deprive Leroy of his Constitutional and State statutory rights.

19         d. Defendants Aljoe, Lowell, Doe 1, and other Does 1-10 maliciously, and in bad faith
20  pursuant to improper motive, unlawfully seized, and abated Leroy's Mazda without notice,
21  process, or hearing, and did so with deliberate indifference to Leroy's Constitutional and State
22  statutory rights.

23         e. Leroy's Mazda vehicle was seized, and abated unlawfully pursuant to policy, custom,
24  or practice of the City of Pleasanton.

25                                    **2ND CLAIM**

26  **Denial of, and Conspiracy to Deny the Spitzers their Procedural Due Process Rights**
27        Defendants Aljoe, Lowell, G. Thomas, other Does 1-10, and City of Pleasanton

28

28. The plaintiff Spitzers incorporate by reference in this 2nd Claim each and every allegation contained in the foregoing and following Claims and in ¶¶ 1–27 and 37-94 of this Complaint as though fully set forth herein.

29. On Dec. 1, 2011, a Notice and Order to Repair and Abate the Spitzer house ("Notice and Order") was issued by defendant G. Thomas ordering the Spitzers to "Vacate Immediately" and "Repair or Demolish and Abate." The Notice and Order to Repair And Abate included notice that "occupying or entering the building, or any portion thereof **will** result in the arrest of the occupants for a misdemeanor violation of the Pleasanton Municipal Code and the State Building Standards Code" (emphasis in original).

30. On or about Dec. 1, 2011, the first of multiple "red tag" notices was posted on the house stating in large bold capital letters "**DO NOT ENTER OR OCCUPY**" (emphasis in original).

31. Leroy has been homeless since the date the Notice and Order was issued. For awhile he lived in his car, then he lived with his son plaintiff Craig until they both were evicted due to the death of the owner, and sale of the property his son rented and resided in. Leroy now lives in a motorhome without utilities, owned by a friend and parked in a storage yard. Leroy has also lost possession and use of substantial amounts of his valuable personal property and family memorabilia stored at the house that he was not permitted to vacate, and the Spitzers have been denied the right to repair and abate the violations themselves with the help of their friends.

32. After the time period for abatement and repair had expired no hearing was had or called by G. Thomas as required by Pleasanton Municipal Code § 20.32.020.4.01B6 which requires that G. Thomas, the defendant City Building and Safety Official, "shall call and have a full and adequate hearing upon the matter" after the time period has expired.

33. Instead of G. Thomas calling the required hearing, on Feb. 3, 2012, defendant Aljoe sent the Spitzers a "Final Notice" and "Demand to Abate" stating that legal action would be commenced upon failure to comply with the letter's demands by February 15, 2012.

34. On Aug. 3, 2012 the City filed a Petition to Appoint a Receiver. Defendant Aljoe was listed as Special Counsel for the City on the title page under the name of defendant City

1  Attorney Lowell. Aljoe signed the Petition under the name of defendant Lowell.

2      35. No administrative hearing was had on the Notice and Order to Repair and Abate.

3      36. On the basis of the totality of the facts alleged and incorporated herein by reference,

4  the plaintiffs claim the following:

5      a. The failure to hold the administrative hearing on the Notice and Order required and

6  guaranteed by the Pleasanton Municipal Code violated the 4th and 14th Amendments of the

7  United States Constitution, and Articles 1, 7, and 13 of the California Constitution, and the

8  Pleasanton Municipal Code.

9      b. Defendants Aljoe, Lowell, G. Thomas, and Does 1-10 jointly acted, and agreed and

10  had a meeting of the minds to unlawfully deprive the Spitzers of the administrative hearing, and

11  did so as one of among multiple unlawful acts alleged herein of an overall unlawful conspiracy

12  to deprive the Spitzer's of their rights, privileges and immunities secured by the Constitution

13  and laws of the United States, the State of California, and the City of Pleasanton.

14      c. Defendants Aljoe, Lowell, and other Does 1-10 knew that their actions would deprive

15  Leroy of his Constitutional and State statutory and Municipal rights.

16      d. Defendants Aljoe, Lowell, and other Does 1-10 maliciously, and in bad faith

17  pursuant to improper motive, unlawfully deprived the Spitzers of their procedural due process

18  rights, and did so with deliberate indifference to Leroy's Constitutional and State statutory and

19  Municipal rights.

20      e. The Spitzers were unlawfully denied their procedural due process rights pursuant to

21  policy, custom, or practice of the City of Pleasanton.

22

## 3RD CLAIM

23

**Unlawful Seizure, and Unlawful Conspiracy to Seize and Deprive the Spitzers of Rightful**
24  **Possession of their House and Personal Property by Denial to the Spitzers of Entry into**
    **their House Necessary to Accomplish the Spitzer's Lawful Objectives of Vacating and**
25  **Accessing Personal Property in the House, and of Doing the Work Required to Abate the**
26                        **Violations in the House.**

27  Defendants Aljoe, Lowell, G. Thomas, Wickboldt, Pleasanton police officers Does 1-3,
                    other Does 1-10, and City of Pleasanton

28

1    37. The plaintiff Spitzers incorporate by reference in this 3rd Claim each and every
2    allegation contained in the foregoing and following Claims and in ¶¶ 1-36 and 80-94 of this
3    Complaint as though fully set forth herein.

4    38. Upon receiving the forgoing Notice and Order, plaintiff Leroy vacated his person,
5    but not his personal property from the house, and immediately hired a contractor to replace the
6    roof that had been cited in the Notice and Order.

7    39. Leroy also went to the office of defendant G. Thomas to talk to him about the
8    Notice and Order, and his valuable personal property he stored in his house. Its storage there
9    was a cause of multiple cited State Housing Law Violations that constituted an alleged danger,
10   and its removal was necessary to correct them, and to make entry to the house, and repairs to
11   the house possible.

12   40. G. Thomas told Leroy that "if you need more time, just come in and ask." When the
13   Spitzers did soon ask for more time, however, they were denied more time by G. Thomas.

14   41. In spite of the threats of arrest if they entered the house, the Spitzers initially made
15   several attempts to vacate Leroy's personal property from the house, which was coincidentally
16   work to correct the cited violations, but each time they did so, the City posted another dated red
17   tag on the front door of the house.

18   42. After this occurred, plaintiff Craig J. Spitzer ("Craig") visited the office of
19   defendant G. Thomas to ask for a permit to enter the house, but was denied a permit, because
20   G. Thomas said, he would not issue a permit until the interior of the house could be entered and
21   inspected. This paradoxically required entry into the house which was not permitted under
22   threat of arrest. Consequently the Spitzers were not permitted to correct the cited violations in
23   the house.

24   43. The order not to enter the house under threat of arrest, and the posting of the
25   multiple red tag notices after the Spitzers entered the house to vacate it of Leroy's personal
26   property, and G. Thomas' refusal to permit the Spitzers to enter the house, chilled the exercise
27   of the Spitzers' right to enter the house to remove and vacate Leroy's Personal property, and to
28   do the work required to correct the violations, and coerced them to forego their right to do so.

9

1    44. In March, in response to an email from a frustrated plaintiff Craig, a national TV

2  producer offered to pay for the entire clean-up of the Spitzer house, but the City and Aljoe, who

3  were informed of this offer by a call to the city by the producers, stated there "was not enough

4  time" to allow the producers to abate the conditions using a TV show.

5    45. The Spitzers, however, did enter the house some time in July 2013 with the

6  determination to work continuously until it was vacated of Leroy's personal property in spite of

7  the threat of arrest for doing so. The Spitzer's determination was stimulated by the defendant

8  City's service of its statutory notice of its petition to appoint a receiver to take possession of the

9  Spitzers' house.

10    46. In response to the foregoing notice, Leroy obtained the necessary help of several of

11  his friends who he had entreated to help him because, as Leroy told them, he was threatened

12  with losing his house. They and Leroy, worked continuously and vigorously, to remove the

13  valuable items Leroy had stored in the house, and transport them by truck to a rented storage

14  unit. This was work well beyond the capacity of Leroy, aged 73 at the time, to do himself.

15    47. On Aug. 3, 2012 the City filed a Petition to Appoint a Receiver. Defendant Aljoe

16  was listed as Special Counsel for the City on the title page under the name of defendant City

17  Attorney Lowell. Aljoe signed the Petition, under the name of Lowell, as was done in all the

18  City's court filed papers.

19    48. The Petition filed by the City, and signed by and presumed to be verified by Aljoe

20  under California law, pleaded "the posting (red-tag) of a notice prohibiting entry and advising it

21  is a misdemeanor to enter or occupy the building."

22    49. On Aug. 9, 2012, while Plaintiff Leroy and his helper friends were working

23  removing Leroy's valuable stored items from the house, defendant Wickboldt appeared at the

24  property carrying a red tag containing the printed warning "Do Not Enter. " He stated to them

25  that "We have discussed this and decided to post this red tag."

26    50.  Leroy and his helper friends discussed the posting of the red tag by Wickboldt and

27  decided to continue working to remove Leroy's personal possessions from the house and risk

28

1 arrest for doing so, but decided to work from the back entrance to the house instead of the front
2 entrance as they had previously been doing.

3      51. Shortly after defendant Wickboldt posted the red tag on Aug. 9, on Aug 14,
4 defendant Aljoe gave notice to Leroy of an ex parte hearing to appoint a receiver. Suddenly
5 nearly nine months after the Notice and Order was issued, and after the Spitzers had begun to
6 make substantial progress in abating the cited violations in the face of threats of arrest for doing
7 so, the Spitzer house and property became an alleged emergency in need of summary
8 appointment of a receiver. The use of the ex parte procedure, instead of a noticed motion was a
9 tactical ploy by defendants to gain an unfair advantage over unrepresented parties.

10      52. At the time defendant Aljoe gave Leroy verbal notice by telephone of the City's ex
11 parte hearing to appoint a receiver she stated to him that "you have an expensive piece of
12 Property."

13      53. The Spitzer's are informed and believe, based on a recent appraisal that their house
14 is currently valued at $650,000-700,000, as is. There is no outstanding mortgage.

15      54. The Spitzers are further informed and believe, on the basis of a printed news report
16 about receivership actions quoting defendant Aljoe, that the value of their house was a
17 significant motive for the defendants' decision to petition to appoint a receiver, instead of other
18 less expensive, and more equitable alternatives, and to deny the Spitzers their right to do the
19 work themselves with the help of their friends, as alleged and adopted and incorporated herein,
20 because sale of the house could be used to pay for the City's expenses, including consultant and
21 attorney fees payable to Aljoe.

22      55. On Aug 23, 2012, a hearing on the City's Ex Parte Application for Appointment of
23 Receiver was held. By this time, virtually all of the valuable items Leroy had stored in the
24 house had been removed, and only household related items remained. This removal made entry
25 to all rooms of the house possible.

26      56. The judge considered the matter and denied the City's Ex Parte Application to
27 appoint a receiver in chambers, but issued an order to show cause why a receiver should not be

28

11
COMPLAINT

1  appointed. The Ex Parte court's Order contained the order that the City's Reply to the Spitzer's

2  Response "is waived."

3      57. After the judge's decision was announced in the courtroom by the courtroom clerk,

4  and before the judge's order was issued, defendant Aljoe asked the clerk to ask the judge to

5  grant a restraining order, restraining the Spitzers from entering the house. The clerk left the

6  courtroom then returned and reported to Aljoe that her request was denied.

7      58. After her request was denied, defendant Aljoe approached Leroy and one of his

8  helper-friends named Tom Jensen who attended the hearing, and loudly and emphatically stated

9  to them "I don't want to hear anything more about you entering the house. If you enter the

10  house again, I will have you arrested." Aljoe made a similar threat to plaintiff Craig Spitzer.

11     59. On Aug. 24, the day after the hearing on the Ex Parte Application, defendant

12  Wickboldt sent the Spitzers a letter "Re: Notice of Scheduled Inspection" stating that "The city

13  of Pleasanton has scheduled an inspection of your property to evaluate current condition of the

14  interior and exterior as it relates to compliance with the Notice and Order issued December 1,

15  2011."

16     60. In Response to defendant Wickboldt's letter, Leroy called Wickboldt and asked him

17  to delay the inspection because the interior of the house was not in the condition yet to be

18  properly inspected because the clean-up of the interior was not yet completed and the interior

19  of the house was generally in a state of disarray because of the unfinished clean-up.

20     61. Defendant Wickboldt and two defendant Pleasanton police officer Does 2 and 3

21  showed up at the property on or about the next day. The defendant Doe police officers told

22  Leroy and his helper-friends who were present that entering the house was a misdemeanor and

23  if anyone entered the house they would be arrested.

24     62. When Leroy's helper-friend, Tom Jensen, who was present objected that they had a

25  right to enter and vacate the house of Leroy's personal possessions and clean it up enough to

26  make inspection meaningful, and repair possible, the defendant Doe police officers said that the

27  only circumstance they would recognize as lawful entry was a court order permitting it.

28

12

COMPLAINT

63. In response to Tom Jensen's question about who sent him, Wickboldt admitted that defendant Aljoe had ordered him to make this threat to them.

64. As the result of this threat, Leroy and his helper-friends did not enter the house, which they were forced to leave in a state of interrupted work and disarray under threat of arrest. Instead they worked outside and cleared the side areas of the house and corrected the cited violation of lack of emergency ingress and egress through the side yards. This work, the previous replacement of the roof, and the removal of Leroy's stored items from the house that prevented entry, and Leroy's vacation of his person from the house substantially corrected the alleged dangerous State Housing Law violations before the order to show cause hearing on the appointment of the Receiver.

65. On or about Aug. 27, 2012, defendants G. Thomas and Wickboldt conducted the scheduled inspection of the Spitzer house and property. While Wickboldt and G. Thomas were inspecting the exterior of the house, one of them said to Leroy's helper-friend Tom Jensen who was present and working, "You've done a lot of work." Tom Jensen responded that "yes" he had, and that he had personally done a lot of the work.

66. The so-called Courtesy Building Inspection Report authored by defendant G. Thomas that resulted from this inspection stated that "Craig Spitzer requested that we perform a courtesy building inspection in order to establish the basis for obtaining a building permit to abate the hazardous conditions ...." This was a false and misleading statement, because it was defendant Wickboldt's Aug. 24 letter that had initiated the inspection, not the Spitzers, there had been the coercion of Aljoe and Pleasanton Police officers which had prevented further clean-up of the house before its inspection, and a building permit was not required to vacate and clean-up the interior of the house.

67. Shortly after the inspection, defendant Wickboldt and Pleasanton police officer Doe 4 came to the property while Leroy and his helper-friends were working. Wickboldt and police officer Doe 4 entered the property without a warrant and without verbal permission to enter. Wickboldt put white tape on the back entrance to the house and said that if it was broken it would serve as evidence of unlawful entry into the house. The white tape promptly fell off.

1

2

3

68. Defendant Wickboldt returned again several days later and stapled black tape over the entrance. Wickboldt again entered without a warrant and without verbal permission to enter.

4

5

6

7

8

9

10

69. On Sep. 5, 2012, the Spitzers filed a Sworn Response to Order to Show Cause. Their Response included written and photo evidence of the extensive clean-up work that they had done to the interior and exterior of the house, showing and evidencing that the roof had been replaced, that the side and back yards adjacent to the house were clean and clear, and that emergency ingress and egress through them was unimpeded, and that the interior of the house had been cleared of stored items, making entry and inspection possible, thereby correcting or substantially correcting the truly dangerous cited violations.

11

12

13

14

70. The Spitzer's Response also complained that they had been barred from entry to the house under threat of arrest since the Notice and Order had been issued, and threatened with arrest at the ex parte hearing by the City's Special Counsel if they entered the house to do any further work.

15

16

17

18

19

20

71. The court's tentative ruling issued on 9/10/2012 stated, among other things, that "Pleasanton is to be prepared to address whether the Spitzers were permitted to enter the building to make repairs …, [and] the Spitzers are to permit Pleasanton to enter the property and to take photographs regarding the current status of the property. On or before Sept. 17, 2012, the parties may submit declarations with current information regarding the status of the property."

21

22

23

24

25

72. At the order to show cause hearing, the defendant City by the act of defendants Aljoe and Lowell served and filed the Petitioner's Supplemental Declaration of George Thomas; Exhibits ("Supplemental Declaration") to the Spitzers in the courtroom. This document was a complete surprise to the Spitzers, and was in violation of the Order to Show cause which stated that a reply by the City "was waived."

26

27

73. The City by the acts of Aljoe and Lowell also presented a surprise witness in violation of California Rules of Court who testified falsely that the Spitzers could not lawfully

28

14

COMPLAINT

transport usable household chemicals that had been stored at the house.

74. The title page of Petitioner's Supplemental Declaration, signed by Aljoe contained her statement that "The observations and photographs are in direct contradiction to the respondents' claims they have abated the violations," and the Declaration of Thomas stated that there had been a "complete lack of meaningful abatement activities."

75. Defendants Aljoe's and G. Thomas' foregoing statements are false and misleading and were a fraud on the Court by officers of the court Aljoe and Lowell on the following bases:

a. Leroy and his helper-friends had, in fact, engaged in "meaningful abatement activities" by replacing the roof, by making entry into and inspection of the interior of the house possible, and by making ingress and egress through the side yards possible. These were the only truly dangerous cited conditions under the State Housing Law, and they had been substantially corrected before the order to show cause hearing.

b. Defendants G. Thomas' and Wickboldt's own photo Exhibits showed that the stairway and the entry area of the house had been completely cleared and that someone was inside and inspecting one of the rooms. These Exhibit photos, therefore, showed that entry into the house was no longer blocked as the City had alleged it had been in its Petition.

76. Defendants Aljoe's and G. Thomas' statements further misrepresented the facts by the following omissions.

a. The spitzers had been barred from entering the house under threat of arrest since the Notice and Order had been issued.

b. The City had denied the Spitzers the opportunity to have the house cleaned up at no cost by a TV producer.

c. The Spitzers had been barred from working in the house under threat of arrest by and through Aljoe and Wickboldt since the Ex Parte hearing.

d. Leroy and his helper-friends had been working diligently cleaning-up the interior and exterior of the house, and had "done a lot of work," which the defendants knew was true.

e. But for the interruption of the clean-up work of the interior of the house by the

defendants' threats of arrest, the clean-up work of the interior of the house would have been substantially finished by the time of the order to show cause hearing.

77. The defendants' false representations that the Spitzers had not engaged in any "meaningful abatement activities," and the surprise witness' false allegation that the Spitzers could not transport useable household chemicals were material bases of the order appointing the Receiver, and denial of the Spitzers' request to be permitted to finish the clean-up work instead of a receiver being appointed which was an option specifically permitted by the State Housing Law.

78. Leroy sent two letters to defendant Pleasanton City Attorney Lowell, with copies of the first sent to the Pleasanton City Manager, and copies of the second letter sent to the City Manager and the Mayor of the City of Pleasanton. These letters contained Leroy's complaints about the foregoing described conduct of Defendants Aljoe, G. Thomas, and Wickboldt. Attached to the letters were evidence of the complained of misconduct. Leroy has not received a response to these letters.

79. On the basis of the totality of the facts alleged and incorporated herein by reference, the plaintiffs claim the following:

a. The seizure of the Spitzer house and Leroy's personal property contained in it, was unreasonable, arbitrary, capricious, unlawful, and pursuant to the fraudulent purpose of preventing the Spitzers from correcting the violations because:

(1) There was no reasonable basis to bar entry to the house for the purpose of the vacation of the house of Leroy's personal possessions and for work not requiring a permit to correct the cited violations.

(2) This work was permitted and protected by the City's Municipal Code § 20.32.020.7.03 as a "necessary act preliminary to or incidental to" repair of the house. It was also work by an owner and his agents permitted as of right by the State Housing Law under California Health and Safety Code § 17971.

(3) The City's Notice and Order forbidding entry under threat of arrest and its Red Tags stating Do Not Enter interfered with the Spitzer's ability to remove and vacate

Leroy's personal property from the house, and to perform the work necessary to correct the violations, and coerced them to forego their right to do these things.

(4) The threats by Aljoe, and by Wickboldt and Pleasanton police officers, were made for the fraudulent purpose of preventing the Spitzers from correcting the violations.

(5) Defendants Aljoe and the City acted pursuant to the improper motive and fraudulent purpose of depriving Leroy of his residence, and taking and selling the Spitzer house to pay for the City's and Aljoe's consultant and attorney fees.

(6) The work the Spitzers had done to correct the violations were misrepresented to the court by fraudulent means.

(7) But for the foregoing acts by defendants, the Spitzers, with the substantial help from Leroy's friends who came to his aid, could have and would have been able to correct the cited violations.

b. The Spitzer's house and Leroy's personal property contained in it were unlawfully seized by denial to the Spitzers of entry necessary to accomplish the Spitzer's lawful objectives of vacating the house of Leroy's personal property, to do the work required to abate the violations, and to receive the help of their friends in doing so in violation of the 1st, 4th and 14th Amendments of the U. S. Constitution, Articles 1, 7 and 13 of the California Constitution, California Health & Safety Code § 17971, and City of Pleasanton Municipal Code § 20.32.020.7.03.

c. Defendants Aljoe, Lowell, G. Thomas, Police officer Does 2-4, and other Does 1-10 jointly acted, and agreed and had a meeting of the minds to unlawfully seize the Spitzer house and Leroy's personal property contained in it, and did so as one of multiple unlawful acts alleged herein in furtherance of an overall unlawful conspiracy to deprive the Spitzer's of their rights, privileges and immunities secured by the Constitution and laws of the United States, the State of California, and the City of Pleasanton.

d. Defendants Aljoe, Lowell, G.Thomas, Wickboldt, Pleasanton police office Does 2-4, and other Does 1-10 knew that their actions would deprive the Spitzers of their Constitutional and State statutory and Municipal rights.

e. Defendants Aljoe, Lowell, G. Thomas, Wickboldt, Pleasanton Police officer Does 2-4, and other Does 1-10, deliberately, maliciously, and in bad faith pursuant to improper motive, unlawfully seized the Spitzer house and Leroy's personal property contained in it, and did so with deliberate indifference to the Spitzer's constitutional and statutory rights.

f. The Spitzer's house and Leroy's personal property contained in it were unlawfully seized pursuant to policy, custom, or practice of the City of Pleasanton.

## 4TH CLAIM

### Unlawful Seizure, and Conspiracy to Unlawfully Seize the Spitzers without probable cause, and Unlawful Search of their House and Property- False Arrest, False Imprisonment, and Trespass

Defendants Aljoe, Lowell, Wickboldt, City of Pleasanton Police Officer Does 5-10, other Does 1-10, and City of Pleasanton

80. The plaintiff Spitzers incorporate by reference in this 4th Claim each and every allegation contained in the foregoing Claims and in ¶¶ 1-79 and 91-94 of this Complaint as though fully set forth herein.

81. The defendant City of Pleasanton Police Department ("Police Department") refused the Spitzers' repeated personal requests that they provide them a copy of their arrest reports. The number, and identities of the police officers who were involved in the unlawful arrest of the Spitzers, and the unlawful search of their property are, therefore, unknown.

82. After the hearing on the Order to show Cause, and before the Order appointing the receiver was entered and filed, plaintiffs Leroy and Craig Spitzer were falsely arrested without probable cause on 09/17/2012 at the Spitzers' house located at 4719 Orangewood Court, Pleasanton, California, for alleged manufacture of a controlled substance.

83. After contacting and handcuffing plaintiff Craig Spitzer at the gate of the backyard, police officer Doe 5 entered the fenced backyard through the gate without a warrant. He contacted and handcuffed plaintiff Leroy in the fenced backyard without asking Leroy for permission to enter. After this first officer entered the backyard without a warrant, several other police officers also entered.

84. Leroy and Craig were then unlawfully imprisoned in the back of a police car for about 4 hours. They remained handcuffed for this entire time. During this time the heater in the car was left running at a high level. This high heat and being handcuffed caused them considerable discomfort.

85. While unlawfully imprisoned in the police car, Craig and Leroy observed that several of the police officers involved were holding their cell phones to their ears and talking and listening for long periods of time.

86. During their unlawful imprisonment in the police car, Craig and Leroy observed that there were 3 police cars involved. Several fire engines, ambulances, and civilian vehicles arrived in apparent response to the police officer's calls. Craig and Leroy observed one or more firemen enter the back yard. They did so unlawfully without a warrant. Leroy believes that one of the persons who arrived in civilian vehicles was defendant Wickboldt.

87. The police officers did not state their reason for their unlawful arrest and imprisonment of the Spitzers until the Spitzers were being taken to jail, at which time they were told by one of the police officers that "you lost your house you're going to jail." They did not learn that they had been charged with manufacturing a controlled substance until after they were released and saw their jail records. The jail records show that they had been arrested on the charge of allegedly manufacturing a controlled substance.

88. Sometime after the Spitzers were booked at the jail, the charges were dropped, and they were released on the same day they were arrested. When they returned to the house, they found posted a warrant that consisted of two pages. One page of the normally 3 page warrant was not posted. The date and time the warrant was issued was 9/17/12, 2:10 p.m. which was long after the Spitzers had been arrested, and about the time they were released from jail.

89. There was not probable cause for either the arrest or the warrant because there were no chemicals and no manufacturing apparatus at the property for the production of controlled substances, and no reasonable basis for supposing there was.

90. On the basis of the totality of the facts alleged and incorporated herein by reference, the plaintiffs claim the following:

a. Defendant City of Pleasanton police officer Does 5-10 unlawfully seized, and falsely arrested and imprisoned the Spitzers, and unlawfully searched and trespassed on their property in violation of the 4th and 14th Amendments of the U.S. Constitution, Articles 1, 7, and 13 of the California Constitution, and California law.

b. Defendants Aljoe, Lowell, Wickboldt, and City of Pleasanton police officer Does 5-10, and other Does 1-10 jointly and severally acted, and agreed and had a meeting of the minds to commit the foregoing unlawful seizure and false arrest and imprisonment of the Spitzers, and unlawful search and trespass on the Spitzers' house and property, and did so as unlawful acts in furtherance of an overall unlawful conspiracy to violate the Spitzer's Constitutional and Statutory rights.

c. Defendants Aljoe, Lowell, G.Thomas, Wickboldt, Pleasanton police officer Does 5-10, and other Does 1-10 knew that their actions would deprive the Spitzers of their Constitutional and State statutory rights.

d. Defendants Aljoe, Lowell, G. Thomas, Wickboldt, and Pleasanton police officer Does 5-10, and other Does 1-10, deliberately, maliciously, and in bad faith pursuant to improper motive, unlawfully seized, and falsely arrested and imprisoned the Spitzers and unlawfully searched and trespassed on the Spitzers' house and property, and did so with deliberate indifference to the Spitzer's constitutional and statutory rights.

e. The defendants' unlawful seizure, and false arrest and imprisonment of the Spitzers, and unlawful search and trespass on the Spitzer property were committed pursuant to policy, custom, or practice of the City of Pleasanton.

## DEMAND FOR JUDGMENT AND THE FOLLOWING RELIEF

91. As a direct and proximate cause of the defendants' conduct, and each of them, plaintiffs have suffered and will continue to suffer for the loss of personal autonomy, dignity, and self-worth; the loss of vital rights to be secure in their house and personal possessions; humiliation; mental anguish and emotional distress, and from the effects of the defendants' interference with their property rights which has caused them injury from delay of their

1   remediation, repair, and use of their house, and increased the personal and actual costs of
2   remediation and repair of their house.

3       92. Plaintiff Leroy cared for his wife at the house during her terminal illness with the
4   help of nurses, and she died there in her house, and in the company of her family. This is a
5   factor that increases and has increased Leroy's loss in regard to mental anguish and emotional
6   distress.

7       ·   93. Plaintiffs Leroy has suffered special damages in the amount of $150.000 for loss of,
8   and loss of use of his personal property.

9       94. At all times mentioned herein defendants have acted with malice, oppression, fraud,
10  bad faith, and bad motive; and with deliberate indifference to the Constitutional, State statutory,
11  and Municipal rights of the Spitzers. The defendants' acts, taken together, are an egregious
12  violation of normal standards of law, reason, and justice that amounts to felonious conduct,
13  some of which occurred in a courtroom, that reflects very badly on our system of law and
14  justice. Punitive damages should be awarded for the sake of example of conduct that will not be
15  permitted, and by way of punishing the defendants.

16

17      **Wherefore** Plaintiffs demands judgment against defendants, and each of them, for the
18  following:

19      1. General damages in an amount of $700,000

20      2. Special damages for the loss of, and loss of use of Leroy's personal property, in the
21  amount of $200,000, and Leroy's loss of the use of his house, in the amount of $120,000.

22      3. Punitive damages in the amount of $1,000,000

23      4. Attorney fees and costs of suit.

24      5. Such additional and further relief that may be determined by the court to be just and
25  proper.

26

27

28

21
COMPLAINT

Dated: 12-22-13     , By: _____

Deron A. Kartoon
Law Offices of Deron A. Kartoon
3 Francis Drake Boulevard
P.O. Box 1403
Ross, CA 94957
Telephone: (415) 786-7737
Fax: (415) 453-3485
Email: deron.kartoon@gmail.com
Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial as provided by Rule 38(a) of the Federal Rules of Civil

Procedure.

By: _____

Deron A. Kartoon,
Attorney for Plaintiffs

COMPLAINT