UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS A. SPITZER, et al.,

Plaintiffs,

v.

TRISHA A. ALJOE, et al.,

Defendants.

Case No.  13-cv-05442-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 23

### INTRODUCTION

Plaintiffs Thomas "Leroy" Spitzer and Craig J. Spitzer ("Plaintiffs") filed this action on November 22, 2013, seeking damages stemming from the towing of Leroy's truck and an abatement order for Plaintiffs' property in Pleasanton, California.  Pending before the Court is Defendants City of Pleasanton, Trisha A. Aljoe, Jonathan P. Lowell, George Thomas, and Walter Wickboldt's ("Defendants") Motion to Dismiss portions of Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Dkt. No. 23.  The Court finds this Motion suitable for disposition without oral argument and VACATES the April 17, 2014 hearing.  Civ. L.R. 7-1(b).  Having considered the parties' papers, relevant legal authority, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for the reasons set forth below.

### BACKGROUND

The following factual background is taken from Plaintiffs' First Amended Complaint ("FAC"), filed February 13, 2014.  Dkt. No. 19.  Leroy and Craig Spitzer are co-owners of a single-family residence located at 4719 Orangewood Court in the City of Pleasanton (the "City"), California (the "Property").  FAC ¶ 5.  Plaintiffs allege that Defendants Aljoe, Lowell, Thomas, and Wickboldt were all City employees at the time of the incident: the City retained Aljoe as Special Counsel to assist in code enforcement and building matters, provide legal advice, and litigate abatement actions; Lowell was the City Attorney; Thomas was Chief Building and Safety Official; and Wickboldt was a Senior Code Enforcement Officer.  *Id.* ¶¶ 9-12.  Plaintiffs allege

that Defendant McGrew was the court-appointed receiver of Plaintiffs' real and personal property at issue in this case.  *Id.* ¶ 13.

**A.      The Property**

On October 21, 2011, Aljoe obtained and executed an inspection warrant to enter the Property.  *Id.* ¶ 21.  Wickboldt and Thomas were also among those that completed the inspection. *Id.*  Based on Aljoe's advice, Thomas issued a Notice and Order to Repair and Abate the Property on December 1, 2011.  *Id.* ¶ 32.  The Order provided that Plaintiffs must "Vacate Immediately" and "Repair or Demolish and Abate."  *Id.*  The Order included notice that "occupying or entering the building, or any portion thereof **will** result in the arrest of the occupants for a misdemeanor violation of the Pleasanton Municipal Code and the State Building Standards Code."  *Id.* (emphasis in original).  On that date, the first of multiple red tag notices was posted on the house, "stating in large bold capital letters '**DO NOT ENTER OR OCCUPY.**'"  *Id.* (emphasis in original).

Upon receiving the Notice and Order to Repair and Abate, Leroy vacated his home, but left his personal property.  *Id.* ¶ 34.  He subsequently conferred with Thomas about entering the home to retrieve his personal property and making repairs.  *Id.* ¶ 42.  Although he told Leroy that "if you need more time, just come and ask," Thomas later denied Plaintiffs more time to retrieve the personal property.  *Id.*  Despite multiple red tags on the house and written warnings that entry upon the property was a criminal offense, Plaintiffs made several attempts to enter the home to correct the cited violations.  *Id.* ¶ 44.

Plaintiffs allege that Thomas failed to call for a hearing required by the Pleasanton Municipal Code.  *Id.* ¶ 35.  Instead, Aljoe sent Plaintiffs a "Final Notice" and "Demand to Abate" on February 3, 2012, stating that legal action would be commenced upon failure to comply with the noticed demands by February 15, 2012.  *Id.* ¶ 36.

On August 3, 2012, the City filed an Ex-Parte Petition to Appoint a Receiver on behalf of the City.  *Id.* ¶¶ 37, 58.  Aljoe was listed as Special Counsel on the title page under City Attorney Lowell's name, and she signed the notice under Lowell's name.  *Id.* ¶ 37.  The Notice provided "the posting (red-tag) of a notice prohibiting entry and advising it is a misdemeanor to enter or

United States District Court
Northern District of California

2

occupy the building." *Id.* ¶ 51.

In the meantime, Leroy and his friends "worked continuously and vigorously" to remove Leroy's valuable items from the Property. *Id.* ¶ 49. On August 9, 2012, while Leroy and his friends were removing items from the Property, Wickboldt appeared and stated, "We have discussed this and decided to post this red tag." *Id.* ¶ 52. Wickboldt posted the red tag pursuant to Aljoe's advice. *Id.* Leroy and his friends decided to continue working and risk arrest. *Id.* ¶ 53.

On August 14, 2012, Aljoe gave notice to Leroy of the hearing to appoint a receiver. *Id.* ¶ 54. Plaintiffs allege that the use of the ex parte procedure was a tactical ploy by Defendants to gain an unfair advantage over them. *Id.*

On August 23, 2012, a hearing on the City's Petition to Appoint a Receiver was held. *Id.* ¶ 58. Aljoe served the Petition in the courtroom that day, but the summons has never been served on Plaintiffs. *Id.* Plaintiffs filed a sworn response to the City's Petition, detailing the work they had done and were doing to correct the cited violations. *Id.* ¶ 60. The court denied the City's exparte application, but issued an order to show cause why a receiver should not be appointed. *Id.* ¶ 60. Plaintiffs allege that after the judge denied the application, Aljoe threatened to have them arrested if they entered the Property. *Id.* ¶ 62.

On August 24, 2012, Wickboldt sent Plaintiffs a letter "Re: Notice of Scheduled Inspection," stating that "The city of Pleasanton has scheduled an inspection of your property to evaluate current condition of the interior and exterior as it relates to compliance with the Notice and Order issued December 1, 2011." *Id.* ¶ 63. Wickboldt sent this letter pursuant to Aljoe's advice. *Id.* Leroy called Wickboldt and asked him to delay the inspection because the clean-up of the interior was not completed. *Id.* ¶ 64. However, Wickboldt and two City police officers showed up the next day and conducted the inspection. *Id.* ¶ 65. The officers told Leroy and his friends that entering the house was a misdemeanor and anyone entering would be arrested. *Id.*

At the Order to Show Cause hearing[1], the City presented surprise evidence and a witness that testified that Plaintiffs could not transport chemicals that had been stored at the Property. *Id.*

_____

[1] The hearing date is not provided, although Plaintiffs do state that the court issued a tentative ruling on September 10, 2012. *Id.* ¶ 75.

United States District Court
Northern District of California

¶¶ 76-77.  The City asserted that mold contamination at the Property was a health and safety hazard, and that there had been a "complete lack of meaningful abatement activities."  *Id.* ¶ 79. Plaintiffs allege these statements were false and misleading because they had replaced the roof, made entry into the house possible, and made ingress and egress through the side yards possible. *Id.* ¶ 80.

Plaintiffs allege that both before and after the hearings, Leroy sent letters to Lowell, the City Manager, and the Mayor of the City, complaining about Defendants Aljoe, Thomas, and Wickboldt's conduct, but he has not received a response.  *Id.* ¶ 84.

On September 18, 2012, the California Superior Court appointed McGrew receiver of the Property.  *Id.* ¶ 101.  McGrew took possession of the Property on September 25.  *Id.*  He allowed Plaintiffs to work at the Property to remove Leroy's personal possessions and do remediation work.  *Id.* ¶ 102.  Plaintiffs worked through December 2012 to clean the Property, during which time Plaintiffs allege McGrew admitted personal problems that prevented him from obtaining financing to complete remediation work.  *Id.* ¶ 105.  However, after a break in Plaintiffs' work between December and February, McGrew barred Plaintiffs and their friends from working and ceased all communication with them.  *Id.* ¶ 106.  Plaintiffs allege that Aljoe threatened to have McGrew removed for allowing them to work on the Property.  *Id.* ¶ 110.

Plaintiffs allege that McGrew failed to produce monthly reports required by the superior court and failed to pay taxes on the property.  *Id.* ¶ 107.  On July 17, 2013, McGrew executed a clean-up contract for an estimated $120,000 without approval of the court.

**B.    Plaintiffs' Arrest**

On September 17, 2012, Leroy and Craig were arrested at the house by City police officers for alleged manufacture of a controlled substance.  *Id.* ¶ 88.  After handcuffing Craig at the gate of the backyard, an unidentified police officer entered the fenced backyard through the gate and handcuffed Leroy.  *Id.* ¶ 89.  The officer entered without a warrant and without permission from Plaintiffs.  *Id.*  After the first officer entered the backyard, several other officers also entered.  *Id.* Plaintiffs allege they were then imprisoned in the back of a police car under constructive arrest for about four hours, where they remained handcuffed.  *Id.* ¶ 90.  While in the police car, Plaintiffs

observed several police officers holding their cell phones to their ears for long periods of time. *Id.* ¶ 91.  They also observed three police cars, several fire engines, ambulances, and civilian vehicles arrive in response to calls from the police officers. *Id.* ¶ 92.  They observed one or more firefighters enter the backyard. *Id.*

Plaintiffs allege that the police officers did not state the reason for their arrest and imprisonment until they were being taken to jail, at which time one officer told them that "you lost your house you're going to jail." *Id.* ¶ 93.  They did not learn that they had been charged with manufacturing a controlled substance until after they were released and saw their jail records. *Id.* Plaintiffs allege there was no probable cause for their arrest because there were no chemicals and no manufacturing apparatus at the Property for the production of controlled substances. *Id.* ¶ 95.

Sometime after Plaintiffs were booked at the jail, the charges were dropped and they were released on the same day they were arrested. *Id.* ¶ 94.

## C.   Leroy's Mazda Truck

Plaintiffs allege that on an unspecified date, Leroy heard Aljoe state to Wickboldt, "I thought we got rid of those vehicles," during a meeting at the Property. *Id.* ¶ 21.  Plaintiffs state that "those vehicles" were two antique vehicles parked in the driveway. *Id.*  Plaintiffs further allege that Leroy heard Wickboldt explain to Aljoe that the abatement hearing officer decided in favor of Leroy and against the City. *Id.*

On November 11, 2011, an unnamed California Highway Patrol officer ordered Leroy's Red Mazda pick-up truck towed while it was parked in front of the Property. *Id.* ¶ 22.  Although Leroy went to the City of Pleasanton Police Department to pay the required fee and pick up the truck, he was unable to obtain a release because Police Department employees said the truck had been abated. *Id.* ¶¶ 23-26.  Although the department told him "we sent you a letter," Leroy never received notice that his truck was subject to an order of abatement. *Id.* ¶¶ 26-27.  On December 15, 2011, the storage company that had towed and stored the truck sold it. *Id.* ¶ 28.  Plaintiffs state that Leroy's truck had not been abandoned, and that the truck was abated pursuant to Aljoe's advice. *Id.* ¶ 30.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1  **D.      Procedural Background**

2          On November 22, 2013, the Spitzers filed their initial Complaint, alleging four causes of

3  action: (1) unlawful seizure of vehicle; (2) procedural due process violations; (3) unlawful seizure

4  of home and personal property; and (4) unlawful arrest and search.  Compl. ¶¶ 16-90.  On January

5  23, 2014, Defendants a Motion to Dismiss.  Dkt. No. 11.  Although Plaintiffs filed an Opposition

6  on February 6, 2014, Dkt. No. 13, they subsequently filed the FAC before Defendants filed a

7  reply.  Dkt. No. 19.  Plaintiffs allege five causes of action: (1) unlawful seizure and unlawful

8  conspiracy to seize and deprive Leroy of his vehicle; (2) denial of and conspiracy to deny

9  Plaintiffs their procedural due process rights related to the Property abatement; (3) unlawful

10  seizure and unlawful conspiracy to seize and deprive Plaintiffs of the Property, and unlawful

11  denial of an unlawful conspiracy to deny Plaintiffs meaningful access to the courts; (4) unlawful

12  seizure and conspiracy to unlawfully seize Plaintiffs without warrant or probable cause, unlawful

13  search of the  Property, false arrest, false imprisonment, and trespass; and (5) deprivation,

14  destruction, and conversion, and conspiracy to deprive, destroy, and convert Leroy's personal

15  property without due process of law.  FAC ¶¶ 17-112.  Defendants filed the present Motion to

16  Dismiss on March 6, 2014.

17                                  **LEGAL STANDARD**

18          Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a party may file a motion to

19  dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6)

20  motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim

21  to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

22  facial plausibility standard is not a "probability requirement" but mandates "more than a sheer

23  possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

24  (internal quotations and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the

25  court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

26  light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

27  F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal

28  theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v.*

*Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

### A.     First Cause of Action

Plaintiffs' First Cause of Action relates to the seizure of Leroy's Mazda truck.[2] It contains

---

[2] In their Motion, Defendants argue that Craig's First Cause of Action fails because he did not own the seized truck. Mot. at 8. Plaintiffs fail to address this argument in their Opposition. However, Plaintiffs' First Cause of Action is captioned: "Unlawful Seizure and Unlawful Conspiracy to Seize and deprive Plaintiff Thomas Spitzer of his Vehicle" and refers throughout to deprivation of Leroy's, not Craig's, rights. FAC ¶¶ 17-30. Thus, although there are references to both Plaintiffs, it does not appear that Craig intended to bring this cause of action on behalf of himself. Further, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Thus, the general rule is that

United States District Court
Northern District of California

seven distinct allegations: (1) unlawful seizure under the Fourth Amendment; (2) unlawful seizure under the Fourteenth Amendment; (3) unlawful seizure under Article 1, section 1 to the California Constitution; (4) unlawful seizure under Article 1, section 7 to the California Constitution; (5) unlawful seizure under Article 1, section 13 to the California Constitution; (6) conspiracy; and (7) municipality liability under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978). FAC ¶ 30. Allegations (1)-(6) are against Aljoe, Lowell, Thomas, Wickboldt, Pleasanton police officer Doe 1, and other Does 1-10. *Id.* Allegation (7) is brought against the City. *Id.*

### 1. Fourth Amendment Claim

Defendants argue that the Fourth Amendment claim fails as to Lowell, Thomas, and Wickboldt due to their lack of integral participation. Mot. at 8. The impoundment of a vehicle is a seizure under the Fourth Amendment, and therefore must be reasonable. *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005); *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (A seizure results if "there is some meaningful interference with an individual's possessory interests in that property."). In their role as community caretakers, "police officers may impound vehicles that 'jeopardize public safety and the efficient movement of vehicular traffic.'" *City of Cornelius*, 429 F.3d at 864 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976). "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft." *Id.* (citations omitted). In assessing whether the seizure of a vehicle is justified, courts "must examine whether this seizure is reasonable based on all of the facts presented." *Id.* (citing *Cooper v. California*, 386 U.S. 58, 59 (1967).

Here, Plaintiffs allege that an unnamed officer with the City Police Department ordered Leroy's pick-up truck towed while it was parked in front of the Property. FAC ¶ 22. When Leroy went to the pay for and pick up the truck, Plaintiffs allege that an employee told him he could not

---

only the person whose Fourth Amendment rights were violated can sue to vindicate those rights. *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. l987); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Therefore, as Plaintiffs have failed to allege that Craig had any ownership rights to the Mazda truck, any claims brought by Craig related to seizure of the truck would fail.

United States District Court
Northern District of California

United States District Court
Northern District of California

release it because it had been "abated." *Id.* ¶¶ 23-26.  They further allege that Aljoe, Lowell, Thomas, Wickboldt, and the Doe Defendants "jointly acted, and agreed or had a meeting of the minds at the Oct. 21, 2011 inspection to unlawfully seize and abate Leroy's Mazda without notice, process, or hearing." *Id.* ¶ 30(d).  Accepting these allegations as true and construing them in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have alleged enough facts to state a Fourth Amendment claim that is plausible on its face.

Defendants argue that none of the seizure-related facts concern Lowell, Thomas, or Wickboldt, nor do they show integral participation, and the Fourth Amendment claim must therefore be dismissed as to them.  They cite to *Blankenhorn v. City of Orange*, which provides: "An officer's liability under section 1983 is predicated on his integral participation in the alleged violation."  485 F.3d 463, 481, n.12 (9th Cir. 2007) (citing *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996)).  However, *Blankenhorn* does not limit liability to the officer that actually seizes the vehicle; rather, it provides that "'integral participation … require[s] some fundamental involvement in the conduct that allegedly caused the violation.'" *Id.* (quoting *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004).  Thus, it is possible that Lowell, Thomas, and Wickboldt could be liable if they participated in the alleged violations.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (A supervisor is liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them).

Plaintiffs allege that Aljoe, Lowell, Thomas, and Wickboldt had a "meeting of the minds," including at the October 21, 2011 inspection and at other times, to unlawfully seize and abate the truck.  FAC ¶ 30(d).  The Court finds that, at this stage in the proceedings, Plaintiffs have provided enough facts to state a claim to relief that is plausible on its face.  Based on this analysis, the Court finds that Plaintiffs have alleged enough facts to state a Fourth Amendment claim against Lowell, Thomas, and Wickboldt based on the seizure of Leroy's truck.  Accordingly, Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment claim is DENIED.

2.    Fourteenth Amendment Claim

Defendants argue that Plaintiffs' Fourteenth Amendment allegation fails as a matter of law

because Leroy's claim must be analyzed under a specific constitutional provision if another is available.  Mot. at 8.  Thus, as Plaintiffs' claim is properly analyzed under the Fourth Amendment, they argue that Leroy does not have a separate claim for due process under the Fourteenth Amendment.  *Id.*

### a.     Substantive Due Process

The Supreme Court has been reluctant to view claims for constitutional wrongs as sounding in substantive due process when the wrong complained of could more aptly be placed within "the specific guarantees of the various provisions of the Bill of Rights."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994).  In *Albright*, the Court rejected a petitioner's claim that his arrest without probable cause violated his substantive due process rights.  Holding instead that "it is the Fourth Amendment . . . under which petitioner Albright's claim must be judged," the Court stated, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Id.*  Likewise, the Court in *Graham v. Connor*, 490 U.S. 386 (1989), refused to construe a petitioner's excessive force claim as a violation of his substantive due process rights when it could more appropriately be framed as a violation of his rights under the Fourth Amendment.  *Id.* at 395 (holding that "because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

Here, as discussed above, it is clear that the unnamed Doe officer's order for the truck to be towed is a seizure under the Fourth Amendment.  *City of Cornelius*, 429 F.3d at 862.  Thus, any claim related to the actual seizure may only be brought under the Fourth Amendment, and not as a separate substantive due process claim.  Accordingly, Defendants' Motion is GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' substantive due process claim under the Fourteenth Amendment.

### b.     Procedural Due Process

However, Plaintiffs' First Cause of Action also raises separate procedural due process

United States District Court
Northern District of California

1   claims.  The Due Process Clause of the Fourteenth Amendment prohibits states from depriving

2   "any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV,

3   § 1. This provision imposes "procedural limitations on a State's power to take away protected

4   entitlements."  *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 67 (2009).

5   This Clause provides individuals with the right to both substantive and procedural due process.

6   Procedural due process requires that the government's deprivation of life, liberty, or property,

7   even if consistent with substantive due process, "be implemented in a fair manner."  *United States*

8   *v. Salerno*, 481 U.S. 739, 746 (1987) (analyzing the Due Process Clause of the Fifth Amendment)

9   (internal quotation marks and citation omitted).

10          In addition to the initial seizure, Plaintiffs allege that Leroy went to the Police Department

11   and was told that his truck could not be released "and to come back later to talk to defendant

12   police officer Doe 1 who was not then available."  FAC ¶ 24.  Plaintiffs allege that Leroy returned

13   to the department and called for over a week, but was told that the officer was not available.  *Id.* ¶

14   25.  When Leroy did finally meet the officer, he told Leroy that he could not release the truck and

15   "waved the paper in his hand saying 'we sent you a letter,' as if it was the authority for his

16   statement, but he did not show the letter to Leroy."  *Id.* ¶ 26.  Plaintiffs allege that Leroy never

17   received a notice or order stating that his truck was subject to abatement, as a result of which he

18   lost permanent possession of the truck.  *Id.* ¶¶ 27-28.  Plaintiffs further allege that Aljoe, Lowell,

19   Thomas, and Wickboldt had a "meeting of the minds" and acted to seize the truck as part of their

20   overall conspiracy to deprive them of their property.  *Id.* ¶ 30(d).

21          Based on this analysis, the Court finds that Plaintiffs have alleged enough facts to state a

22   Fourteenth Amendment procedural due process claim against Lowell, Thomas, and Wickboldt that

23   is plausible on its face.  Accordingly, Defendants' Motion is DENIED as to Plaintiffs' Fourteenth

24   Amendment procedural due process claim.

25          3.      Unlawful Seizure under Article 1 of the California Constitution

26          Defendants argue that Plaintiffs' Article 1 allegations fail because Article 1 to the

27   California Constitution is not a specified right; rather, it is a list of 31 separate sections, each with

28   their own particular rights.  Mot. at 9.  Defendants thus argue that Plaintiffs must specify the

11

provision under which they seek relief.  *Id.*  However, while Plaintiffs failed to specify a provision in their initial Complaint, the FAC alleges that Defendants violated their rights under Article 1, sections 1, 7, and 13.[3]  Accordingly, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' California Constitution, Article 1 claims.[4]

        4.     <u>Conspiracy</u>

Defendants argue that Plaintiffs' conspiracy claim fails because they do not provide facts showing (1) an agreement/meeting of the minds or (2) sharing in a common objective.  Mot. at 9-10.  To establish liability for a conspiracy, Plaintiffs must

> demonstrate the existence of "'an agreement or 'meeting of the minds' to violate constitutional rights.'"  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (quoting *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983)). The defendants must have, "by some concerted action, intend[ed] to accomplish some unlawful objective for the purpose of harming another which results in damage."  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (quoting *Vieux v. East Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990)). … Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, "so long as there is a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached a[n] understanding' to achieve the conspiracy's objectives." *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *reversed in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)) (quoting *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *Phelps Dodge*, 865 F.2d at 1541.

*Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301-02 (9th Cir. 1999)

Here, Plaintiffs allege that Leroy's truck was seized on November 7, 2011, in close proximity of time to the October 21 inspection of Plaintiffs' house by Aljoe, Thomas, Wickboldt, and other unnamed defendants, pursuant to a warrant obtained and executed by Aljoe.  FAC ¶¶ 21, 30(d).  At a later meeting at the Property, Leroy alleges he overheard Aljoe state to Wickboldt "I

---

[3] As explained in the Conclusion below, Plaintiffs must still amend their California Constitution claims to provide separate headings for each cause of action, and to separately state with some degree of particularity the facts in which Defendants engaged to support each claim.
[4] In their Motion, Defendants did not raise any other arguments regarding Plaintiffs' California Constitution claims under the First Cause of Action.  Accordingly, this Order does not address any potential defenses that Defendants might raise if Plaintiffs file a second amended complaint.

United States District Court
Northern District of California

thought we got rid of those vehicles." *Id.* ¶ 21.  In response to Aljoe's question, Leroy heard Wickboldt explain to Aljoe that the abatement hearing on "those vehicles" was decided in Leroy's favor.  *Id.*  Plaintiffs further allege that, as of the October 21 inspection, Aljoe, Lowell, Thomas, and Wickboldt had a meeting of the minds to unlawfully seize and abate Leroy's truck without notice, process, or a hearing.  *Id.* ¶ 30(d).

At this stage in the proceedings, the Court finds that Plaintiffs have stated a claim that is plausible on its face.  Defendants' agreement need not be overt, and may be inferred based on circumstantial evidence such as Defendants' actions. *Gilbrook*, 177 F.3d at 856.  Thus, "a showing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement may allow a jury to infer the existence of a conspiracy." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301 (internal quotation and citation omitted).  Accordingly, the Court DENIES Defendants' Motion to dismiss Plaintiffs' conspiracy claim.

**B.     Second Cause of Action**

Plaintiffs bring their Second Cause of Action against four named defendants: Aljoe, Lowell, Thomas, and the City of Pleasanton; as well as Does 1-10.  FAC ¶¶ 31-39.  It alleges seven distinct claims: (1) due process violation under the Fourth Amendment; (2) due process violation under the Fourteenth Amendment; (3) due process violation under Article 1, section 1 to the California Constitution; (4) due process violation under Article 1, section 7 to the California Constitution; (5) due process violation under Article 1, section 13 to the California Constitution; (6) conspiracy; and (7) *Monell* liability. *Id.* ¶ 39.  Allegations (1)-(6) are against Aljoe, Lowell, Thomas, and Does 1-10. *Id.*  Allegation (7) is brought against the City of Pleasanton. *Id.*

**1.     Fourth Amendment Claim**

Plaintiffs' Second Cause of Action alleges that Defendants violated their due process rights by failing to hold an administrative hearing related to the Notice and Order to Repair and Abate. *Id.* ¶¶ 35, 39.  Defendants argue that this claim must fail as to Plaintiffs' Fourth Amendment claim because the Fourteenth Amendment governs due process allegations.  Mot. at 10.  In reviewing the FAC, the Court notes that Plaintiffs' Second and Third Causes of Action are somewhat duplicative.  The Second Cause of Action alleges due process violations related to the Property

United States District Court
Northern District of California

13

1   under the Fourth and Fourteenth Amendments, while the Third Cause of Action alleges claims for

2   unlawful seizure related to the Property under the Fourth and Fourteenth Amendments.  As

3   discussed above, Plaintiffs may be able to establish separate Fourth Amendment seizure and

4   Fourteenth Amendment due process violations, but it is improper to allege both causes of action

5   twice under each constitutional provision.  Accordingly, the Court GRANTS Defendants' Motion

6   as to Plaintiffs' Second Cause of Action for violation of their due process rights under the Fourth

7   Amendment WITHOUT LEAVE TO AMEND.

8          2.      Fourteenth Amendment Claim

9          Defendants argue that Plaintiffs' Fourteenth Amendment Due Process claim fails as to

10  Aljoe and Lowell because they did not integrally participate in the purported violations.  Mot. at

11  10.  They further argue that Aljoe and Lowell cannot deprive Plaintiffs of a hearing over which

12  they have no control.  *Id.* at 10-11.  In the alternative, Defendants argue that even if Plaintiffs

13  could establish integral participation, Aljoe and Lowell possess absolute immunity against

14  Plaintiffs' Fourteenth Amendment allegations.  *Id.* at 11.

15         In their FAC, Plaintiffs allege that Thomas issued the Notice and Order to Repair and

16  Abate on December 1, 2011, but he failed to call a hearing as required by Pleasanton Municipal

17  Code section 20.32.020.4.01B6.  FAC ¶¶ 32, 35.  Plaintiffs further allege that instead of calling the

18  required hearing, Aljoe sent Plaintiffs a final notice stating that legal action would be commenced

19  upon failure to comply.  *Id.* ¶ 36.  On August 3, 2012, the City filed a Petition to Appoint a

20  Receiver, for which Aljoe was listed as Special Counsel under the name of City Attorney Lowell.

21  *Id.* ¶ 37.  Plaintiffs allege that no administrative hearing was held.  *Id.* ¶ 38.  Accepting these

22  factual allegations as true and construing them in the light most favorable to Plaintiffs, the Court

23  finds that Plaintiffs have stated enough facts to state a claim to relief that is plausible on its face.[5]

24  _____

25  [5] Even if Defendants failed to conduct a hearing at a specified time, the Court notes that the lack of
    a hearing does not automatically violate an individual's due process rights.  "Due process is
26  flexible and calls for such procedural protections as the particular situation demands."  *Gilbert v.*
    *Homar*, 520 U.S. 924, 931 (1997) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  The
27  Supreme Court has held that due process does not always require a pre-deprivation hearing and
    "where a State must act quickly, or where it would be impractical to provide pre-deprivation
28  process, post-deprivation process satisfies the requirements of the Due Process Clause."  *Id.* at
    930.  "An important government interest, accompanied by a substantial assurance that the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Assuming Plaintiffs are able to establish Aljoe and Lowell's integral participation in these

2    allegations, Defendants argue that they possess absolute immunity as their actions fall within their

3    prosecution of the City's administrative code enforcement action against Plaintiffs.  Mot. at 11.

4    State prosecuting officials are entitled to absolute immunity from a 42 U.S.C. § 1983 lawsuit.

5    *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976).  Such immunity is not limited to prosecutors in

6    a criminal setting as it turns upon the function of the person claiming immunity.  *Butz v.*

7    *Economou*, 438 U.S. 478, 515 (1978) ("We also believe that agency officials performing certain

8    functions analogous to those of a prosecutor should be able to claim absolute immunity with

9    respect to such acts.  The decision to initiate administrative proceedings against an individual or

10   corporation is very much like the prosecutor's decision to initiate or move forward with a criminal

11   prosecution."); *see also Forrester v. White*, 484 U.S. 219, 229 (1988) ("the nature of the function

12   performed, not the identity of the actor who performed it, that informed our immunity analysis.").

13   "[T]he official seeking absolute immunity bears the burden of showing that such immunity is

14   justified for the function in question."  *Burns v. Reed*, 500 U.S. 478, 486 (1991).

15   Absolute prosecutorial "immunity does leave the genuinely wronged defendant without

16   civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.  But

17   the alternative of qualifying a prosecutor's immunity would disserve the broader public interest.'"

18   *Milstein v. Cooley*, 257 F.3d 1004, 1007-08 (9th Cir. 2001) (quoting *Imbler*, 424 U.S. at 427.

19   Moreover, prosecutorial misconduct is deterred "by the threat of criminal prosecution and

20   professional discipline, and by prosecutors' accountability to either superiors or the electorate."

21   *Id.* at 1008.

22   Here, it appears that Defendants Aljoe and Lowell are entitled to absolute immunity

23   because their purported conduct fell within their prosecution of the City's administrative code

24   enforcement action against Plaintiffs.  Plaintiffs seek to impose liability based upon their failure to

25   conduct an administrative proceeding, as well as the initiation and prosecution of Plaintiffs' civil

26

27   deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify
     postponing the opportunity to be heard until after the initial deprivation."  *Fed. Deposit Ins. Corp.*
28   *v. Mallen*, 486 U.S. 230, 240 (1988).  Here, however, the Court is unable to make this
     determination at this early stage in the proceedings.

1   enforcement proceeding.  Thus, their conduct was "intimately associated with the judicial phase"

2   of the proceedings "and were functions to which the reasons for absolute immunity apply with full

3   force." *Imbler*, 424 U.S. at 430.

4       Plaintiffs argue that Defendants are not entitled to immunity because there were no quasi-

5   judicial or judicial proceedings related to the issuance of the Notice and Order.  Opp'n at 8.

6   However, "[a]bsolute immunity also protects those functions in which the prosecutor acts as an

7   'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution

8   and actions apart from the courtroom.'"  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir.

9   2012) (quoting *Burns*, 500 U.S. at 486).  "These actions need not relate to a particular trial and

10  may even be administrative in nature, yet are connected to the trial process and 'necessarily

11  require legal knowledge and the exercise of related discretion.'"  *Id.* (quoting *Van de Kamp v.*

12  *Goldstein*, 555 U.S. 335, 344 (2009).  Thus, even if the Court were to find that Aljoe and Lowell

13  failed to call and hold a hearing, they are "absolutely immune from liability for the consequences

14  of their advocacy, however inept or malicious." *Id.* at 913.

15      Based on this analysis, the Court GRANTS Defendants' Motion as to Plaintiffs' Second

16  Cause of Action against Aljoe and Lowell for violation of their due process rights under the

17  Fourteenth Amendment WITHOUT LEAVE TO AMEND.

18      3.      Due Process under the California Constitution

19      Defendants argue that Plaintiffs' California Constitution allegations in their Second Cause

20  of Action fail for the same reasons as their First Cause of Action.  Mot. at 11.  However, as

21  discussed above, while Plaintiffs failed to provide specific sections in their initial Complaint, the

22  FAC alleges that Defendants violated their rights under Article 1, sections 1, 7, and 13.

23  Regardless, Plaintiffs' allegations as to Aljoe, Thomas, and Lowell fail under California

24  Government Code section 821.6, which provides that "[a] public employee is not liable for injury

25  caused by his instituting or prosecuting any judicial or administrative proceeding within the scope

26  of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code §

27  821.6.  California courts interpret section 821.6 broadly: "Under California law, the immunity

28  statute is given an 'expansive interpretation' in order to best further the rationale of the immunity,

United States District Court
Northern District of California

16

1    that is to allow the free exercise of the prosecutor's discretion and protect public officers from

2    harassment in the performance of their duties." *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292

3    (1999) (citations omitted).  Thus, for the same reasons as discussed above, Aljoe, Thomas, and

4    Lowell are immune from liability for the consequences of their actions, however inept or

5    malicious.  Their purported conduct was wholly related to, and arose from, the City's code

6    enforcement actions against Plaintiffs.

7            Based on this analysis, the Court GRANTS Defendants' Motion as to Plaintiffs' Second

8    Cause of Action against Aljoe, Thomas, and Lowell for violation of their due process rights under

9    the California Constitution WITHOUT LEAVE TO AMEND.

10           4.      Conspiracy

11           Defendants argue that Plaintiffs' conspiracy claim fails because they "only allege

12   conclusions."  Mot. at 11.  However, at this stage in the proceedings, the Court finds that Plaintiffs

13   have stated a claim that is plausible on its face.  Plaintiffs allege that Aljoe, Thomas, Wickboldt,

14   and Lowell had a meeting of the minds to deprive Plaintiffs of their Property without required

15   notice and due process.  FAC ¶ 39.  As discussed above, Defendants' agreement need not be overt

16   and may be inferred based on circumstantial evidence.  Accordingly, the Court DENIES

17   Defendants' Motion as to Plaintiffs' conspiracy claim.

18   **C.      Third Cause of Action**

19           Plaintiffs bring their Third Cause of Action against five named defendants: Aljoe, Lowell,

20   Thomas, Wickboldt, and the City of Pleasanton; as well as Pleasanton police officers Does 1-3 and

21   other Does 1-10.  FAC ¶¶ 40-85.  It alleges eight distinct claims based upon Defendants' code

22   enforcement actions related to the Property: (1) unlawful seizure under the First Amendment; (2)

23   unlawful seizure under the Fourth Amendment; (3) unlawful seizure under the Fourteenth

24   Amendment; (4) unlawful seizure under Article 1, section 1 to the California Constitution; (5)

25   unlawful seizure under Article 1, section 7 to the California Constitution; (6) unlawful seizure

26   under Article 1, section 13 to the California Constitution; (7) conspiracy; and (8) *Monell* liability.

27   *Id.* ¶ 80.  Allegations (1)-(7) are against Aljoe, Lowell, Thomas, Wickboldt, Pleasanton police

28   officers Does 2-4 and other Does 1-10.  *Id.*  Allegation (8) is brought against the City.  *Id.*

United States District Court
Northern District of California

17

1      1.      First Amendment

2          In their Third Cause of Action, Plaintiffs do not state which allegations relate to their First

3   Amendment claim, merely stating that "The Spitzers' house and Leroy's personal property

4   contained in it were unlawfully seized by denial to the Spitzers of entry necessary to accomplish

5   the Spitzer's [sic] lawful objectives of vacating the house of Leroy's personal property, to do the

6   work required to abate the violations, and to receive the help of their friends in doing so in

7   violation of the [First Amendment]." *Id.* ¶ 79(b).  Defendants argue that Plaintiffs' First

8   Amendment allegation fails because they have not pled First Amendment retaliation.  Mot. at 12.

9          "Official reprisal for protected speech 'offends the Constitution [because] it threatens to

10  inhibit exercise of the protected right[';] . . . the First Amendment prohibits government officials

11  from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking

12  out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (first alteration in original) (citation omitted)

13  (quoting *Crawford–El v. Britton*, 523 U.S. 574, 588 n. 10 (1998)).  "'[T]o demonstrate a First

14  Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the

15  defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a

16  substantial or motivating factor in [the defendant's] conduct.'"  *Lacey*, 693 F.3d at 916 (quoting

17  *Mendocino Envtl. Ctr.*, 192 F.3d at 1300.  A plaintiff "need not show his 'speech was actually

18  inhibited or suppressed.'  . . .  Rather, [courts] consider 'whether an official's acts would chill or

19  silence a person of ordinary firmness from future First Amendment activities.'"  *Id.* (quoting

20  *Mendocino Envtl. Ctr.*, 192 F.3d at 1300.  A plaintiff "must allege facts ultimately enabling him

21  to 'prove the elements of retaliatory animus as the cause of injury,' with causation being

22  'understood to be but-for causation.'"  *Id.* at 917 (quoting *Hartman*, 547 U.S. at 260).

23         Here, accepting Plaintiffs' factual allegations as true and construing the pleadings in the

24  light most favorable to them, the Court finds that the FAC as a whole provides enough facts to

25  state a plausible First Amendment retaliation claim.  However, Plaintiffs have simply listed a First

26  Amendment claim under their Third Cause of Action for unlawful seizure and unlawful

27  conspiracy, without any reference to retaliation or facts that are specific to such a claim.  In

28  reviewing the FAC, it appears that Plaintiffs are attempting to allege that one or more Defendants'

United States District Court
Northern District of California

18

1   primary intent was to silence Plaintiffs' protected speech related to the Property.  However,

2   Plaintiffs fail to specify which and whose actions are alleged to chill their protected speech, and

3   whether such actions were intended to punish them for their First Amendment activities and deter

4   them from future activities.  *Lacey*, 693 F.3d at 917.

5          Based on this analysis, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' First

6   Amendment claim WITH LEAVE TO AMEND.  If Plaintiffs intend to pursue a First Amendment

7   claim, they must set forth specific allegations showing that Defendants deterred or chilled

8   Plaintiffs' political speech and such deterrence was a substantial or motivating factor in

9   Defendants' conduct.  *Id.* at 916.  Plaintiffs "must allege facts ultimately enabling [them] to prove

10  the elements of retaliatory animus as the cause of injury, with causation being understood to be

11  but-for causation."  *Id.* at 917 (internal quotations and citations omitted).

12         Defendants also argue that Plaintiffs' First Amendment allegations should be dismissed as

13  to Aljoe and Lowell due to absolute immunity.  Mot. at 13.  However, as it is not clear which

14  allegations are tied to Plaintiffs' First Amendment claim, it is not clear whether Plaintiffs'

15  allegations are premised entirely upon Aljoe and Lowell's actions while prosecuting the City's

16  code enforcement suit against Plaintiffs.  As such, the Court declines to make such a ruling at this

17  juncture.  Plaintiffs should be mindful that any First Amendment claim against Aljoe and Lowell

18  must include factual allegations that fall outside the scope of any immunity to which they would

19  be entitled.

20              2.     Fourth Amendment Claim

21         Defendants argue that Plaintiffs' Fourth Amendment allegation fails against Lowell due to

22  a lack of integral participation.  Mot. at 13.  Defendants contend that the FAC does not allege he

23  personally prosecuted Plaintiffs' civil action or was otherwise involved, and the reference to his

24  name on court papers is immaterial as that was solely a function of his office as City Attorney.  *Id.*

25         As discussed above, liability under § 1983 is predicated on a defendant's integral

26  participation in the alleged violation.  *Blankenhorn*, 485 F. 3d at 481, n. 12 (citation omitted).

27  Here, accepting Plaintiffs' factual allegations as true and construing the pleadings in the light most

28  favorable to them, the Court finds that Plaintiffs have stated enough facts to state a claim to relief

United States District Court
Northern District of California

19

1   that is plausible on its face: Plaintiffs allege that Lowell acted to set in motion the series of acts

2   that resulted in the order barring Plaintiffs from the Property.  FAC ¶¶ 39(d), 85(c).

3          However, Defendants also argue that Plaintiffs' Fourth Amendment allegations should be

4   dismissed as to Aljoe and Lowell due to absolute immunity.  Mot. at 13.  The Court agrees.  As

5   discussed above, even if Plaintiffs are able to establish Aljoe and Lowell's integral participation,

6   they possess absolute immunity as to any actions that fall within their prosecution of the City's

7   administrative code enforcement action against Plaintiffs.  Here, as Aljoe and Lowell's purported

8   conduct fell within their prosecution of the City's enforcement action against Plaintiffs, their

9   conduct was "intimately associated with the judicial phase" of the proceedings "and thus were

10  functions to which the reasons for absolute immunity apply with full force." *Imbler*, 424 U.S. at

11  430.  Further, "[a]bsolute immunity also protects those functions in which the prosecutor acts as

12  an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a

13  prosecution and actions apart from the courtroom.'" *Lacey*, 693 F.3d at 912 (quoting *Burns*, 500

14  U.S. at 486).

15         Based on this analysis, the Court GRANTS Defendants' Motion as to Plaintiffs' Fourth

16  Amendment claim under their Third Cause of Action against Aljoe and Lowell WITHOUT

17  LEAVE TO AMEND.

18            3.      Fourteenth Amendment Claim

19         As with their Second Cause of Action, Plaintiffs' Third Cause of Action alleges violations

20  of both the Fourth and Fourteenth Amendments.  However, as these claims are duplicative, the

21  Court GRANTS Defendants' Motion as to Plaintiffs' Third Cause of Action for violation of the

22  Fourteenth Amendment WITHOUT LEAVE TO AMEND.

23            4.      Due Process under the California Constitution

24         Defendants argue that Plaintiffs' California Constitution allegations in their Third Cause of

25  Action fail for the same reasons as their First Cause of Action.  Mot. at 13.  However, as discussed

26  above, while Plaintiffs failed to provide specific sections in their initial Complaint, the FAC

27  alleges that Defendants violated their rights under Article 1, sections 1, 7, and 13.  Regardless, as

28  with their Second Cause of Action, Plaintiffs' allegations as to Aljoe, Thomas, Wickboldt, and

United States District Court
Northern District of California

1  Lowell fail under California Government Code section 821.6 because their purported conduct was

2  wholly related to their conduct in prosecuting Plaintiffs.

3          Based on this analysis, the Court GRANTS Defendants' Motion as to Plaintiffs' Third

4  Cause of Action against Aljoe, Thomas, Wickboldt, and Lowell for violation of their due process

5  rights under the California Constitution WITHOUT LEAVE TO AMEND.

6          5.          Conspiracy

7          Defendants again argue that Plaintiffs' conspiracy claim fails because they "only allege

8  conclusions." Mot. at 13. However, at this stage in the proceedings, the Court finds that Plaintiffs

9  have stated a claim that is plausible on its face. Accordingly, the Court DENIES Defendants'

10 Motion as to Plaintiffs' conspiracy claim.

**D.      Fourth Cause of Action**

12         Plaintiffs bring their Fourth Cause of Action against Aljoe, Lowell, Thomas, Wickboldt,

13 the City of Pleasanton, Pleasanton police officers Does 5-10, and other Does 1-10. FAC ¶¶ 86-99.

14 It alleges seven distinct claims related to Plaintiffs' arrest and subsequent search of their home: (1)

15 unlawful arrest/search under the Fourth Amendment; (2) unlawful arrest/search under the

16 Fourteenth Amendment; (3) unlawful arrest/search under Article 1, section 1 to the California

17 Constitution; (4) unlawful arrest/search under Article 1, section 7 to the California Constitution;

18 (5) unlawful arrest/search under Article 1, section 13 to the California Constitution; (6)

19 conspiracy; and (7) *Monell* liability. *Id.* ¶ 99. Allegations (1)-(6) are against Aljoe, Thomas,

20 Lowell, Wickboldt, Pleasanton police officers Does 5-10 and other Does 1-10. *Id.* Allegation (7)

21 is brought against the City. *Id.*

22         1.          Fourth Amendment Claim

23         Defendants argue that Plaintiffs' Fourth Amendment allegation fails against Aljoe,

24 Thomas, and Lowell due to their lack of integral participation. Mot. at 14. In the alternative,

25 Defendants argue that the claim should be dismissed as to Aljoe and Lowell due to absolute

26 immunity. *Id.*

27         As discussed above, liability under § 1983 is predicated on a defendant's integral

28 participation in the alleged violation. *Blankenhorn*, 485 F. 3d at 481, n. 12 (citation omitted).

Here, it is undisputed that Aljoe, Thomas, and Lowell were not present at the scene for Plaintiffs' arrest and the subsequent search of the Property, while Leroy believes that Wickboldt was present. FAC ¶ 92. Regardless, accepting Plaintiffs' factual allegations as true and construing the pleadings in the light most favorable to them, the Court finds that Plaintiffs have stated enough facts to state a claim to relief that is plausible on its face. Plaintiffs appear to allege that Aljoe, Thomas, Wickboldt, and Lowell set in motion the series of acts that resulted in Plaintiffs' arrest and acted with the arresting officers by providing them guidance at the scene. FAC ¶¶ 91-92, 99.

However, the Court finds that Plaintiffs' Fourth Amendment allegations must be dismissed as to Aljoe and Lowell due to absolute immunity. As discussed above, even if Plaintiffs are able to establish Aljoe and Lowell's integral participation, they possess absolute immunity as to any actions that fall within their prosecution of the City's administrative code enforcement action against Plaintiffs. Here, Plaintiffs allege that Aljoe and Lowell acted in furtherance of their plan to deprive Plaintiffs of their property. FAC ¶ 99(b). Thus, as Aljoe and Lowell's purported conduct fell within their prosecution of the City's administrative code enforcement action against Plaintiffs, their conduct was "intimately associated with the judicial phase" of the proceedings "and thus were functions to which the reasons for absolute immunity apply with full force." *Imbler*, 424 U.S. at 430. Further, "[a]bsolute immunity also protects those functions in which the prosecutor acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Lacey*, 693 F.3d at 912 (quoting *Burns*, 500 U.S. at 486). Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment claim as to Aljoe and Lowell WITHOUT LEAVE TO AMEND. Defendants' Motion is DENIED as to the remaining Defendants.

2.      Fourteenth Amendment Claim

Defendants argue that Plaintiffs' Fourteenth Amendment allegation fails as a matter of law because their claims must be analyzed under the Fourth Amendment. Mot. at 14. Plaintiffs do not address this argument; instead, the Fourth Cause of Action argument in their Opposition focuses solely on their unreasonable seizure claim under the Fourth Amendment. Opp'n at 17-18. As discussed above, a claim for unreasonable seizure must be brought under the specific guarantees

22

of the Fourth Amendment.  *Albright*, 510 U.S. at 273 (rejecting a petitioner's claim that his arrest

without probable cause violated his substantive due process rights and holding instead that "it is

the Fourth Amendment . . . under which petitioner Albright's claim must be judged").  Thus, to

the extent Plaintiffs' FAC alleges a Fourteenth Amendment unlawful seizure claim, the Court

GRANTS Defendants' Motion WITHOUT LEAVE TO AMEND.

3.      California Constitution Claims

Defendants argue that Plaintiffs' California Constitution allegations in their Third Cause of

Action fail for the same reasons as their First Cause of Action.  Mot. at 14.  However, as discussed

above, while Plaintiffs failed to provide specific sections in their initial Complaint, the FAC

alleges that Defendants violated their rights under Article 1, sections 1, 7, and 13.  Regardless, as

with their Second Cause of Action, Plaintiffs' allegations as to Aljoe, Thomas, Wickboldt, and

Lowell fail under California Government Code section 821.6 because their purported conduct was

wholly related to their conduct in prosecuting Plaintiffs.

Based on this analysis, the Court GRANTS Defendants' Motion as to Plaintiffs' Fourth

Cause of Action against Aljoe, Thomas, Wickboldt, and Lowell for violation of their due process

rights under the California Constitution WITHOUT LEAVE TO AMEND.

4.      Conspiracy

Defendants again argue that Plaintiffs' conspiracy claim fails because they "only allege

conclusions."  Mot. at 14.  However, at this stage in the proceedings, the Court finds that Plaintiffs

have stated a claim that is plausible on its face.  Accordingly, the Court DENIES Defendants'

Motion as to Plaintiffs' conspiracy claim.

**E.      Fifth Cause of Action**

Plaintiffs bring their Fifth Cause of Action against Aljoe, Lowell, Thomas, Wickboldt,

McGrew, the City of Pleasanton, and Does 1-10.  FAC ¶¶ 100-112.  It alleges seven distinct

claims related to the destruction of Leroy's personal property during the receivership[6]: (1)

---

[6] As with the First Cause of Action, Defendants argue that Craig's Fifth Cause of Action fails because he did not own the personal property allegedly destroyed.  Mot. at 15.  Plaintiffs' Fifth Cause of Action is captioned: "Final deprivation, destruction, and conversion . . . [of] Leroy's personal property" and refers throughout to deprivation of Leroy's, not Craig's, rights.  FAC ¶¶

United States District Court
Northern District of California

unlawful seizure and denial of meaningful access to the courts under the First Amendment; (2) due process violation under the Fourteenth Amendment; (3) due process violation under Article 1, section 1 to the California Constitution; (4) due process violation under Article 1, section 7 to the California Constitution; (5) due process violation under Article 1, section 13 to the California Constitution; (6) conspiracy; and (7) *Monell* liability. *Id.* ¶ 112. Allegations (1)-(6) are against Aljoe, Thomas, Lowell, Wickboldt, McGrew, and other Does 1-10. *Id.* Allegation (7) is brought against the City. *Id.*

       1.     <u>First Amendment Claim</u>

In their Fifth Cause of Action, Leroy does not state which allegations relate to his First Amendment claim, merely stating that "Plaintiff Leroy's personal property stored in his garage was finally deprived, destroyed, and converted, and the Spitzers were denied meaningful access to the courts by Aljoe's avoidance of or side-stepping the judicial process on the matters of the reasonableness of its disposal and the cost of disposal, in violation of the [First Amendment]." *Id.* ¶ 112(b). To the extent that Leroy is attempting to bring a cause of action for unlawful seizure under the First Amendment, no such cause of action exists. Accordingly, Plaintiffs' First Amendment unlawful seizure claim is DISMISSED WITHOUT LEAVE TO AMEND.

To the extent that Leroy is attempting to bring a First Amendment retaliation claim, the analysis from Plaintiffs' Third Cause of Action applies here as well: Plaintiffs must provide evidence showing that Defendants deterred or chilled their political speech, and such deterrence was a substantial or motivating factor in Defendants' conduct. *Lacey*, 693 F.3d at 916. Here, accepting Plaintiffs' factual allegations as true and construing the pleadings in the light most favorable to them, the Court finds that the FAC as a whole provides enough facts to state a plausible First Amendment retaliation claim. However, Plaintiffs have simply listed a First Amendment claim under their Fifth Cause of Action, without any reference to retaliation or facts

---

100-12. Thus, although there are references to both Plaintiffs, it does not appear that Craig intended to bring this cause of action on behalf of himself. Further, as stated above, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman*, 394 U.S. at 174. Thus, as Plaintiffs have failed to allege that Craig had any ownership rights to Leroy's personal property, any claims brought by Craig would fail.

United States District Court
Northern District of California

1   that are specific to such a claim.  In reviewing the FAC, it appears that Plaintiffs are attempting to

2   allege that one or more Defendants' primary intent was to silence Leroy's protected speech related

3   to his personal property.  However, Plaintiffs fail to specify which and whose actions are alleged

4   to chill Leroy's protected speech, and whether such actions were intended to punish him for First

5   Amendment activities and deter him from future activities.  *Lacey*, 693 F.3d at 917.

6          Based on this analysis, the Court DISMISSES Plaintiffs' First Amendment claim WITH

7   LEAVE TO AMEND.  If Leroy intends to pursue a First Amendment claim, he must set forth

8   allegations showing that Defendants deterred or chilled his political speech and such deterrence

9   was a substantial or motivating factor in Defendants' conduct.  *Id.* at 916.  Leroy "must allege

10  facts ultimately enabling [them] to prove the elements of retaliatory animus as the cause of injury,

11  with causation being understood to be but-for causation."  *Id.* at 917 (internal quotations and

12  citations omitted).  As discussed above, Leroy should also be mindful of individual defendants'

13  potential immunity if his allegations are premised upon their actions while prosecuting the City's

14  code enforcement suit against Plaintiffs.

15          2.          Fourteenth Amendment Claim

16          As to Plaintiffs' Fourteenth Amendment claim, Defendants argue that it fails as to Aljoe,

17  Lowell, Thomas, and Wickboldt due to lack of integral participation.  Mot. at 15.  The FAC

18  alleges that McGrew was appointed Receiver, that he oversaw Plaintiffs' clean-up of the house,

19  that he failed various Receiver duties, and that he executed a contract with DECON.  FAC ¶¶ 101-

20  08.  The executed contract allegedly led to destruction of Leroy's personal property.  *Id.* ¶ 109.

21  While this conduct might not involve Aljoe, Lowell, Thomas, or Wickboldt, the Court must accept

22  Plaintiffs' factual allegations as true and construe them in the light most favorable to them.

23  Plaintiffs also allege that Aljoe, Lowell, Thomas, and Wickboldt jointly acted and participated in

24  this deprivation of personal property in furtherance of a conspiracy.  FAC ¶ 112.  Accordingly, at

25  this stage in the proceedings, the Court finds that Plaintiffs have stated enough facts to state a

26  claim to relief that is plausible on its face.

27          However, Defendants also argue that Plaintiffs' Fourteenth Amendment allegations should

28  be dismissed as to Aljoe and Lowell due to absolute immunity.  Mot. at 15.  The Court agrees.  As

United States District Court
Northern District of California

25

discussed above, even if Plaintiffs are able to establish Aljoe and Lowell's integral participation, they possess absolute immunity as to any actions that fall within their prosecution of the City's administrative code enforcement action against Plaintiffs.  Here, as Aljoe and Lowell's purported conduct fell within their prosecution of the City's enforcement action against Plaintiffs, their conduct was "intimately associated with the judicial phase" of the proceedings "and thus were functions to which the reasons for absolute immunity apply with full force."  *Imbler*, 424 U.S. at 430.  Further, "[a]bsolute immunity also protects those functions in which the prosecutor acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'"  *Lacey*, 693 F.3d at 912 (quoting *Burns*, 500 U.S. at 486).

Based on this analysis, the Court GRANTS Defendants' Motion as to Plaintiffs' Fifth Cause of Action against Aljoe and Lowell for violation of Leroy's due process rights under the Fourteenth Amendment WITHOUT LEAVE TO AMEND.  The Court DENIES Defendants' Motion as to the remaining Defendants.

### 3.   California Constitution Claims

Defendants argue that Plaintiffs' California Constitution allegations fail for the same reasons as above.  Mot. at 15.  Regarding these claims, as discussed above, while Plaintiffs failed to provide specific sections in their initial Complaint, the FAC alleges that Defendants violated their rights under Article 1, sections 1, 7, and 13.  However, Defendants also argue that Plaintiffs' claims against Aljoe, Lowell, Thomas, and Wickboldt must fail under California Government Code section 821.6 because they are entitled to state-law immunity.  *Id.*  The Court agrees, as Plaintiffs' allegations arise entirely from their code enforcement actions related to the Property. Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' California Constitution claims against Aljoe, Lowell, Thomas, and Wickboldt WITHOUT LEAVE TO AMEND.

### 4.   Conspiracy

As to Plaintiffs' conspiracy claim, Defendants argue that it fails because it offers "nothing but conclusions."  Mot. at 15.  However, at this stage in the proceedings, the Court finds that

United States District Court
Northern District of California

Plaintiffs have stated a claim that is plausible on its face.  Accordingly, the Court DENIES

Defendants' Motion as to Plaintiffs' conspiracy claim.

**F.      Punitive Damages**

Defendants argue that Plaintiffs' punitive damages claim against the City should be dismissed

because public entities are immune from punitive damages.  Mot. at 15.  Plaintiffs do not address this

argument, but the Court agrees.  The Supreme Court has also held that, with respect to federal claims

brought under § 1983, municipalities are immune from punitive damages.  *City of Newport v. Fact*

*Concerts, Inc.*, 453 U.S. 247, 271 (1981).  With respect to Plaintiffs' state law claims, California

Government Code section 818 bars the award of punitive damages against a public entity.  *Westlands*

*Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1113 (9th Cir. 1991) (punitive damages are barred

for the reason that payment by a public entity of punitive damages in effect punishes the taxpayer

rather than the entity itself).  Thus, to the extent Plaintiffs' prayer for relief seeks punitive damages

against the City, Defendants' Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND.

**G.      Supervisory Liability**

In their Opposition, Plaintiffs argue that Lowell has supervisory liability under § 1983 and

final policy-maker liability under *Monell*.  However, these claims are not properly alleged in their FAC

as independent causes of action, and the Court therefore need not consider Plaintiffs' argument at this

juncture.  If Plaintiffs include these claims in their second amended complaint, they must provide

separate headings for each cause of action and state with some degree of particularity the facts in

which Defendants engaged to support each claim.

## CONCLUSION

Based on the analysis above, the Court hereby GRANTS IN PART and DENIES IN PART

Defendants' Motion to Dismiss as follows.

**First Cause of Action:**

Defendants' Motion is

1.      DENIED as to Plaintiffs' Fourth Amendment claim;

2.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourteenth Amendment

        substantive due process claim;

United States District Court
Northern District of California

3.      DENIED as to Plaintiffs' Fourteenth Amendment procedural due process claim;

4.      DENIED as to Plaintiffs' California Constitution claims; and

5.      DENIED as to Plaintiffs' conspiracy claim.

**Second Cause of Action:**

Defendants' Motion is

1.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourth Amendment due process claim;

2.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourteenth Amendment claim against Aljoe and Lowell;

3.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' California Constitution claims against Aljoe, Thomas, and Lowell; and

4.      DENIED as to Plaintiffs' conspiracy claim.

**Third Cause of Action:**

Defendants' Motion is

1.      GRANTED WITH LEAVE TO AMEND as to Plaintiffs' First Amendment claim;

2.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourth Amendment claim against Aljoe and Lowell;

3.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourteenth Amendment claim;

4.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' California Constitution claims against Aljoe, Thomas, Wickboldt, and Lowell; and

5.      DENIED as to Plaintiffs' conspiracy claim.

**Fourth Cause of Action:**

Defendants' Motion is:

1.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourth Amendment claim against Aljoe and Lowell;

2.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourteenth Amendment claim;

United States District Court
Northern District of California

3.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' California Constitution

claims against Aljoe, Thomas, Wickboldt, and Lowell; and

4.      DENIED as to Plaintiffs' conspiracy claim.

**Fifth Cause of Action:**

1.      GRANTED WITH LEAVE TO AMEND as to Plaintiffs' First Amendment claim;

2.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' Fourteenth Amendment

claim against Aljoe and Lowell;

3.      GRANTED WITHOUT LEAVE TO AMEND as to Plaintiffs' California Constitution

claims against Aljoe, Thomas, Wickboldt, and Lowell; and

4.      DENIED as to Plaintiffs' conspiracy claim.

**Punitive Damages:**

To the extent Plaintiffs' prayer for relief seeks punitive damages against the City, Defendants' Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND.

**Second Amended Complaint**

If Plaintiffs choose to file an amended complaint, it must comply with the guidelines set forth in Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief.  In their amended complaint, Plaintiffs must allege with at least some degree of particularity the facts in which Defendants engaged to support their claims.  *Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  Thus, in their amended complaint, Plaintiffs are ORDERED to (1) provide separate headings for each cause of action (i.e., Plaintiffs shall not include multiple claims under each cause of action, as they did with their initial Complaint); and (2) for each cause of action, separately state with some degree of particularity the facts in which Defendants engaged to support each claim.  It is not enough for Plaintiffs to state that "each and every allegation" contained in the complaint supports their claims.

Plaintiffs shall file their second amended complaint by April 21, 2014.

**IT IS SO ORDERED.**

Dated: March 20, 2014

_____

MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California