UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THOMAS A. SPITZER, et al.,<br><br>      Plaintiffs,<br><br>    v.<br><br>TRISHA A. ALJOE, et al.,<br><br>      Defendants. | Case No.  13-cv-05442-MEJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Re: Dkt. No. 72 |

**INTRODUCTION**

Plaintiffs Thomas "Leroy" Spitzer and Craig J. Spitzer ("Plaintiffs") bring this action under 42 U.S.C. § 1983 and related state law claims, seeking damages stemming from the towing of Leroy's truck and an abatement order for Plaintiffs' property in Pleasanton, California.  Pending before the Court is Plaintiffs' Motion for Leave to File a Third Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a).  Dkt. No. 72.  Former-Defendant Benjamin McGrew and the City Defendants filed separate oppositions.  Dkt. No. 75 ("McGrew's Opp'n") & Dkt. No. 76 ("City's Opp'n").  Plaintiffs filed two separate Replies.  Dkt. No. 79 ("Reply to City's Opp'n") & Dkt. No. 80 ("Reply to McGrew's Opp'n").  The Court found this matter suitable for disposition without oral argument and vacated the March 12, 2015 hearing.  Dkt. No. 83; *see* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b).  Subsequently, the Court ordered supplemental briefing from the City Defendants and Plaintiffs addressing whether the statute of limitations barred claims against two of the police officers sought to be named as defendants.  Dkt. No. 85.  The parties both timely responded.  *See* Dkt. No. 94 ("Pls.' Suppl. Br."); Dkt. No. 95 ("City's Suppl. Br.").  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for the reasons set forth below.

United States District Court<br>Northern District of California

**BACKGROUND**

Plaintiffs request leave to file an amended complaint for two primary reasons.  *See* Proposed Third Am. Compl. ("TAC"), Dkt. No. 72-1.  First, Plaintiffs seek to name the "Doe" Defendant police officers from their earlier complaints as Officer Sergio Martinez, Sergeant Robert Leong, and Officer Ryan Tujague.  *See id.*  Second, Plaintiffs seek to re-assert claims against Benjamin McGrew, the court-appointed receiver over Plaintiffs' real and personal property at issue in this litigation.  *See id.*; *see also* Second Am. Compl. ("SAC") ¶ 13, Dkt. No. 27.

Except where noted, the following factual background is taken from Plaintiffs' SAC, filed April 20, 2014.  Because Plaintiffs' TAC focuses on McGrew and the newly named Police Officers, the Court discusses the facts most relevant to claims against those potential defendants.

**A.      Claims Regarding Plaintiffs' Residence/Property**

Plaintiffs are co-owners of a single-family residence located at 4719 Orangewood Court in Pleasanton, California (the "Property").  SAC ¶ 5.  On October 21, 2011, City agents executed an inspection warrant to enter the Property.  *Id.* ¶ 22.  The City subsequently issued a Notice and Order to Repair and Abate the Property on December 1, 2011.  *Id.* ¶ 36.  The Order provided that Plaintiffs must "Vacate Immediately" and "Repair or Demolish and Abate."  *Id.*  The Order included notice that "occupying or entering the building, or any portion thereof **will** result in the arrest of the occupants for a misdemeanor violation of the Pleasanton Municipal Code and the State Building Standards Code."  *Id.* (emphasis in original).  As a result of the Order, Plaintiffs allege that Leroy lost use of and access to his personal property, and they were denied the right to abate the violations themselves by the prohibition of their entry to the Property.  *Id.* ¶ 38.

After the time specified for abatement and repair had expired, Plaintiffs allege that the City failed to call for a hearing required by the Pleasanton Municipal Code.  *Id.* ¶ 39.  Instead, Plaintiffs were sent a "Final Notice" and "Demand to Abate" on February 3, 2012, stating that legal action would be commenced upon failure to comply with the noticed demands by February 15, 2012.  *Id.* ¶ 40.

On August 3, 2012, the City filed an Ex-Parte Petition to Appoint a Receiver.  *Id.* ¶ 41.  The Alameda County Superior Court appointed McGrew as Receiver on September 18, 2012.  *Id.*

United States District Court
Northern District of California

¶ 113; Req. for Jud. Not., Ex. 1, Dkt. No. 32-1.[1]  McGrew took possession of the Property on September 25, 2012.  SAC ¶ 113.  Plaintiffs allege that McGrew falsely stated he had filed his required receiver's bond with his receiver's oath in his Initial Report filed on Nov. 24, 2012, but his bond was not submitted to the court until Feb. 28, 2014.  *Id.*

After taking possession, McGrew allowed Plaintiffs to work at the Property to remove Leroy's personal possessions and do remediation work.  *Id.* ¶ 114.  Plaintiffs worked through December 2012 to clean the Property, during which time Plaintiffs allege McGrew admitted personal problems that prevented him from obtaining financing to complete remediation work.  *Id.* ¶¶ 115-17.  However, after a break in Plaintiffs' work between December and February, Plaintiffs allege that the City threatened to have McGrew removed for allowing Plaintiffs to do the remediation work, at which point McGrew barred Plaintiffs and their friends from working and ceased all communication with them.  *Id.* ¶¶ 118, 122.  Plaintiffs allege that McGrew continued communication with the City, in violation of his duty of neutrality.  *Id.*

During the months following his appointment, McGrew did not produce the monthly reports or inventory required by the Superior Court, and he did not pay property taxes on the Property.  *Id.* ¶ 119.

On July 17, 2013, McGrew executed a clean-up contract with a business entity called Decon.  *Id.* ¶ 120.  Plaintiffs lost the cost of the Decon contract, through its charge by the receiver to the estate, and Leroy lost about an equal value of his personal property stored in his garage, which was given to charities, recycled for over $5,000 in cash, and converted by Decon personnel without credit to the estate.  *Id.* ¶ 121.  After McGrew filed untimely reports for May through July, Plaintiffs allege that it became evident that the City and its agents not only had knowledge of McGrew's execution of the Decon contract, but they also aided and abetted its unlawful execution by assisting and advising McGrew in its execution.  *Id.* ¶ 123.

Based on these allegations, Plaintiffs contend that McGrew, in concert with the other named Defendants, jointly acted, participated in or directed, aided and abetted, and agreed and had

---

[1] The Court previously took judicial notice of this document.  *See* Dkt. No. 44 at 2 n.1.

United States District Court
Northern District of California

1    a meeting of the minds to seize and finally deprive Leroy of his personal property by barring him

2    from entering and working to abate the conditions at the Property, and by aiding and abetting

3    execution of an unnecessary and unreasonably costly clean-up contract by Decon without required

4    prior approval of the court.  *Id.* ¶ 124.

5          In their SAC, Plaintiffs asserted the following causes of action under 42 U.S.C. § 1983

6    against McGrew: (1) Defendants' seizure of Leroy's personal property was unreasonable and in

7    violation of the Fourth Amendment of the United States Constitution (*id.* ¶ 125); (2) Defendants'

8    seizure of Leroy's personal property without notice or hearing violated Plaintiffs' procedural due

9    process rights under the Fourteenth Amendment (*id.* ¶ 127); (3) Defendants' unlawful execution of

10   the Receiver's contract violated Plaintiffs' First Amendment rights of free speech and access to the

11   courts, because Plaintiffs did not have the opportunity to object before it was executed (*id.* ¶ 129);

12   and (4) Defendants acted in furtherance of an overall conspiracy to unreasonably seize and deprive

13   Plaintiffs of the Property and personal property without due process of law (*id.* ¶ 130).

14         McGrew moved to dismiss Plaintiffs' claims against him on May 26, 2014, which the

15   Court granted after finding that it lacked jurisdiction because Plaintiffs failed to satisfy a necessary

16   precondition to the initiation of suit against him; namely, the securing of permission to do so from

17   the Superior Court.  Dkt. No. 44.  On July 23, 2014, Plaintiffs brought a motion to alter the

18   Court's order dismissing McGrew.  Dkt. No. 55.  The Court denied that motion, finding that

19   Plaintiffs had failed to comply with the Local Rules and had failed to present any newly

20   discovered evidence or to otherwise elucidate an error of law.  Dkt. No. 59.

21         Plaintiffs' TAC seeks to re-assert those claims on the grounds that they are outside of

22   McGrew's duties as receiver.  *See* TAC ¶ 129.  Plaintiffs also seek to assert new claims against

23   McGrew for the seizure of Leroy's personal property, as well as claims related to McGrew's grant

24   of a Deed of Trust on the Property.  *Id.*

25   **B.     Claims Regarding Leroy's Mazda**

26         On November 7, 2011, a California Highway Patrol officer ordered Leroy's red Mazda

27   pickup truck towed pursuant to California Vehicle Code § 22669(b) (removal of abandoned

28   vehicles) while it was parked in front of Leroy's house where he normally parked it.  SAC ¶ 23.

4

Plaintiffs seek to name this officer as Officer Martinez. TAC ¶¶ 23-25. Leroy was not present when it was towed. SAC ¶ 23. Plaintiffs allege that the Mazda was not a hazard to traffic or public safety or a target of vandalism or theft. *Id.* It was registered, operable, and regularly driven. *Id.* At the time it was towed, it was Leroy's only transportation. *Id.*

The same day as the towing, Leroy went to the City of Pleasanton Police Department to pay the required fees to release his towed vehicle. *Id.* ¶ 25. The Police Department staff told Leroy that his Mazda could not be released and to come back later to talk to a police officer named "Lt. Leone," who was not then available. *Id.* ¶ 26. When Leroy later met with that officer, he alleges he saw that name on a tag on the officer's uniform. *Id.* However, Plaintiffs allege that they could not find an officer by that name in Police Department's public records. Plaintiffs' SAC named that officer as "defendant police officer Doe 1." *Id.* Plaintiffs seek to name this officer as Officer Martinez. TAC ¶¶ 23-25.

For a week, Leroy went back to the Police Department and called multiple times asking for Police Officer Doe 1, but he was always either not in or unavailable. SAC ¶ 27. When Leroy eventually spoke with Police Officer Doe 1, the Officer said he could not release Leroy's Mazda because it had been "abated." *Id.* Police Officer Doe 1 told Leroy that "we sent you a letter," but Leroy never received a notice or order from the City that his Mazda was subject to abatement, nor did he receive notice of a hearing on its abatement. *Id.* ¶¶ 28-29. Leroy lost possession of his Mazda permanently on December 15 2011, by its sale by the company that had towed and stored it. *Id.*

**C.    Plaintiffs' Search and Seizure Claims**

On September 17, 2012, Plaintiffs were seized and arrested for allegedly manufacturing of a controlled substance. *Id.* ¶ 99. At the time of their arrest, Plaintiffs allege they were lawfully removing household chemicals from their Property. *Id.* They allege that "police officer Doe 5" entered their fenced backyard through the gate without a warrant and without asking for permission to enter. *Id.* ¶ 101. Officer Doe 5 handcuffed Craig to the fence, and several other officers also entered Plaintiffs' backyard. *Id.* Plaintiffs assert they were arrested and seized without a warrant or probable cause. *Id.* ¶ 99. They allege they were imprisoned under

constructive arrest in the back of a police car and handcuffed for about four hours. *Id.* ¶ 102.

Shortly after Plaintiffs were booked in jail, the charges were dropped. *Id.* ¶ 105.  They were released on the same day they were arrested. *Id.*  When they returned to their Property, they found a warrant posted. *Id.*  The warrant was issued on September 17, 2012 at 2:10 p.m. *Id.* Plaintiffs allege that the time the warrant was issued was after they were arrested and closer to the time when they were released from jail. *Id.*  The declaration of probable cause was not attached to the warrant. *Id.*

**D.**     **Plaintiffs' Amended Complaints & Proposed Amended Complaint**

Plaintiffs' filed their initial Complaint on November 22, 2013 (Dkt. No. 1) and their First Amended Complaint on February 13, 2014.  Dkt. No. 19 ("FAC").  Plaintiffs later filed their SAC on April 20, 2014.  Plaintiffs filed their present Motion, along with their proposed TAC, on February 2, 2015, the deadline to file amended pleadings.   In their TAC, Plaintiffs seek to allege:

1. One claim against Officer Martinez: Fourth Amendment unlawful seizure of the Mazda (Claim 1);

2. Two claims against Sergeant Leong: Fourth Amendment unlawful seizure of the Mazda (Claim 1); Fourteenth Amendment procedural due process from the Mazda's seizure (Claim 2);

3. Two claims against Officer Tujague: Fourth Amendment unlawful arrest (Claim 14); Fourth Amendment warrantless entry and search (Claim 15); and

4. Five claims against McGrew: unreasonable seizure and final deprivation of Leroy's personal property (Claim 18); denial of procedural due process on execution of contract and seizure of Leroy's personal property (Claim 19); First Amendment retaliation and denial of meaningful access to the courts (Claim 20); unlawful seizure of Plaintiffs' real and personal property (Claim 21); and conspiracy to seize Plaintiffs' real and personal property (Claim 22).

## LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within (1) 21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive pleading or service of a Rule 12(b) motion.  Fed. R. Civ. P. 15(a)(1). Outside of this timeframe, "a party may amend its pleading only with the opposing party's written

1    consent or the court's leave," though the court "should freely give leave when justice so requires."

2    Fed. R. Civ. P. 15(a)(2).  "Although the rule should be interpreted with 'extreme liberality,' leave

3    to amend is not to be granted automatically."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387

4    (9th Cir. 1990) (citation omitted).

5         A court considers five factors in determining whether to grant leave to amend: "(1) bad

6    faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5)

7    whether plaintiff has previously amended his complaint."  *In re Western States Wholesale Nat.*

8    *Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills*, 911

9    F.2d 367, 373 (9th Cir. 1990)).  "Prejudice to the opposing party is the most important factor."

10   *Jackson*, 902 F.2d at 1387.  And the party opposing amendment bears the burden of showing

11   prejudice.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  Generally, a

12   court must make the determination of whether to grant leave "with all inferences in favor of

13   granting the motion."  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

14                              **INITIAL PROCEDURAL ISSUES**

15        As an initial matter, the parties have raised a few procedural issues related to the briefing

16   in this case.  First, the City Defendants contend that Plaintiffs' Motion suffers a number of

17   procedural defects under the Northern District's Civil Local Rules, including the omission of (1) a

18   statement of issues to be decided, and (2) a succinct statement of the relevant facts.  *See* City's

19   Opp'n at 3 (citing Civ. L.R. 7-4(a)(3) & (4), respectively).  The City Defendants urge the Court to

20   deny Plaintiffs' Motion for failing to comply with the Local Rules.  *Id.* (citing *Tri-Valley CARES*

21   *v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012)).  The City Defendants argue that

22   Plaintiffs' failure to comply with the Local Rules has left Plaintiffs' Motion without important

23   foundational information, leaving them to "guess at the particular relief Plaintiffs are seek (and the

24   factual basis for it)."  *Id.*  The City Defendants contend that this impacts their ability to "accurately

25   or coherently respond to Plaintiffs' motion."  *Id.*

26        While the Court agrees that Plaintiffs' Motion does not comply with the Local Rules, the

27   Court finds that the City Defendants have nonetheless coherently responded to Plaintiffs' Motion

28   despite their perceived difficulties.  Likewise, although Plaintiffs' Motion is no model of clarity,

                                                7

the Court has been able to address the substance of Plaintiffs' Motion without substantial issue. Thus, the Court will not deny Plaintiffs' Motion on this ground.

Second, Plaintiffs raised their own procedural challenges to the City Defendants' Opposition, including that it did not have a statement of issues to be decided nor a declaration supporting their statement of facts. Reply to City's Opp'n at 2, 9. Given the Court's determination above about Plaintiffs' lack of statement of issues to be decided, the Court will not hold the City Defendants to a higher standard, especially since, as with Plaintiffs' Motion, the Court finds that it has been able to address the substance of the City Defendants' Opposition. As to the second challenge, the Court does not find much merit. Defendants' Opposition included the declaration of their counsel, which attached various exhibits relating to Defendants' factual assertions. *See* Allen Decl., Dkt. No. 77.

In sum, the Court is satisfied that both Plaintiffs' Motion and the City Defendants' Opposition are proper for review. Nonetheless, all parties are admonished to comply with the Local Rules in the future.

## DISCUSSION

Plaintiffs seek to amend their Complaint to (1) name as Defendants the police officers whom Plaintiffs previously referred to as "Doe police officers" and (2) re-assert claims against McGrew. Additionally, Plaintiffs state that their proposed TAC "refines and clarifies" their claims, although they do not provide a list or other summary of their proposed amendments. The City Defendants and McGrew oppose Plaintiffs' Motion on separate grounds.

### A.    Claims Against the City Police Officers

The City Defendants challenge Plaintiffs' motion on several grounds. First, the City Defendants argue that the claims against the police officers are barred by the statute of limitations. Second, they assert that Plaintiffs unduly delayed in naming the officers, and third, they argue that the claims against these officers fail on their merits. Finally, the City Defendants argue that even if Plaintiffs may otherwise assert claims against these officers, those claims nevertheless fail as a procedural matter under Federal Rule of Procedure 4(m) because Plaintiffs failed to serve the officers within 120 days of the filing of their SAC. The Court considers the City Defendants'

arguments as they apply to each of the officers below.

      1.     Claims Against Officer Martinez

The City Defendants contend that even if Plaintiffs could relate back their claims to the time of filing of their initial complaint, the Section 1983 unlawful seizure claim against Officer Martinez is still time-barred as the claim accrued over two years prior to when Plaintiffs filed their initial Complaint.  City's Opp'n at 8.

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).  Claims barred by the statute of limitations are futile.  *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (the "general rule that parties are allowed to amend their pleadings, [] does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal . . .")).

Section 1983 does not contain its own statute of limitations, thus federal courts apply the forum state's statute of limitations for personal injury actions, except to the extent inconsistent with federal law.  *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014).  California's statute of limitations for personal injury actions is two years.  Cal. Civ. Proc. Code § 335.1.  "A statute of limitations begins to run on the date on which the plaintiff's claim 'accrues.'"  *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012) (citation omitted).

The accrual date of a Section 1983 claim is a question of federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  Accrual occurs "when the plaintiff has 'a complete and present cause of action,' . . . that is, when 'the plaintiff can file suit and obtain relief[.]'"  *Id.* (citations omitted).  "Courts adjudicating the issue of when a § 1983 claim for unlawful search and seizure accrues post-*Wallace* have generally applied the reasoning in *Wallace* and held that the accrual date is the date that the wrongful act occurred."  *Pierson v. Storey Cnty.*, 2013 WL 6210336, at *4 (D. Nev. Nov. 27, 2013) (collecting cases); *see also Canatella v. Van De Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007) (statute of limitations begins to run when plaintiff knew or had reason to know of the injury that forms the basis of the action).  "[A] § 1983 action is commenced in federal district

United States District Court
Northern District of California

United States District Court
Northern District of California

1    court for purposes of the statute of limitations when the complaint is filed." *Sain v. City of Bend*,

2    309 F.3d 1134, 1138 (9th Cir. 2002).

3          According to Plaintiffs' proposed TAC, "Leroy's Mazda truck was unlawfully seized by

4    Pleasanton police officer Sergio Martinez on Nov. 7, 2011." TAC ¶ 31; *see also* SAC ¶ 30.  "The

5    impoundment of an automobile is a seizure within the meaning of the Fourth Amendment."

6    *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005).  In similar cases, courts have

7    held that the statute of limitations period began to run when a plaintiff knew or had reason to

8    know of the seizure of his car.  *See Wagner v. Peppler*, 2009 WL 292199, at *3 (C.D. Cal. Jan. 16,

9    2009), *report & recommendation adopted*, 2009 WL 311857 (C.D. Cal. Feb. 4, 2009) ("The Court

10   finds that Plaintiff was aware or should have been aware of the existence and source of his injury

11   at the time of his arrest, when his car was towed and impounded.");[2] *Peterec v. Hilliard*, 2013 WL

12   5178328, at *5 & n.11 (S.D.N.Y. Sept. 16, 2013) (plaintiff's unlawful seizure claim accrued, and

13   the statute of limitations began to run, when his property, including his vehicle, was seized);

14   *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (regarding the

15   seizure of his car and other effects, "Plaintiff was aware that his property was seized—and thus

16   knew 'of the injury which is the basis of his action'—on February 1, 1997, and the statute of

17   limitations began to run on plaintiff's claim at that time." (citation omitted)).

18         The Court is inclined to agree with these cases.  "Generally, an action accrues when the

19   wrongful act or omission occurs and the party has sustained damages, even when the full extent of

20   his injury is unknown."  *Smith v. Kohlweiss, Inc.*, 2012 WL 1156338, at *4 (N.D. Cal. Mar. 30,

21   2012) (citing *Wallace*, 549 U.S. at 391).  A seizure of property occurs when "there is some

22   meaningful interference with an individual's possessory interests in that property."  *United States*

23   *v. Jacobsen*, 466 U.S. 109, 113 (1984).

24   _____

25   [2] Plaintiffs attempt to distinguish *Wagner*, but their argument is unavailing.  While Plaintiffs note
     that the *Wagner* court found that the plaintiff's claims were not time-barred related to the *sale* of

26   his vehicle, the court's analysis in that instance related to the plaintiff's due process and unlawful
     taking claims, not his seizure claim.  *Wagner*, 2009 WL 292199, at *3.  For the seizure claim, the

27   court found that the plaintiff knew his car was seized at the same time he was arrested, and thus
     "any and all of Plaintiff's claims related to the initial seizure of his car at the time of his arrest are

28   barred by the statute of limitations."  *Id.*

United States District Court
Northern District of California

The meaningful interference with Leroy's property occurred when he knew of the seizure of his Mazda—which, as Plaintiffs recognize, occurred on November 7, 2011.  TAC ¶ 31; SAC ¶ 30; FAC ¶¶ 22-23; City's Opp'n at 4.  Leroy's seizure claim accrued at that time, and the statute of limitations began to run, ending two years later on November 7, 2013.  Plaintiffs filed their initial Complaint weeks later on November 22, 2013.  *See* Dkt. No. 1.  Accordingly, when Plaintiffs filed their initial Complaint, it was more than two years after they knew or had reason to know of the alleged seizure.  While Plaintiffs may not have known Officer Martinez's name, this does not excuse the fact that their claim against the Doe officer was not asserted within the appropriate time period.  Even if Plaintiffs could relate back the unlawful seizure claim against Officer Martinez to when they filed their initial Complaint, the statute of limitations had already passed by that time.

In caution, the Court permitted Plaintiffs an opportunity for supplemental briefing to explain why their seizure claim against Officer Martinez is timely, or otherwise excepted, such as through statutory tolling, equitable tolling, waiver, or estoppel.  Plaintiffs' Supplemental Response was unhelpful, focusing on the statute of limitations for a conspiracy claim, but seemingly forgetting that Plaintiffs' TAC asserts only an unlawful seizure claim against Officer Martinez under the Fourth Amendment.  *See* TAC ¶¶ 31-32.  Nor did Plaintiffs' response suggest that statutory tolling, equitable tolling, waiver, or estoppel is applicable here.  Plaintiffs indicate that the "delayed discovery" of the purported conspiracy tolled the accrual of that claim, but again, the proposed claim against Officer Martinez is only for unlawful seizure, not conspiracy.

Plaintiffs otherwise argue that "[t]he subject Claims are tolled because they are part of a custom and policy or pattern and practice and continuing violations."  Pls.' Suppl. Br. at 4-5.  They cite *Green v. Los Angeles County Superintendent of Schools*, which held that "a plaintiff who shows that a[n allegedly unlawful] policy and practice operated at least in part within the limitation period satisfies the filing requirements."  883 F.2d 1472, 1480 (9th Cir. 1989).  Since *Green*, however, the United States Supreme Court has held that discrete "acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) (applying *Morgan* to hold that time-

barred acts could not be used to support Section 1983 free speech retaliation claims).

"*Morgan* instructs that a court must determine whether a claim is based on an independently wrongful, discrete act, and if it is, then the claim accrues, and the statute of limitations begins to run, from the date of that discrete act . . ." *Pouncil*, 704 F.3d at 578-79.  The Supreme Court provided examples: a discrete act consists of an unlawful practice that "occurred" on the day it "happened," which includes, for example, "termination, failure to promote, denial of transfer, or refusal to hire."  *Morgan*, 536 U.S. at 111.  In comparison, hostile work environment claims are "different in kind from discrete acts," because they "are based on the cumulative effect of individual acts," "occur[ ] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The Court finds that the towing and seizure of Leroy's vehicle should be considered a discrete act such that the continuing violations doctrine is not applicable against Officer Martinez. First, the Ninth Circuit has indicated that a seizure is a discrete act that starts the clock for filing charges alleging that act.  Specifically, the Court held that "where . . . illegal search and seizure is alleged, the conduct and asserted injury are discrete and complete upon occurrence, and the cause of action can reasonably be deemed to have accrued when the wrongful act occurs." *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir.1983); *Pearce v. Romeo*, 299 Fed. App'x. 653, 655 (9th Cir. 2008) ("An injury from an illegal search and seizure accrues when the act occurs.").  Second, the Court is persuaded by the reasoning of the district court in *Rankin v. Smithburger*, which found that seizures of property and entries into the home are sufficiently "discrete" as "[e]ach act would have constituted an independent tort, complete when the property had been unlawfully seized or when the home had been unlawfully searched."  2013 WL 3550894, at *6 (W.D. Pa. July 11, 2013).  The *Rankin* court noted that these acts "do not constitute the type of non-discrete acts, like a hostile work environment, for which a plaintiff may take advantage of the continuing violations doctrine." *Id.*

Plaintiffs' only claim against Officer Martinez is the unlawful seizure claim, and although Plaintiffs assert that they have pleaded custom and policy to deprive Plaintiffs of their property

1   (*see* Pls.' Suppl. Br. at 4), they have not shown that liability attaches to Officer Martinez on this

2   basis.  In other words, Plaintiffs' unlawful seizure claim accrued against Officer Martinez when

3   Leroy knew of the seizure of the vehicle, not at some later date simply because there may be a

4   custom or policy claim against another Defendant or Defendants.  As Plaintiffs suggest in a

5   footnote, the fact that a particular claim is barred does not mean that the information about that

6   claim cannot be used as background evidence to support another timely claim.  *Morgan*, 536 U.S.

7   at 102 ("Nor does the statute bar an employee from using the prior acts as background evidence to

8   support a timely claim." (citation omitted)); *see also Lyons v. England*, 307 F.3d 1092, 1111-12

9   (9th Cir. 2002).

10          Plaintiffs cite *Branch v. Guilderland Central School District* for the proposition that "§

11   1983 allegations referring to a 'policy or custom' are analogous to Title VII allegations referring

12   to a 'pattern or practice,' are not controlled by the *Morgan* holding, and can form the basis of a

13   continuing violation."  239 F. Supp. 2d 242, 253 (N.D.N.Y. 2003).  Indeed, *Morgan* noted in a

14   footnote that it had "no occasion here to consider the timely filing question with respect to

15   'pattern-or-practice' claims brought by private litigants as none are at issue here."  536 U.S. at 115

16   n.9.  That said, the Ninth Circuit has applied *Morgan* in Section 1983 actions.  *See Carpinteria*,

17   344 F.3d at 829; *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002).  District

18   courts in this Circuit have also applied *Morgan*'s discrete act test to Section 1983 claims involving

19   a policy or custom.  *See, e.g.*, *Douglas v. Noelle*, 2010 WL 5313529, at *3 (D. Or. Dec. 20, 2010)

20   ("That the discrete acts of the individual defendants were allegedly undertaken pursuant to a

21   policy or practice does not render them any less discrete and does not toll their accrual or extend

22   the limitations period. . . . [such a] construction of the continuing violations doctrine would render

23   the statute of limitations for any civil rights claim meaningless so long as there was an

24   accompanying *Monell* claim." (citations omitted)); *Reyna v. City of Portland*, 2005 WL 708344, at

25   *5 (D. Or. Mar. 28, 2005) (while events that occurred prior to the statute of limitations "are time-

26   barred for liability purposes," they still "may be relevant and admissible to establish the required

27   municipal policy, custom, or practice element of plaintiff's § 1983 claim.");

28   *Mansourian v. Bd. of Regents of the Univ. of Cal. at Davis*, 2011 WL 1897428, at *5 (E.D. Cal.

1   May 18, 2011) (holding that, as to plaintiffs' Section 1983 claims, "because the alleged discrete

2   acts outside the limitations period are not actionable, plaintiffs may not recover damages traceable

3   only to those acts; rather, plaintiffs are limited to recovery for damages traceable to the alleged

4   discriminatory policy.").

5          Despite their allegations that the seizure of Leroy's vehicle was part of a policy or custom,

6   the issue here is whether Plaintiffs assert a viable claim against Officer Martinez.  The claim

7   against Officer Martinez accrued at the time Leroy knew of the seizure; the seizure itself was a

8   discrete, independent act, at which point Leroy had a live cause of action and the statute of

9   limitations began to accrue.  That claim is no longer actionable, although evidence of the event

10  itself may be relevant and admissible to establish another policy or custom claim.

11         Finally, even though Plaintiffs' initial Complaint was filed only a few weeks after the

12  statute of limitations ran, this fact is insufficient to impose equitable tolling.  As the United States

13  Supreme Court recognized, statutes of limitations "necessarily operate harshly and arbitrarily with

14  respect to individuals who fall just on the other side of them, but if the concept of a filing deadline

15  is to have any content, the deadline must be enforced."  *United States v. Locke*, 471 U.S. 84, 101

16  (1985); *see also Lookingbill v. Cockrell*, 293 F.3d 256, 264-65 (5th Cir. 2002) (statute of

17  limitation barred petition filed four days late), *cert. denied*, 537 U.S. 1116 (2003); *United States v.*

18  *Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) ("Foreclosing litigants from bringing their claim

19  because they missed the filing deadline by one day may seem harsh, but courts have to draw the

20  lines somewhere [and] statutes of limitations protect important societal interests . . . . The deadline

21  simply was missed. That is not grounds for equitable tolling."), *cert. denied*, 531 U.S. 878 (2000).

22         In light of the above, Plaintiffs' Motion for Leave to File their Third Amended Complaint

23  to name Officer Martinez is **DENIED** as to Plaintiffs' unlawful seizure claim.

24         2.    <u>Claims Against Sergeant Leong</u>

25         As with Officer Martinez, Plaintiffs' claim against Sergeant Leong under Claim 1 for

26  unlawful seizure is likewise barred by the statute of limitations, which ran two years after Leroy

27  knew of the seizure of his vehicle.

28         Plaintiffs also seek to bring a claim against Sergeant Leong for "denial of procedural due

United States District Court
Northern District of California

14

process on unreasonable seizure and abatement of Leroy's vehicle." TAC ¶¶ 33-34. The issue is whether that claim is futile as barred by the statute of limitations, or whether leave to amend should be denied on some other ground. The City Defendants challenge both the accrual date of Plaintiffs' claim and whether they can relate it back to the filing of the initial Complaint. Alternatively, the City Defendants argue that Plaintiffs' procedural due process claim fails on its merits or because Plaintiffs unduly delayed in naming Sergeant Leong in their Complaint.

> a. *Accrual Date of Procedural Due Process Claim*

Plaintiffs assert that Sergeant Leong violated the Fourteenth Amendment when "Defendant Leong refused [to] release [the Mazda] to Leroy upon his offer to pay the fees in violation of [California Vehicle Code] § 22850.3, which required its release." TAC ¶ 34. None of Plaintiffs' past complaints or the TAC allege the date on which Leroy and Sergeant Leong met, but presumably it was sometime after November 7, 2011, when Leroy went to the station to pay the required fees but was unable to meet with Sergeant Leong, and before December 15, 2011, when Leroy's vehicle was sold by the company that towed and stored the vehicle. *See* TAC ¶¶ 23-29. The timeliness of Plaintiffs' claim against Sergeant Leong depends on when Plaintiff knew or had reason to know of the injury that forms the basis of his action. *See Canatella*, 486 F.3d at 1133.

"A procedural due process claim accrues when a plaintiff is given final notice that he would not receive further process." *Knox v. Davis*, 260 F.3d 1009, 1015 (9th Cir. 2001) (citing *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 320 (9th Cir. 1991)). The problem is that the TAC does not establish when Leroy received such notice. There are at least three dates on which the Plaintiffs' claim could have accrued. First, the City Defendants argue that the "notice" occurred on October 27, 2011 with the certified abatement letter, which told Plaintiffs that "if not [sic] appeal was received, the Chief of Police has the authority to remove and dispose of the vehicle, without a hearing." City's Suppl. Br. at 5. The Court is not persuaded by this argument, as Plaintiffs' SAC and TAC have consistently indicated that Plaintiffs' never received such notice. TAC ¶¶ 24, 30; SAC ¶ 29. The City Defendants have not shown otherwise.[3]

---

[3] The City Defendants attached a copy of the letter as well as the Certified Mail Receipt slips. *See* Allen Decl., Ex. B., Dkt. No. 77-2. Even if the Court could properly consider this evidence, the

United States District Court
Northern District of California

Second, the City Defendants alternatively argue that "[a]t the very latest, Leroy Spitzer's procedural due process claim accrued no later than when Leroy Spitzer came into the police station and spoke with Sgt. Leong, who told him the vehicle had been abated." *Id.* at 5 n.4. The TAC does assert that at some point after November 7, 2011, when Leroy first visited the Police Department about his vehicle, Leroy "finally" met with Sergeant Leong, who told Leroy that "he wouldn't release Leroy's Mazda because it had been 'abated'" and "waved" a paper at Leroy saying "we sent you a letter[.]" TAC ¶ 29. But absent from the allegations are a date on which this discussion took place, and the City Defendants are quick to point out that "Plaintiffs' Supplemental Brief does not contend this conversation occurred on or after November 22, 2011[,]" i.e., two years before the filing of Plaintiffs' Complaint. City's Suppl. Br. at 5 n.4.

Third, although Plaintiffs confuse the issue with their discussion about the accrual of a conspiracy cause of action, they nevertheless indicate that the Court should consider the accrual date as December 15, 2011, the date Leroy was permanently deprived of his Mazda when it was sold by the company that had towed and stored it. Pls.' Suppl. Br. at 5; *see also* TAC ¶ 30.

The parties provided no case law on point suggesting which of the above dates should indicate to Plaintiffs that they would receive no further process, but the Court finds the Ninth Circuit's decision in *Hoesterey* most on point. As described above, *Hoesterey* considered the constructive termination of a city employee, who alleged that the City's failure to provide him with a pretermination hearing violated both the United States and the California constitutions. *Hoesterey*, 945 F.2d at 318. The issue before the Court of Appeals was whether the statute of limitations of his due process claim ran from the date he received notice of the decision to terminate his employment or from his last date of his employment. *Id.* at 317-18.

The court held that "to trigger the statute of limitations, [the plaintiff] needed to have received notice, not only of the termination decision, but also that the decision was final and that it would be followed by no further process." *Id.* at 320. Critical to the determination of that case, the court noted that "[n]othing in the complaint suggests that [the plaintiff] was informed or

---

Certified Mail Receipt does not indicate that it was ever received as it is not signed, by Plaintiffs or otherwise. *See id.*

should otherwise have known that he would receive neither such notification nor a pretermination hearing" prior to his actual termination. *Id.* Although the plaintiff had arguably received notice of the decision to terminate before his last day of work, the court held that "[t]o alert [the plaintiff] to the accrual of his claims, this notice would need to be unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination of the employment decision." *Id.* "In the absence of such unequivocal notice, it would only be on the last day of employment that [the plaintiff] could become aware that the decision was final and that no further process could be forthcoming prior to termination." *Id.* In other words, it was "[o]nly when [the plaintiff]'s employment was actually terminated, on his last day of work, . . . that he [knew he] would receive no written notice or pretermination hearing." *Id.* Given that lack of notice, the court held that it would only be on the employee's final date of work that the statute of limitations period would begin to run. *Id.*

This case is similar to *Hoesterey* as "[n]othing in the complaint suggests that [Leroy] was informed or should otherwise have known" that the towing and abatement of his vehicle would be "accompanied by no further process." *Id.* Accepting the factual allegations in Plaintiffs' proposed TAC as true, Plaintiffs' never received the abatement letter and thus had no notice that no further process was available after the vehicle was towed. *Cf. RK Ventures*, 307 F.3d at 1058 ("Appellants knew of the abatement action when they received notice of it"). The towing itself could be taken as a form of "notice," but *Hoesterey* requires more—"[t]o alert [the plaintiff] to the accrual of his claims, this notice would need to be unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination of the employment decision." *Hoesterey*, 945 F.2d at 320. Plaintiffs' prior complaints and proposed TAC demonstrate that Leroy believed that there might be change in position about the seizure of his vehicle, as he alleges that he went to the Police Station to attempt to pay a fee so he could re-take possession of the vehicle. SAC ¶ 25; TAC ¶ 27. As in *Hoesterey*, Leroy alleges that he was unaware at this time that there would be no further process related to the towing of his vehicle. Similarly, nothing in the proposed TAC establishes that the conversation with Sergeant Leong gave Leroy "unequivocal notice" that there would be no retreat or change in

position on the seizure of the Mazda.

Generally, defendants bear the burden of proving an affirmative statute of limitations defense, *see Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008), but the City Defendants have not done so in opposing this Motion.  Given Plaintiffs' allegations and the absence of contrary evidence, the Court cannot find that Plaintiffs had unequivocal notice that there would be no further process prior to the vehicle's final sale on December 15, 2011.  Thus, Plaintiffs' procedural due process claim accrued on that date.

### b.     Relation Back

Taking their allegations as true, the Court finds that Plaintiffs' procedural due process claim falls within the two year period prior to filing their initial Complaint.  However, the City Defendants have also challenged whether Plaintiffs can relate back this claim.  In determining whether a claim relates back to the filing of a prior complaint, the Court "consider[s] both federal and state law and employ whichever affords the 'more permissive' relation back standard." *Butler*, 766 F.3d at 1201.  California Code of Civil Procedure section 473(a)(1) governs amendment of pleadings, but does not expressly allow relation back amendments.  California courts have held that section 473(a)(1) "does not authorize the addition of a party for the first time whom the plaintiff failed to name in the first instance." *KerrMcGee Chem. Corp. v. Superior Ct.*, 160 Cal. App. 3d 594, 598-99 (1984).  However, "where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004) (citations omitted).  "Thus, section 474 of the California Code of Civil Procedure allows plaintiffs to substitute a fictional 'Doe' defendant in a lawsuit with a named defendant, so long as the plaintiff was unaware of the defendant's true identity at the time the prior complaint was filed." *Felarca v. Birgeneau*, 2014 WL 7140262, at *3 (N.D. Cal. Dec. 12, 2014).  For section 474 to apply, however, "the plaintiff must be 'genuinely ignorant' of the defendant's identity at the time the original complaint is filed." *Butler*, 766 F.3d at 1202 (quoting *Woo v. Superior Court*, 75 Cal. App. 4th 169, 177 (1999)).  Section 474's relation-back doctrine applies even if the plaintiff's ignorance is the result of his or her own

United States District Court
Northern District of California

18

negligence.  *Woo*, 75 Cal. App. 4th at 177.

Under California law, Plaintiffs' amendment as to Sergeant Leong may be related back to the filing of the original complaint.  Plaintiffs have consistently alleged that they did not know Sergeant Leong's true identity, indicating that they believed his name to be "Lt. Leone."  *See* Initial Compl. ¶ 21.  They also alleged that they searched the public records in the Pleasanton Police Department and could not find this person.  *Id.*  This suggests that Plaintiffs were "genuinely ignorant" of Sergeant Leong's identity when they filed the original complaint.  Furthermore, Plaintiffs have maintained their ignorance of Sergeant Leong's identity throughout the various iterations of their Complaint.  *See* FAC ¶ 24; SAC ¶ 26.  Plaintiffs' allegations that they were ignorant of Sergeant Leong's identity are plausible, and as such, section 474 applies, permitting Plaintiffs to name Sergeant Leong.  Plaintiffs' claims are thus timely and properly related back.

### c.   Merits of the Claim: Integral Participation

The City Defendants also contend that Plaintiffs' procedural due process claim fails on its merits for lack of integral participation by Sergeant Leong.  City's Opp'n at 7-9.  They argue that "[b]ecause Sergeant Leong did not seize the vehicle, he is not liable for whether or not related procedures and/or due process were followed."  City's Opp'n at 9.  Defendants provide no case law or other authority for this theory.  As in their earlier Motion to Dismiss, they cite generally to *Blankenhorn v. City of Orange* for the broad proposition that "[a]n officer's liability under section 1983 is predicated on his integral participation in the alleged violation."  485 F.3d 463, 481 n.12 (9th Cir. 2007) (citing *Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir. 1996)).  But *Blankenhorn* does not limit liability to the officer that actually seizes the vehicle; rather, it provides that "'integral participation . . . require[s] some fundamental involvement in the conduct that allegedly caused the violation.'"  *Id.* (quoting *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004)).  Plaintiffs' TAC suggests that Sergeant Leong was integrally involved with denial of procedural protections following the Mazda's abatement as Leroy was told he would have to speak with Sergeant Leong to inquire about his towed vehicle, he was unable to meet with Sergeant Leong on multiple occasions, and Sergeant Leong told Leroy that he would not release the Mazda.  TAC ¶¶

United States District Court
Northern District of California

1    28-29.  Taking these facts as true, it is possible that Sergeant Leong could be liable if his acts

2    contributed to a violation of Leroy's procedural due process rights.  *See* Order re: Mot. to Dismiss,

3    Dkt. No. 26 at 8-9.

4                   *d.      Undue Delay*

5          Finally, the City Defendants assert that Plaintiffs delayed in amending their Complaint

6    because they discovered Sergeant Leong's name by at least December 2014, when discovery was

7    exchanged, but they did not seek leave to file their TAC until February 2015.  In support,

8    Defendants cite *Barrows v. American Motors Corp.*, 144 Cal. App. 3d 1, 8 (1983) for the

9    proposition that "substantial authority supports [the] argument that unreasonable delay in filing an

10   amendment after actually acquiring such knowledge can bar a plaintiff's resort to the fictitious

11   name procedure."  City's Opp'n at 7.  *Barrows*, however, ultimately found that the defendants in

12   that case "did not show that plaintiffs should be barred from amending on grounds of unreasonable

13   delay in filing the amendment" even where a year had passed from the time they acquired the

14   knowledge of the missing defendant's identity.  *Barrows*, 144 Cal. App. 3d at 9.  Rather, the

15   *Barrows* court found that "[i]n order to prevail on the kind of motion involved here, however, a

16   defendant must show specific prejudice" and "cannot rely simply on the general policy of the

17   applicable statute of limitations."  *Id.*  The *Barrows* court found no specific prejudice to the

18   defendants as a result of the delay and also noted that there was no evidence that Plaintiffs had

19   actual knowledge of the identity of the missing defendant.  *Id.*  The Court of Appeal held that

20   under California law "[i]n determining the propriety of a plaintiff's Doe allegations in the original

21   complaint, the courts look only to the plaintiff's actual knowledge at that time.  The plaintiff is not

22   charged with knowledge of the defendant's true identity which could have been acquired by

23   reasonable diligence."  *Id.* at 10 n.4 (citations omitted).

24         As in *Barrows*, there is no indication that Plaintiffs had actual knowledge of Sergeant

25   Leong's identity at the time of filing their initial Complaint, nor have Defendants made any

26   showing of prejudice other than the general statute of limitations.  *Cf. Jackson*, 902 F.2d at 1387-

27   89 (holding that prejudice and undue delay are sufficient to deny leave to amend).  Thus, the Court

28   finds no grounds for finding Plaintiffs' proposed amended complaint futile or for finding that

United States District Court
Northern District of California

20

1    Defendants would be prejudiced by permitted claims against Sergeant Leong.  Even though

2    Plaintiffs may have delayed somewhat between their discovery of Sergeant Leong's identity and

3    the filing of the instant Motion, this delay is negligible where there is no showing of prejudice nor

4    any indication that Plaintiffs' delay was the result of bad faith.

5        In sum, the Court finds no cause to prohibit Plaintiffs from amending their Complaint to

6    name Sergeant Leong as to the procedural due process claim.  Accordingly, Plaintiffs' Motion for

7    Leave to File their Third Amended Complaint to name Sergeant Leong is **DENIED** as to the

8    unlawful seizure claim and **GRANTED** as to the procedural due process claim.

9        3.    <u>Claims Against Officer Tujague</u>

10       The City Defendants also challenge Plaintiffs' attempt to name Officer Tujague, arguing

11   that (1) claims against him are barred by the statute of limitations, (2) Plaintiffs unduly delayed in

12   seeking to amend their Complaint, and (3) that claims again him fail on their merits.

13           a.    *Undue Delay and Statute of Limitations*

14       The second and third arguments are related as the City Defendants assert that Plaintiffs

15   have known of Officer Tujague since they filed their initial Complaint.  They argue that Plaintiffs

16   knew the name and role of Officer Tujague by September 17, 2012, because, in addition to being

17   their arresting officer, his name and I.D. number were on the warrant to their home.  City's Opp'n

18   at 3.  But Plaintiffs have alleged that the warrant they received only said that Officer Tujague was

19   the affiant, but did not describe his role in the earlier events, and most importantly, did not attach

20   the declaration of probable cause.  TAC ¶ 104; SAC ¶ 105.  Nor is there any indication that

21   Plaintiffs learned Officer Tujague's name through his interaction with Plaintiffs during their arrest,

22   such as facts indicating that he had told Plaintiffs his name.  Finally, Plaintiffs have pleaded that

23           Defendant City of Pleasanton's Police Department refused
             plaintiffs' repeated requests that they provide them a copy of their
24           arrest reports.  The number and identities of police officers and other
             persons who were involved in the unlawful seizure of Plaintiffs'
25           persons, and the unlawful entry and search of their property are,
             therefore unknown.
26

27   SAC ¶¶ 14, 100.  Accordingly, the Court finds that Plaintiffs have alleged plausible facts that they

28   did not know the identity of Officer Tujague on September 17, 2012.

United States District Court
Northern District of California

United States District Court
Northern District of California

1     Alternatively, Defendants assert that Plaintiffs knew of Officer Tujague by at least

2 November 2014, when the City Defendants mailed their Rule 26 initial disclosures to Plaintiffs

3 naming Officer Tujague.  City's Opp'n at 2 (citing Allen Decl., Ex. F, Dkt. No. 77-6).  It is not

4 clear from the cited exhibit that Officer Tujague was named in these disclosures as the exhibit

5 attaches only a photocopy of a CD, rather than the internal document showing the disclosed name;

6 the City Defendants did not produce the actual CD.  In any case, the City Defendants contend that

7 even if Plaintiffs did not know Officer Tujague's identity until December 2014 when the City

8 Defendants submitted their discovery responses, by waiting to file this motion for leave to amend

9 their complaint until February 2015, Plaintiffs unduly delayed.

10     As discussed above, the City Defendants have provided no indication that they were

11 prejudiced by this delay in naming Officer Tujague, and thus this minor delay will not weigh

12 against Plaintiffs' Motion.  Furthermore, as Plaintiffs have alleged facts indicating that they were

13 genuinely ignorant of Officer Tujague's identity at the time of filing their initial Complaint (as

14 well as their SAC, the operative Complaint), the Court finds that section 474 of the California

15 Code of Civil Procedure allows Plaintiffs to name "police officer Doe 5" as Officer Tujague.  *See*

16 Cal. Civ. Proc. Code § 474; *Butler*, 766 F.3d at 1202.  As such, claims against Officer Tujague are

17 not barred by the two year statute of limitations.

18          *b.     Merits of Claims Against Officer Tujague*

19     The City Defendants also contend that the two claims proposed against Officer Tujague

20 fail on their merits and are therefore futile.  City's Opp'n at 10.  Plaintiffs seek to allege two

21 causes of action against Officer Tujague: one for Fourth Amendment unlawful seizure for their

22 arrest; another for Fourth Amendment warrantless entry and search of the home.  TAC ¶¶ 108-11.

23 The City Defendants assert that the unlawful arrest claim "fails because probable cause existed to

24 believe Plaintiffs had violated Health & Safety Code § 11379.6" and the "warrantless entry claim

25 fails because Officer Tujague only entered the backyard attempting to find Leroy" and "[n]o

26 warrant is required under such circumstances."  City's Opp'n at 10.  Finally, they maintain that

27 "the warrantless search claim fails because police possessed a warrant to search."  *Id.*

28     As to Plaintiffs' unlawful arrest claim, "[t]he Fourth Amendment requires police officers to

have probable cause before making a warrantless arrest." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (citations omitted). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id.* (citations omitted). "Mere suspicion, common rumor, or even strong reason to suspect are not enough." *Id.* (citations and internal marks omitted).

Plaintiffs have alleged that "[t]here was no probable cause for either the arrest or the warrant because there were no chemicals and no manufacturing apparatus at the property for the production of controlled substances, and no reasonable basis for believing there was." TAC ¶ 105; SAC ¶ 106. They also allege that when Officer Tujague seized them they were "lawfully removing household chemicals from their property that they had properly gathered together for purposes of sorting and disposal." TAC ¶ 99; *see also* SAC ¶ 99. The allege that "[t]he chemicals had been a subject of the show cause hearing on Sept. 12, 2012" just days before the seizure, and that "[t]he house and chemicals had previously been thoroughly inspected." TAC ¶ 105. Plaintiffs contend that after the inspection it was "generally known that no drug manufacturing chemicals or drug lab [were] present on defendants' property." *Id.* Plaintiffs' allegations that they were disposing of household chemicals from the home, and those chemicals had been inspected only days before, support their claim that probable cause did not exist.

The City Defendants, however, provided Officer Tujague's affidavit of probable cause, seemingly to show that Plaintiffs' allegations are futile. In determining whether a proposed amendment is futile the Court applies the same standards as that on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Miller*, 845 F.2d at 214 (citations omitted). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). Plaintiffs did not specifically object to this evidence, nor did they include any evidence controverting the City Defendants' affidavit.

United States District Court
Northern District of California

1    Nonetheless, the Court finds that such evidence is inappropriate for consideration at this

2    time.  The Court will not convert Plaintiffs' Motion for Leave to Amend into a summary judgment

3    motion where the claims against Officer Tujague are not yet properly before the Court.  While "[a]

4    court may . . . consider certain materials—documents attached to the complaint, documents

5    incorporated by reference in the complaint, or matters of judicial notice—without converting the

6    motion to dismiss into a motion for summary judgment[,]" *Ritchie*, 343 F.3d at 908 (citations

7    omitted), the City Defendants did not request that the Court take judicial notice of this document,

8    nor have they shown that the document is incorporated by reference into the complaint.  *Cf.*

9    *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the court may consider documents "whose

10   contents are alleged in a complaint and whose authenticity no party questions, but which are not

11   physically attached to the [plaintiff's] pleading.").  Given the procedural posture of this case, the

12   Court will not consider the contents of this document in ruling on Plaintiffs' Motion for Leave to

13   Amend.  Accordingly, at this time, Plaintiffs may assert a claim against Officer Tujague as they

14   have alleged plausible facts that he did not have probable cause to arrest them.

15        Plaintiffs' second proposed claim against Officer Tujague for unlawful entry and search of

16   their home is similarly viable.  While the City Defendants assert that they had a warrant to enter

17   and search the home, Plaintiffs have alleged that they were never shown a warrant before the

18   Police began their search, and furthermore that the time-stamp on the warrant they later found

19   posted to their home was for hours after the search took place.  TAC ¶¶ 102-04.  The City

20   Defendants also argue that the unlawful search and entry claim is futile because a back yard is a

21   public place and as such, Officer Tujague was permitted to be on Plaintiffs' yard without a

22   warrant.  City's Opp'n at 10.  Even assuming, without deciding, that Officer Tujague was

23   permitted to be on Plaintiffs' yard without a warrant, that does not make the claim against him

24   futile, as Plaintiffs have also alleged that Officer Tujague entered and searched Plaintiffs' house

25   without a warrant.  TAC ¶¶ 110-11.  "[S]earches and seizures inside a home without a warrant are

26   presumptively unreasonable." *United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012)

27   (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  Given Plaintiffs' allegations, the City

28   Defendants have not shown that Plaintiffs' claim is necessarily futile.

United States District Court
Northern District of California

24

In view of the above, the City Defendants have not shown that Plaintiffs' claims against Officer Tujague are futile.  Nor have they established that they would suffer any prejudice if Plaintiffs amended their Complaint at this time.  While they contend that Plaintiffs acted in bad faith in not naming Officer Tujague until now, as discussed above, the Court finds these delay negligible and there is no evidence suggesting that Plaintiffs' purposefully delayed or acted in bad faith by amending their Complaint to name Officer Tujague at this time.  Accordingly, the Court finds no cause for prohibiting Plaintiffs to amend at this time, and therefore **GRANTS** Plaintiffs' Motion for Leave to Amend to add claims against Officer Tujague for violation of their Fourth Amendment rights.

### 4.    Delayed Service Under Rule 4(m)

Finally, the City Defendants raise the issue of service under Federal Rule of Civil Procedure 4(m).  Service must be made upon defendant within 120 days of filing of the complaint, otherwise the court has authority to dismiss the action as to that defendant.  Fed. R. Civ. P. 4(m).  "The Court may dismiss 'Doe' defendants who are not identified and served within 120 days after the case is filed pursuant to FRCP 4(m)."  *Sedaghatpour v. California*, 2007 WL 2947422, at *2 (N.D. Cal. Oct. 9, 2007).  The Ninth Circuit has held that the time to serve defendants runs from the filing of the new complaint.  *See McGuckin v. United States*, 918 F.2d 811, 812-13 (9th Cir. 1990).  This approach comports with the policies underlying the rule.  *See Fimbres v. United States*, 833 F.2d 138, 139 (9th Cir. 1987) ("Rule 4(j) [Rule 4(m)'s predecessor] is intended to force parties and their attorneys to be diligent in prosecuting their cause of action.") (citing *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985)).

Nonetheless, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  In the Ninth Circuit, "[a]t a minimum, 'good cause' means excusable neglect."  *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).  "[G]ood cause generally means 'that service has been attempted but not completed, that plaintiff was confused about the requirements of service, or that plaintiff was prevented from serving defendants by factors beyond his control."  *Chemehuevi Indian Tribe v. Wilson*, 181 F.R.D. 438, 440 (N.D. Cal. 1998).  Evasion of service can also constitute good cause.  *Wei*, 763

1   F.2d at 371.  Mere attorney inadvertence, however, does not qualify as good cause.  *Id.* at 372.

2       The City Defendants argue that Plaintiffs lack good cause because they failed to take

3   reasonable steps to identify the Doe Defendants within the 120-day period after filing their SAC.

4   City's Opp'n at 7-8.  The Court agrees.  Nothing prevented Plaintiff from pursuing the Rule 26(f)

5   conference earlier in order to speed discovery, seeking the Court's permission to serve discovery

6   before the Rule 26(f) conference, filing a motion to extend the 120-day service deadline, or

7   serving these Defendants immediately after discovering their names.  Plaintiffs' Reply did not

8   address Rule 4(m), nor did they provide any support to show good cause for their delay.

9       Nonetheless, the Ninth Circuit has held that district courts have broad discretion under

10  Rule 4(m) to extend time for service even without a showing of good cause.  *See United States v.*

11  *2,164 Watches*, 366 F.3d 767, 772 (9th Cir. 2004) (citing *In re Sheehan*, 253 F.3d at 513).  This

12  holding is also consistent with the Advisory Committee Notes to Rule 4(m), which state that the

13  rule "explicitly provides that the court shall allow additional time if there is good cause for the

14  plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a

15  plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause

16  shown."  Fed. R. Civ. P. 4 advisory committee's note.

17      Although the Court finds a lack of good cause for Plaintiffs' failure to effect service within

18  120 days, the Court will exercise its discretion to extend the period for service**.**  The Court chooses

19  to exercise its discretion here because the City Defendants are all represented by the same counsel

20  and they have known that Plaintiffs intended to sue a higher ranking member of the City of

21  Pleasanton Police force whose name resembled Leong in connection with the abatement of

22  Leroy's vehicle.  Additionally, the City Defendants knew that Plaintiffs intended to sue the Officer

23  who arrested them and handcuffed them to the fence.  The City Defendants assert no prejudice that

24  could befall them if Plaintiffs serve Sergeant Leong and Officer Tujague at this time.

25      As such, Plaintiffs' Motion for Leave to Amend their Complaint to name Officer Tujague,

26  as well as Sergeant Leong for the procedural due process claim, is **GRANTED**.  All service must

27  be completed **by April 27, 2015**.

28  //

United States District Court
Northern District of California

United States District Court
Northern District of California

**B.      Claims Against McGrew**

McGrew opposes Plaintiffs' motion on the ground that Plaintiffs have failed to show that their proposed amendment overcomes the basis for this Court's prior dismissal of Plaintiffs' claims against McGrew and is therefore futile.  The Court previously dismissed McGrew in June 2014 for lack of jurisdiction.  Dkt. No. 44 (Order re: Mot. to Dismiss).  Specifically, because the Alameda County Superior Court appointed McGrew as the receiver for Plaintiffs' real and personal property at issue in this case, the Court found that Plaintiffs failed to satisfy a necessary precondition to the initiation of suit against McGrew; namely, the securing of permission to do so from the Superior Court that appointed him.  *Id.* at 6-7.  Despite Plaintiffs' claims that they sought to bring claims against McGrew in his personal capacity, arguing that McGrew was not acting within his statutory powers, the Court found otherwise, noting that "Plaintiffs' allegations fail to establish that any of McGrew's alleged acts or omissions came outside the scope of his statutory powers and the orders of the appointing court." *Id.* at 7.

Now Plaintiffs seek to amend their Complaint to re-assert claims against McGrew, again contending that his allegedly unlawful actions were outside the scope of his receivership powers and duties.  Plaintiffs reincorporated virtually all of the same facts and claims previously dismissed by the Court.  *Compare* SAC ¶¶ 113-130 and TAC ¶¶ 116-139.  The new TAC ¶¶ 117-24, 126-28 implicate this Court's earlier order finding that the Court lacks jurisdiction to hear claims against McGrew that arise out of his duties as the court-appointed receiver where Plaintiffs have not received leave to sue from the appointing court.  *See Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*, 585 F.3d 1211, 1216 (9th Cir. 2009) ("The rule was first announced 128 years ago in *Barton v. Barbour.* The Supreme Court held that when a plaintiff sues a receiver outside of and without the permission of the appointing court, the non-appointing court is without jurisdiction to entertain the suit." (citing *Barton v. Barbour*, 104 U.S. 126, 131 (1881)); *see also Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 945 (9th Cir. 2002).

Plaintiffs attempt to evade this well-settled rule by stating in a conclusory fashion that McGrew acted "outside the scope of his authority as a receiver."  FAC ¶¶ 129; 130-32; 134-37. Bare assertions and conclusory allegations are insufficient to state a claim.  *See Ashcroft v. Iqbal*,

556 U.S. 662, 681 (2009); *see also Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012)

("Regardless of the manner in which a plaintiff denominates his claim, courts applying the *Barton*

doctrine must look to the substantive allegation to determine whether a claim is related to the

[receiver's] duties."). The Court has already found that the allegations asserted in the SAC fail to

establish that McGrew's alleged acts or omissions came outside the scope of his statutory powers

and the orders of the appointing court. Order at 7. The question then, is whether anything in the

TAC demonstrates that McGrew's acts were taken outside of his statutory authority.

A suit does not require leave of the court when the trustee acts in excess of his authority or

in an unofficial capacity. *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967), *cert. denied*,

390 U.S. 925 (1968). In *Vrooman*, the Ninth Circuit permitted a third party to sue a receiver

without leave of his appointing court for "wrongfully possessing property which [wa]s not an asset

of the estate." *Id.* There, the trustee in bankruptcy, by "forcible entry" and without court order,

took possession of real property belonging to a third party. *See id.* at 560-61. The Court noted

that the *Vrooman* receiver made two mistakes: (1) breaking into and seizing possession of the real

property when the property was not listed as an asset of the bankrupt's estate; and (2) not

relinquishing possession of the real property when he discovered that title was claimed by and

recorded by a third party. *Id.* at 560. The court noted that the trustee could have and should have

obtained a turnover order directing delivery to the trustee of the property that was an asset of the

bankrupt estate. *Id.* at 560-61. But "[i]n neither case would it have been necessary for the

receiver-trustee to have taken possession of the real property here involved without first having

obtained an order of the Court specifically directing him to do so." *Id.* at 561. Under those

circumstances, the Ninth Circuit permitted the third party to pursue his action in state court against

the trustee without obtaining prior approval of the bankruptcy court. *Id.*

The *Vrooman* Court found that the receiver had no authority to act as he did. This case is

different. While McGrew's activities may not have been authorized by the appointing court,

taking the facts in the proposed TAC as true, his actions were taken pursuant to his receivership

duties. Courts have been reluctant to find that court-appointed receivers are acting outside the

scope of their duties merely because they performed those duties inadequately. *See In re Bay Area*

*Material Handling, Inc.*, 1995 WL 747954, at *4 (N.D. Cal. Dec. 6, 1995) (plaintiffs' "claims were not authorized by leave of the bankruptcy court, yet were based on activities by [receiver defendants] that were within their official capacities"), *aff'd* , 111 F.3d 137 (9th Cir. 1997); *Satterfield*, 700 F.3d at 1236 (refusing to recognize a generalized tort exception for the *Barton* doctrine for claims asserted against the receiver in his individual capacity even if receiver took acts with improper motives); *In re Davis*, 312 B.R. 681, 687 (Bankr. D. Nev. 2004) ("[A]ll of the conduct about which the Debtors complain was within the scope of the Counterdefendants' duties. The Debtors simply contend that Counterdefendants performed those duties (or failed to perform them) negligently or based on an improper bias against them."). As the *Davis* court explained: "A trustee's immunity from suit without leave of the appointing court would serve no purpose if suit could be brought without leave of court simply by alleging that the trustee had performed his or her duties negligently." 312 B.R. at 687.

Plaintiffs assert that McGrew acted outside the scope of his authority on numerous occasions—some occasions, though, are simply allegations that McGrew performed his duties negligently. For instance, Plaintiffs' claims that McGrew failed to file required monthly reports, failed to appear at hearings, failed to be neutral, failed to seek advice from the court when needed, failed to obtain and file the receiver's bond, failed to file the required inventory, and failed to conform to the requirement to pay property taxes. TAC ¶ 129(a). These are all allegations about performing or failing to perform duties that were within the scope of McGrew's official authority. Unlike *Vrooman*, these claims are related to how McGrew performed the duties assigned to him, rather than whether he took *ultra vires* actions in excess of his authority. *See, e.g.*, *Satterfield*, 700 F.3d at 1236. The Decon contract is one such example. While McGrew may have acted before seeking prior approval from the appointing court, he nonetheless sought and received approval from the court for retaining Decon. *See discussion in* Order at 6-7 (taking Judicial Notice of the appointing court's order approving the Decon contract). The appointing court's order states that it approved the retention of Decon to "abate conditions" at Plaintiffs' property. *Id.* McGrew retained Decon and sought approval from the appointing court all within his receivership duties to "undertake responsibility for [the property's] rehabilitation." *See* Order after Hearing Confirming

1    Appointing of Receiver, Dkt. No. 43-2.[4]  As this Court previously found, Plaintiffs have not

2    alleged any facts making it plausible that McGrew's actions or omissions noted above were

3    outside the scope of his receivership.

4          This is not the end of the inquiry, however, as Plaintiffs have alleged additional facts in

5    their TAC.  Specifically, for the first time Plaintiffs allege that McGrew acted outside the scope of

6    his authority by seizing and finally depriving Leroy of his personal property.  TAC ¶ 129(b).

7    Plaintiffs allege that neither McGrew nor the supervising court had jurisdiction over Leroy's

8    personal property, and in any case, McGrew did not seek advice or approval from the court

9    regarding the personal property's disposition and seizure.  *Id.*  Plaintiffs allege that Leroy lost

10   valuable personal property in his garage, as well as the furniture and personal items stored in the

11   spare bedroom, which was given to charities, recycled for over $5,000, and converted by Decon

12   personnel without credit to the estate.  *Id.* ¶ 124.  According to the TAC, McGrew knew that

13   Leroy's most valuable personal property was being converted by the Decon contractor.  *Id.*

14         Plaintiffs' allegations again do not show that McGrew's actions were in excess of his court

15   appointed duties.  The order appointing McGrew as receiver authorizes and orders him to remove

16   "interior debris, trash, rubbish, and other materials currently blocking inspections" and to

17   otherwise abate the conditions giving rise to the notice and order against Plaintiffs' property.  *See*

18   Order Appointing Receiver at 3.  Plaintiffs' allegations do not show how McGrew's actions went

19   outside of that Order by, for instance, plausibly alleging that the personal property was valuable.

20   Plaintiffs do not describe in any degree of specificity the personal property that was lost, and even

21   when they assert that it was recycled for $5,000, this does not show that the property had value

22   other than as recycled material; in other words, they do not show that McGrew was acting outside

23   of his receivership duties by allowing this property to be removed.  Plaintiffs also mention that

24   there was furniture, which could have some independent value, but not necessarily.  Plaintiffs'

25   allegations about the property are based on conclusory statements that the property was "valuable"

26   without facts establishing that to be true.  And Plaintiffs' contention that McGrew had no authority

27

28   _____
     [4] The Court also previously took judicial notice of this document.  *See* Dkt. No. 44 at 2 n.1.

United States District Court
Northern District of California

over this property is belied by the order appointing him.  While Plaintiffs may believe that McGrew improperly executed his receivership duties, as written, Plaintiffs' TAC does not assert plausible facts showing that McGrew acted outside of the scope of his duties as receiver.

Finally, Plaintiffs allege that McGrew acted outside the scope of his authority by recording a Deed of Trust on May 28, 2014, as grantor of title to lendors.  TAC ¶ 129(d).  Plaintiffs contend that McGrew granted title and recorded the deed without statutory authority, without prior approval of the appointing court, and without authority under the order appointing him.  *Id.*

"California jurisprudence has long recognized that property subject to a court-appointed receivership is *in custodia legis*, that is, it is in the custody of the court itself."  *In re Domum Locis LLC*, 521 B.R. 661, 667 (Bankr. C.D. Cal. 2014), *as amended* (Dec. 5, 2014) (citing *Pacific Railway Co. v. Wade*, 91 Cal. 449, 455 (1891); *Tapscott v. Lyon*, 103 Cal. 297, 305-06 (1894); 1 Ahart, *Cal. Practice Guide: Enforcing Judgments and Debts*, ¶ 4:937 at 4-170.11 (2014)).  Property under the control and supervision of the receivership court under the doctrine of *in custodia legis* cannot be transferred without the permission of the receivership court.  *In re Domum Locis*, 521 B.R. at 677.  California Code of Civil Procedure § 568.5 provides: "A receiver may, pursuant to an order of the court, sell real or personal property in the receiver's possession . . . The sale is not final until confirmed by the court."  Thus "California law vests the power to dispose of property subject to a receivership in the receiver alone, and that power is subject to prior authorization from the appointing court."  *In re Domum Locis*, 521 B.R. at 671.

Here, Plaintiffs allege that McGrew sold the Property without the appointing court's approval, which they assert means he acted outside the scope of his authority.  TAC ¶ 129(d).  Plaintiffs' allegations concerning the sale of the Property are sparse.  It is not clear how or in what context McGrew allegedly executed the Deed of Trust.  While the Court must take all plausible facts in the Complaint as true, here Plaintiffs assert that McGrew granted the title without Court approval but they do not say how they know this to be the case.  The Order appointing McGrew permits the sale of the Property in certain events, but the Complaint does not make evident whether such events occurred.  The Court is thus faced with two options: (1) permit Plaintiffs to proceed on allegations that barely establish that McGrew acted outside of the scope of his

31

United States District Court
Northern District of California

1   receivership duties; or (2) dismiss under the *Barton* rule and require Plaintiffs to seek leave of the

2   appointing court before proceeding on the claims against McGrew.

3           The Court finds that the latter option is more appropriate here.  First, in their eagerness to

4   hold McGrew accountable for his alleged wrongs, Plaintiffs have consistently confused McGrew's

5   actions or inactions under his receivership duties to be outside of the scope of those duties because

6   those actions were not taken to Plaintiffs' liking.  While these actions may be unlawful, Plaintiffs

7   have not alleged facts making it plausible that McGrew in fact acted outside of his receivership

8   duties.  *Cf. Vrooman*, 383 F.2d at 560 (trustee possessed property that was not an asset of the

9   estate but rather belonged to a third party, and as such, the trustee's action was outside of his

10  receivership duties).  Given the sparseness of the facts alleged surrounding the sale of the

11  property, the Court cannot find that McGrew's actions were outside of his authorized duties.

12          Second, the cases Plaintiffs cite show a propensity to conflate the *Barton* rule with a more

13  generalized immunity.  In yet another attempt to evade the Court's initial order dismissing

14  McGrew, Plaintiffs cite *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 991 (2d Cir. 1946) for

15  the proposition that "a decree confirming [such] a sale does not exculpate the receiver."  Reply at

16  3.  *Phelan*, although over half a century old and arising in another circuit, may well be good law,

17  but it does not address the Court's concern or McGrew's challenge that, under the *Barton* rule, the

18  Plaintiffs' must have leave of the appointing court before proceeding in claims against McGrew on

19  the allegations Plaintiffs' assert in their Complaint and proposed TAC.  This is not to say,

20  however, that McGrew will be necessarily exculpated for his allegedly unlawful conduct.

21          Plaintiffs contend that the Court "should not allow official misconduct to escape

22  meaningful review" but that is not the case here.  Rather, the *Barton* rule requires, as a prerequisite

23  to this Court's jurisdiction, that the Plaintiffs receive leave of the appointing court before bringing

24  claims against McGrew in his personal capacity.  Plaintiffs are not remediless—they may seek

25  leave from the appointing court to bring claims against McGrew or file those claims with the

26  appointing court.  *See Bennett v. Williams*, 892 F.2d 822, 825 (9th Cir. 1989) ("[Plaintiff] is not

27  remediless, for he retains his action against [the receiver] in state court.").  Plaintiffs' repeated

28  attempts to assert claims against McGrew related to the performance of his duties as a receiver are

futile until Plaintiffs have leave of the appointing court.  The Court is without jurisdiction to hear these claims unless Plaintiffs satisfy this prerequisite.  Plaintiffs' efforts would be better spent seeking leave from the appointing court, or a remedy with that court, rather than their repeated efforts to evade the *Barton* rule here.

As the Court would be without jurisdiction to hear Plaintiffs' claims against McGrew, they are futile, and Plaintiffs' motion for leave to amend is **DENIED**.

## CONCLUSION

In light of the foregoing, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Leave to Amend.  Plaintiffs may amend their complaint to assert claims against Officer Tujague, as well as Sergeant Leong for the procedural due process claim. However, Plaintiffs may not assert the unlawful seizure claim against Officer Martinez or Sergeant Leong, nor may they assert their proposed claims against McGrew.  Plaintiffs must file their amended complaint within seven days of this order and serve all new defendants **by April 27, 2015.**

**IT IS SO ORDERED.**

Dated: April 6, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge