UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. SPITZER, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TRISHA A. ALJOE, et al.,<br><br>                    Defendants. | Case No.  13-cv-05442-MEJ<br><br>**ORDER RE: MOTION TO RESCIND AND MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Re: Dkt. Nos. 183, 187 |

## INTRODUCTION

Plaintiffs Thomas "Leroy" Spitzer and Craig J. Spitzer ("Plaintiffs") filed this 42 U.S.C. § 1983 action against a number of Defendants, including the City of Pleasanton (the "City"), Trisha A. Aljoe, Jonathan P. Lowell, George Thomas, Walter Wickboldt, Sergeant Robert Leong, and Officer Ryan Tujague ("City Defendants").  On September 1, 2015, Plaintiffs and the City Defendants filed a "Stipulation For Application For Good Faith Settlement" in which they notified the Court they had reach a settlement through private mediation.  Stipulation for Appl. for Good Faith Settlement ("Stip."), Dkt. No. 136; *see also id.*, Ex. A ("Settl. Terms").  The Court granted the Application for Good Faith Settlement on November 6, 2015.  Dkt. No. 152.  In doing so, the Court ordered the parties to file a stipulation for dismissal of the City Defendants by December 4, 2015 or file a status report as to why they had not been dismissed.  *Id.*  The parties timely filed a stipulation dismissing Defendants George Thomas, Walter Wickboldt, Ryan Tujague, and Robert Leong.  Dkt. No. 157.  However, they filed a status report explaining that "[a] stipulation to dismiss Aljoe, Lowell, and the City of Pleasanton [was not] filed because Plaintiffs and Defendants disagree as to the dismissal[.]"  Dkt. No. 158.

This Order now considers the parties' disagreements over the settlement.  The Court has

ordered Plaintiffs and the City, Aljoe, and Lowell (referred to as "Defendants" for purposes of this Order) to attempt to resolve their disputes informally, and they have filed several status reports on this issue. *See* Dkt. Nos. 172, 173, 178. Ultimately, however, they have been unable to resolve this matter and now have filed cross motions to enforce and rescind the settlement agreement. *See* Pls.' Mot., Dkt. Nos. 187-88[1]; Defs.' Mot., Dkt. No. 183. Having considered the parties' motions, the record in this matter, and the relevant legal authority, the Court **GRANTS** Defendants' Motion to Enforce and **DENIES** Plaintiff's Motion to Rescind as set forth below.

## BACKGROUND

Plaintiffs brought this action for violations of their constitutional rights related to, among other things, the abatement of their residence located at 4719 Orangewood Court in Pleasanton, California (the "Property"). Third Am. Compl. ("TAC") ¶ 5, Dkt. No. 98. As part of the abatement, the City began a state-court abatement action, and the Alameda County Superior Court appointed J. Benjamin McGrew as receiver of the Property. *Id.* ¶ 117. McGrew initially allowed Plaintiffs to enter the Property, remove their personal property, and make necessary repairs, but he later barred them from entering and instead contracted with a company to remove their remaining personal property. *Id.* ¶¶ 119, 123-24. McGrew also recorded a deed of trust granting title to the Property to lenders as security for a loan. *Id.* ¶¶ 131(d), 138-39. Plaintiffs allege McGrew took these actions without the Superior Court's approval. *Id.* ¶ 131. Among other things, Plaintiffs allege they lost the use of their house and possession of personal property due to the Property's abatement as well as subsequent threats of arrest upon entry of the Property by certain of the City Defendants. *Id.* ¶¶ 37, 48-61, 70-77.

Plaintiffs bring claims against under 42 U.S.C. § 1983.[2] Originally, they named only the

---

[1] Plaintiffs filed their Motion and Memorandum of Points and Authorities in two separate docket entries, in violation of Civil Local Rule 7-2(b), which requires a motion to contain both the notice of motion and points and authorities in support of the motion in the same document. In any event, for purposes of this Order, the Court refers to "Pls.' Mot." as referencing Plaintiffs' arguments contained in their Memorandum of Points and Authorities, Dkt. No. 188.

[2] Plaintiffs allege (1) violations of the Fourth and Fourteenth Amendments for the unreasonable searches and seizures of the Property and Plaintiffs' real and personal property; (2) violations of the Fourth Amendment for the unreasonable seizure of Plaintiffs' persons; (3) First Amendment

City, Aljoe, Lowell, Thomas, and Wickboldt as Defendants. Dkt. No. 1. They later added McGrew as a Defendant in their First Amended Complaint (Dkt. No. 9), and subsequently filed a Second Amended Complaint on April 20, 2014 (Dkt. No. 27). The Court dismissed McGrew for lack of subject matter jurisdiction on June 30, 2014. Dkt. No. 44 at 6-7. Plaintiffs later filed a Motion for Leave to File a Proposed Third Amended Complaint, in which they sought to (1) name as defendants Police Officer Ryan Tujague and Sergeant Robert Leong of the City, and (2) re-assert claims against McGrew. Dkt. No. 72. The Court allowed Plaintiffs to amend and name Officer Tujague and Sergeant Leong, but denied leave to add claims against McGrew. Dkt. No. 96. Plaintiffs filed the operative TAC on April 13, 2015. Dkt. No. 98.

The City Defendants and Plaintiffs engaged in private mediation with mediator Simon Frankel and settled the case on August 7, 2015. *See* Stip.; Certification of Mediation, Dkt. No. 149. Under the terms of the settlement, the City Defendants agree to (1) pay Plaintiffs $50,000; (2) sign a stipulation for McGrew's removal as receiver in the state-court abatement action, request the appointment of a qualified receiver, and consider Plaintiffs' proposed receiver; (3) submit an attorneys' fee recovery request in the state court abatement action for hours worked at no greater than $150 per hour; (4) look for any non-privileged communications regarding McGrew and to either provide Plaintiffs' counsel with additional documents or inform him that no such documents exist; and (5) prepare and submit a Release for Plaintiffs' notarized signature and to issue the settlement check within 14 days of receipt of the notarized release. *See* Settl. Terms. Specifically Term No. 2 provides that:

> Defendants will sign a stipulation prepared by Plaintiffs and acceptable to Defendants for McGrew's removal as receiver in the state-court abatement action, and request the state court appoint a qualified receiver. Defendants will consider Plaintiffs' proposed receiver (Edwin Heath). If Defendants consider him materially unqualified, they will notify the Court. If the Court asks the parties for potential receivers, Defendants will submit named for reconsideration. The parties will leave it to the Court's discretion to

---

retaliation and denial of meaningful access to the courts; and (4) conspiracy to unreasonably deprive Plaintiffs of house and personal property without due process. *See* TAC. Plaintiffs also allege the City Defendants committed the foregoing acts as part of a conspiracy to deprive Plaintiffs of their house and personal property without due process of law. *Id.*

1      appoint the new receiver[.]

2   *Id.* Term No. 4 provides that:

3          Defendants will look again for any non-privileged communications
           regarding Receiver McGrew.  Upon conclusions of Defendants'
4          review, they will contact Plaintiffs' counsel and either: (1) provide
           him additional documents; or (2) inform him no such documents
5          exist.  Plaintiffs preserve the right to make a Public Records Act
           Request under California law upon dismissal of the settling
6          defendants herein[.]

7   *Id.*

8          On September 1, 2015, the City Defendants filed an Application seeking the Court's

9   determination of a good faith settlement, and Plaintiffs stipulated that the settlement is a good faith

10  settlement for purposes of California Code of Civil Procedure sections 877 and 877.6.  Stip. ¶ 1.

11  The Court found the settlement was made in good faith for purposes of California Code of Civil

12  Procedure sections 877 and 877.6.  Dkt. No. 152.

13         A series of unfortunate events have led to the parties' current dispute.  The essential facts

14  are as follows.  The parties' settlement agreement put the onus on Plaintiffs to "prepare[]" a

15  stipulation for McGrew's removal, which Defendants would then sign and "request the state court

16  appoint a qualified receiver."  Settl. Term No. 2.  After the settlement agreement was formed—but

17  before preparing the stipulation to remove McGrew—Plaintiffs filed a motion with the state court

18  to terminate the receivership in its entirety or alternatively, to remove McGrew and replace him.

19  Defs.' Req. for Judicial Notice ("RJN"), Ex. A (Pls.' Mot. to Terminate Receivership), Dkt. No.

20  185.[3]  In the motion, Plaintiffs informed the state court that "[a]ll of the City of Pleasanton

21  defendants in the federal case have stipulated to remove McGrew as receiver" and further

22  proposed Edwin Heath as the new receiver.  *Id.*, Ex. A at 3.  Defendants reacted to Plaintiffs'

23  filing, opposing termination of the receivership.  *Id.*, Ex. B; Schwartz Decl., Ex. 4 (Defs.' Opp'n

24  to Pls.' Mot. to Terminate Receivership), Dkt. No. 189.  They also stressed that they had not

25

26  _____

27  [3] The Court takes judicial notice of the documents in Defendants' RJN as they are documents filed
    in the public records, including the state court proceeding.  Fed. R. Evid. 201; *see Reyn's Pasta*
28  *Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial
    notice of court filings and other matters of public record.").

United States District Court
Northern District of California

stipulated to appointing Heath.  *Id.* (both) at 2.  Additionally, while indicating they had agreed to a stipulation to have McGrew replaced, they informed the Court that Plaintiffs had "failed to prepare and present such stipulation for the City's signature" at that point—a true statement by all accounts.  *Id.* (both) at 8.  But there is no indication Defendants provided the state court with the language from the parties' settlement agreement, and Defendants' opposition indicated they had only agreed "not to object" to McGrew's removal.  *Id.* (both) at 8, 10.  Defendants also proceeded to propose another receiver, who it appears Plaintiffs did not know about in advance, and there is no indication the state court asked Defendants for proposed alternative receivers at that point.  *Id.* (both) at 10.  With their opposition, Defendants also submitted a proposed Order, in which they specifically proposed McGrew be terminated "good cause appearing" and that their proposed receiver, Mark S. Adams, be appointed.  *Id.* (both) (*see* attachment, Proposed Order).

A week after Defendants filed their opposition, Plaintiffs prepared a stipulation, which was a modified version of Settlement Term No. 2.  Schwartz Decl., Ex. 3 (proposed stipulation and email exchange).  Defendants informed Plaintiffs they were reviewing the language and would exchange "any proposed revisions."  *Id.*, Ex. 3.  In the meantime, the state court held a hearing on the matter in which Defendant Aljoe told the court the parties "have no stipulation" and that Plaintiffs "waited to the eleventh hour and now we're where they are trying to force us to sign something that's not acceptible [sic]."  *Id.*, Ex. 5 at 21:2-19.  When Plaintiffs' counsel apparently attempted to tell the state court that their proposed stipulation was similar to the settlement term itself, the court stated "I don't really care. The point is you don't have an agreed upon stipulation right now."  *Id.*, Ex. 5 at 21:22-24.  Elsewhere, however, the court acknowledged that "[t]here's clearly a settlement here. [¶] And pursuant to that settlement, they are required to sign a stipulation to remove Mr. McGrew as the State Court, you know, appointed Receiver."  *Id.*, Ex. 5 at 26:5-8.  Aljoe then stated "I explained to our Counsel and to the City Attorney, I don't believe that a stipulation in a Federal Court is controlling on this court.  And that Receiver belongs to you.  [¶] We can't tell you whether you should replace that Receiver or not."  *Id.*, Ex. 5 at 26:18-23.  Before concluding the hearing, the court asked "[i]s there any reason that I shouldn't continue this for a short period of time so that the stipulation between the parties can actually get finalized and I can

actually consider it?"  Second Schwartz Decl., Ex. 1 at 35:8-13, Dkt. No. 201.  Aljoe responded,

"Your Honor, I wouldn't have any problem right now saying that we stipulate that we agreed to

have Mr. McGrew removed, and I still have the same position.  [¶] It has no legal authority with

this court because the Receiver belongs to this court."  *Id.*, Ex. 1 at 35:14-19.  Although Plaintiffs

requested a continuance so they could get the stipulation "in place," it appears the court rejected

that request, immediately stating afterward that the matter was submitted.  *Id.*, Ex. 1 at 36:3-6.

The state court did not grant either Plaintiffs' motion or Defendants' proposed order;

McGrew remains the receiver.  RJN, Ex. D (Order denying McGrew's removal and

acknowledging "[t]he City did agree to sign a stipulation to remove McGrew as receiver and to

replace him with another qualified receiver" but further noting "[t]he agreement between the

parties . . . to enter into this stipulation is in no way binding on this Court").

Defendants now seek their freedom from this case, urging the Court to enforce the

settlement agreement because (1) "the parties entered into a valid, enforceable contract," and (2)

"Defendants have fulfilled all material terms of the contract[.]"  Defs.' Mot. at i.  Plaintiffs, for

their part, do not seek to enforce the settlement agreement.  Rather, they seek rescission of the

agreement in part and the ability to continue to pursue their claims against Defendants in this

Court.

## LEGAL STANDARDS

"It is well settled that a district court has the equitable power to enforce summarily an

agreement to settle a case pending before it."  *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987)

(citations omitted); *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (district court

has "inherent power" to enforce agreement in settlement of litigation before it).  "California law

also provides for summary enforcement of settlement agreements."  *Aki v. Univ. of Cal. Lawrence

Berkeley Nat'l Lab.*, 2015 WL 1778481, at *3 (N.D. Cal. Apr. 17, 2015) (citing Cal. Civ. Proc.

Code § 664.6; additional citation and internal quotation marks omitted).

For the Court to enforce a settlement agreement, two requirements must be met.  First, the

settlement must constitute a "complete" agreement.  *Maynard v. City of San Jose*, 37 F.3d 1396,

1401 (9th Cir. 1994) (quoting *Callie*, 829 F.2d at 890).  Second, both parties must have agreed to

6

the terms of the settlement or authorized their respective counsel to settle.  *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977).

A settlement agreement is a contract, and thus its enforceability is governed state law.  *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (further noting "[e]ach party agrees to 'extinguish those legal rights it sought to enforce through litigation in exchange for those rights secured by the contract.'" (quotation omitted)); *see, e.g.*, *Kirkland v. Legion Ins. Co.*, 343 F.3d 1135, 1140 (9th Cir. 2003) (applying state law to action to enforce settlement agreement).  This is true even if the underlying claims are federal.  *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992); *see also* Cal. Civ. Code § 1646 ("contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.").

Under California law, contract formation requires (1) parties capable of contracting; (2) the parties' consent; (3) a lawful object; and, (4) sufficient cause or consideration.  *Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1230 (2004).  "Mutual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror."  *Id.* (generally citing Cal. Civ. Code §§ 1550, 1565).  Under California law, the intent of the parties determines the meaning of the contract.  Cal. Civ. Code §§ 1636, 1638.  The existence of mutual consent is determined by objective criteria; "[t]he parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.'"  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) (quoting Cal. Civ. Code § 1580); *Paymaster Corp.*, 962 F.2d at 856 ("The relevant intent is 'objective'—that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties. . . .  For this reason, the true intent of a party is irrelevant if it is unexpressed." (citations omitted)).

With respect to interpreting the terms of a contract, the primary goal of contract interpretation is to give effect to the mutual intention of the parties.  *See Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1264 (1992).  The parties' mutual intent is determined by examining a number of factors, including: (1) the words used in the written agreement; (2) the surrounding circumstances under which the parties negotiated or entered into the contract; and, (3) the

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    subsequent conduct of the parties.  *See Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998).  In

2    California, the words of a contract, as understood in their ordinary and popular sense, govern the

3    contract's interpretation if the language is clear.  *See* Cal. Civ. Code §§ 1638, 1641.  While the

4    Court must interpret a contract so as to give effect to the mutual intention of the parties, "the

5    intention of the parties is to be ascertained from the writing alone, if possible[.]"  *Id.* § 1639; *see*

6    *also Titan Grp., Inc. v. Sonoma Valley Cty. Sanitation Dist.*, 164 Cal. App. 3d 1122, 1127 (1985)

7    ("It is the objective intent, as evidenced by the words of the contract, rather than the subjective

8    intent of one of the parties, that controls interpretation.").  "The parties' undisclosed intent or

9    understanding is irrelevant to contract interpretation."  *Founding Members of the Newport Beach*

10    *Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (citation

11    omitted).

12          "Normally if a party enters into a settlement agreement knowingly and voluntarily, the

13    agreement is treated as a binding contract and the party is precluded from raising the underlying

14    claims."  *Arnold v. United States*, 816 F.2d 1306, 1309 (9th Cir. 1987) (citation omitted); *Folsom*

15    *v. Butte Cty. Assn. of Gov'ts*, 32 Cal. 3d 668, 677 (1982) ("Compromise has long been favored. . . .

16    [A] valid compromise agreement has many attributes of a judgment, and in the absence of a

17    showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as

18    a bar to the reopening of the original controversy." (quotations omitted)).  "However, if one party

19    breaches a settlement, the other has the option of enforcing the terms of the settlement or

20    rescinding the settlement and suing on the original claims."  *Arnold*, 816 F.2d at 1309 (citation

21    omitted) (noting "for example, that the government could reinstate its case against a defendant if

22    the defendant breached a settlement agreement." (citations omitted)).

23          California Civil Code section 1689 provides in pertinent part that a contract may be

24    rescinded where (1) consent was "given by mistake, or obtained through duress, menace, fraud, or

25    undue influence, exercised by or with the connivance of the party as to whom he rescinds . . . .";

26    (2) consideration fails through the fault of the party as to whom he rescinds; (3) consideration

27    "becomes entirely void from any cause"; or (4) consideration, before it is rendered to the

28    rescinding party, "fails in a material respect from any cause"; (5) "the contract is unlawful for

causes which do not appear in its terms or conditions, and the parties are not equally at fault"; and (6) "the public interest will be prejudiced by permitting the contract to stand."  Cal. Civ. Code § 1689(b).

<div align="center">

**MOTION TO RESCIND**

</div>

Plaintiffs argue the settlement agreement should be rescinded because: (1) "City Defendants materially violated Settlement Term No. 2, and did so in bad faith, resulting in Plaintiffs not receiving the vital consideration of removal of McGrew[;]" (2) Plaintiffs were "prejudiced during settlement negotiations" because (i) "City Defendants[] failed to produce documents material to settlement before the Settlement Agreement was reached"; (ii) Plaintiffs were "ignorant of newly discovered facts material to settlement"; and (iii) McGrew and City Defendants were "fraudulent[ly] silen[t] on facts material to settlement[;]" (3) "Plaintiffs agreed to the settlement terms under the duress of circumstances[;]" and (4) "The public interest will be damaged by permitting the agreement to stand."  Pls.' Mot. at 2.  Meanwhile, in opposing Defendants' Motion to Enforce, Plaintiffs also claim, among other things, that the agreement as to Term No. 2 is void, involving an agreement to agree in the future.[4]  Pls.' Opp'n at 6-7, Dkt. No. 200.  The Court addresses these arguments below.

**A.    Duress**

Given that Plaintiffs' duress argument runs straight to the issue of whether they could validly consent to the settlement agreement, the Court addresses it first.  Plaintiffs argue they agreed to the settlement "under the duress of the circumstances" and identify factors such as Plaintiff Leroy Spitzer's age, health condition, homeless status, and lack of financial resources to maintain both this action and the state court action.  Pls.' Mot. at 15-16.  They contend Defendants "have been knowingly and unlawfully withholding Plaintiffs' Property[] and Leroy's home under a corrupt receiver, and corrupted receivership[.]"  *Id.* at 15.

Under California law, duress can serve as a basis for rescinding a settlement agreement.  Cal. Civ. Code § 1689(b)(1) (a party to a contract may rescind the same if consent was obtained

---

[4] While this argument was raised in Plaintiffs' Opposition but it is relevant also to the arguments in their Motion to Rescind so the Court considers it along with Plaintiffs' rescisssion arguments.

United States District Court
Northern District of California

through duress, menace, fraud, or undue influence); *see Johnson v. Int'l Bus. Machines Corp.*, 891 F. Supp. 522, 528-29 (N.D. Cal. 1995); *Lanigan v. City of L.A.*, 199 Cal. App. 4th 1020, 1034 (2011).  The doctrine of duress "may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure."  *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158 (1984) (citations omitted); *see also In re Marriage of Broderick*, 209 Cal. App. 3d 489, 499 (1989) ("A contract may be set aside for duress if it was 'obtained by so oppressing a person . . . so as to deprive him the free exercise of his will.'" (quotation omitted)).  However, "[m]erely being put to a voluntary choice of perfectly legitimate alternatives is the antithesis of duress. . . . Encouragement is a far cry from coercion or denial of choice."  *In re Executive Life Ins. Co.*, 32 Cal. App. 4th 344, 391 (1995) (citation omitted).  "[A] contract cannot be rescinded when it appears that consent would have been given and the contract entered into notwithstanding the duress, menace, fraud, undue influence, or mistake relied upon."  *Zone Sports Ctr. Inc. LLC v. Red Head, Inc.*, 2013 WL 2252016, at *9 (N.D. Cal. May 22, 2013) (citing *In re Cheryl E.*, 161 Cal. App. 3d 587, 600 (1984)).

        In support of their duress argument, Plaintiffs cite *Rich & Whillock, Inc. v. Ashton Development, Inc.*, a case where the court affirmed the trial court's finding that a release was unenforceable due to economic duress.  157 Cal. App. 3d 1154.  Specifically, in that case, the Court of Appeal found defendants acted in bad faith when they offered to pay a "compromise" amount at only a fraction of the full amount billed or if plaintiffs did not accept that compromise, nothing at all.  *Id.* at 1160.  Noting the plaintiffs had "strenuously objected" to defendants' "coercive tactics," the court found they had only succumbed the defendants' pressure to accept the compromise because they were overextended to creditors and subcontractors and thus were faced with imminent bankruptcy and economic disaster.  *Id.* at 1160-61; *see also Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 469 (9th Cir. 1987) (applying California law) ("Economic duress occurs when a person subject to a wrongful act, such as a threat to withhold payment of an acknowledged debt, must succumb to the demands of the wrongdoer or else suffer financial ruin.").

United States District Court
Northern District of California

1    While the Court does not take lightly Plaintiff Leroy's health condition or homelessness—

2  or the difficulty of maintaining multiple court actions—the Court cannot find Plaintiffs' duress

3  argument is a ground on which the Court may overturn the settlement agreement.  Plaintiffs have

4  not shown that Defendants coerced Plaintiffs into accepting the settlement agreement.  No doubt

5  Plaintiffs felt some general pressure to settle this case given the circumstance, but they have not

6  shown that Defendants did something so "coercive to cause a reasonably prudent person faced

7  with no reasonable alternative to succumb to the perpetrator's pressure." *Rich & Whillock*, 157

8  Cal. App. 3d at 1158 (citations omitted).  Although Plaintiffs attempt to argue Defendants

9  unlawfully withheld Plaintiffs' Property and did so under a corrupt receiver (Pls.' Mot. at 15), they

10  have not shown that the receivership on Plaintiffs' Property was unlawful or that they had no

11  reasonable alternative than to enter into the settlement agreement.  Furthermore, this case is

12  distinguishable from *Rich & Whillock* and its progeny in that those cases involve circumstances

13  where a particular agreement was essentially forced on one party and that party would have

14  attempted to repudiate the agreement regardless of how the other party performed.  This case is

15  different.  Plaintiffs had the opportunity to bargain for their agreement, and if Defendants had

16  performed in the way Plaintiffs had hoped, there would be no issue.  Without more, the Court

17  cannot accept Plaintiffs' argument that their alleged duress makes this settlement agreement

18  unenforceable or subject to rescission.

19  **B.      Settlement Term No. 2: Breach, Failure of Consideration, and Voidness**

20    Plaintiffs argue "City Defendants' [sic] violated Settlement Term No. 2 because they failed

21  and refused to sign the stipulation to remove McGrew, and responses [sic] to Plaintiffs' Motion to

22  Remove McGrew in bad faith, [sic] City Defendants' violation is material and grounds for

23  rescission because Plaintiffs have not received the vital consideration of [McGrew's] removal."

24  Pls.' Mot. 8.  Elsewhere, Plaintiffs describe the consideration for the dismissal of the City, Lowell

25  and Aljoe as "[e]ffecting the removal of McGrew [fairly and in good faith], and returning the

26  homeless Plaintiff Leroy with congestive heart failure to his home as soon as possible."  Pls.'

27  Opp'n at 17 (brackets in original).  In response, Defendants assert that while they "appreciate

28  Plaintiffs anticipated the court would grant their McGrew removal motion. . . .  Defendants never

1    promised the motion would be granted. That was up to the court's discretion." Defs.' Mot. at 19.

2    They further argue "[t]he state court rejected the motion to remove McGrew on substance, not

3    because Plaintiffs failed to include a formally signed stipulation." *Id.* at 18.  In essence,

4    Defendants argue that their breach, if any, was immaterial and similarly indicate Plaintiffs

5    understood the risk of their bargain. *Id.* at 18-19, 23.

6              Although there is not a case directly on point, this case implicates two issues that converge

7    to undermine Plaintiffs' rescission arguments: (1) assumption of the risk and (2) immateriality of

8    Defendants' potential breach.  Courts have consistently recognized that "[w]here parties are aware

9    at the time the contract is entered into that a doubt exists in regard to a certain matter and contract

10   on that assumption, the risk of the existence of the doubtful matter is assumed as an element of the

11   bargain." *Guthrie v. Times-Mirror Co.*, 51 Cal. App. 3d 879, 885 (1975) (citations omitted).

12   Additionally, while "[t]he law sensibly recognizes that although every instance of noncompliance

13   with a contract's terms constitutes a breach, not every breach justifies treating the contract as

14   terminated." *Superior Motels, Inc. v. Rinn Motor Hotels, Inc. (Rinn)*, 195 Cal. App. 3d 1032,

15   1051 (1987) (collecting authorities).  Indeed, "courts never say that one who makes a contract fills

16   the measure of his duty by less than full performance. They do say, however, that an omission,

17   both trivial and innocent, will sometimes be atoned for by allowance of the resulting damage, and

18   will not always be the breach of a condition to be followed by a forfeiture." *Id.* (quotation and

19   internal marks omitted).  Following the Restatements of Contracts, California courts allow

20   termination only if the breach can be classified as "material," "substantial," or "total." *Id.*; *see*

21   *also Wyler v. Feuer*, 85 Cal. App. 3d 392, 403-04 (1978) ("a failure of consideration must be

22   'material,' or go to the 'essence' of the contract before rescission is appropriate." (citations

23   omitted)).

24              "Normally the question of whether a breach of an obligation is a material breach . . . is a

25   question of fact," however "'if reasonable minds cannot differ on the issue of materiality, the issue

26   may be resolved as a matter of law.'" *Brown v. Grimes*, 192 Cal. App. 4th 265, 277-78 (2011),

27   (quoting *Ins. Underwriters Clearing House, Inc. v. Natomas Co.*, 184 Cal. App. 3d 1520, 1526-27

28   (1986); additional citations omitted).  "Where the line is to be drawn between the important and

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1  the trivial cannot be settled by a formula . . . . The question is one of degree, . . . . We must weigh

2  the purpose to be served, the desire to be gratified, the excuse for deviation from the letter, the

3  cruelty of enforced adherence . . . ." *Rinn*, 195 Cal. App. 3d at 1051 (quotations omitted).

4  Whether a partial breach of a contract is material depends on "the importance or seriousness

5  thereof and the probability of the injured party getting substantial performance." *Brown*, 192 Cal.

6  App. 4th at 277-78 (quotation and citations omitted); Restatement (First) of Contracts § 275 ("In

7  determining the materiality of a failure fully to perform a promise the following circumstances are

8  influential:[] The extent to which the injured party will obtain the substantial benefit which he

9  could have reasonably anticipated; . . . The extent to which the party failing to perform has already

10 partly performed  . . . The wilful, negligent or innocent behavior of the party failing to perform . . .

11 ."); *see also Rano v. Sipa Press, Inc.*, 987 F.2d 580, 586 (9th Cir. 1993) ("A breach will justify

12 rescission . . . only when it is 'of so material and substantial a nature that [it] affect[s] the very

13 essence of the contract and serve[s] to defeat the object of the parties. . . . .'" (brackets in

14 original)).

15      Likewise, while Plaintiffs are correct that the general rule in California is that "if an

16 'essential element' of a promise is reserved for the future agreement of both parties, the promise

17 gives rise to no legal obligation until such future agreement is made[,]" *City of Los Angeles v.*

18 *Superior Court of Los Angeles County*, 51 Cal. 2d 423, 433 (1959) (citation omitted), the

19 exception to this general rule is where the agreement is "definite in its essential elements" and the

20 agreement to agree concerns only "some minor, nonessential detail."  1 Witkin, Summary of Cal.

21 Law (10th), Contracts ("Witkin") § 146; *see also Provost v. Regents of Univ. of Cal.*, 201 Cal.

22 App. 4th 1289, 1302 (2011) (recognizing that "nonmaterial terms may be negotiated after a basic

23 agreement has been reached." (citation omitted)).  Thus, "[t]he enforceability of a contract

24 containing a promise to agree depends upon the relative importance and the severability of the

25 matter left to the future[.]"  *City of L.A.*, 51 Cal. 2d at 433.  The key inquiry is generally "whether

26 the indefinite promise is so essential to the bargain that inability to enforce that promise strictly

27 according to its terms would make unfair the enforcement of the remainder of the agreement."  *Id.*;

28 *see also Cable & Comput. Tech. Inc. v. Lockheed Sanders, Inc.*, 214 F.3d 1030, 1035 (9th Cir.

1   2000) ("Unlike an agreement to agree, an agreement to use best efforts to achieve a common

2   objective is a closed, discrete, and actionable proposition." (citation omitted)).  "Where the matters

3   left for future agreement are unessential, each party will be forced to accept a reasonable

4   determination of the unsettled point or if possible the unsettled point may be left unperformed and

5   the remainder of the contract be enforced."  *Coleman Eng'g Co. v. N. Am. Aviation, Inc.*, 65 Cal.

6   2d 396, 405 (1966) (quotation omitted); *see also Hennefer v. Butcher*, 182 Cal. App. 3d 492, 500

7   (1986) ("the modern trend of the law favors carrying out the parties' intention through the

8   enforcement of contracts and disfavors holding them unenforceable because of uncertainty."

9   (citations omitted)).

10          Plaintiffs assert "Defendants' refusal to sign the Stipulation is a material breach of the

11   Settlement Term No. 2," (Pls.' Mot at 8), but they have not shown why this was a material breach.

12   Defendants provide evidence that the state court was aware of the stipulation and considered that

13   stipulation in its ruling, albeit acknowledging that "[t]he agreement between the parties as part of

14   the federal action to enter into this stipulation is in no way binding on this Court[.]"  RJN, Ex. D

15   (state court's Order); *see also id.*, Ex. A (Plaintiffs' moving papers in receivership action) at 3:19-

16   20; *id.*, Ex. B (Defendants' opposition in receivership action) at 8:8-15; Ex. C (copy of settlement

17   agreement provided by McGrew in state court action).  Although Plaintiffs attempt to argue that

18   the absence of a formally signed stipulation indicated to the state court that Defendants did not

19   want McGrew removed, they have not shown this to be true and only speculate as to how this may

20   have impacted the state court's opinion.  Indeed, Defendants' proposed order had the state court

21   removing McGrew as the receiver.  Moreover, while Plaintiffs are not happy that Defendants

22   suggested a receiver other than the one they wanted, the fact that Defendants proposed another

23   receiver than McGrew raises a clearer inference that the state court understood Defendants wanted

24   McGrew removed.  Ultimately, Plaintiffs have not shown how the absence of a formally signed

25   stipulation or how Defendants' refusal to sign the exact stipulation prepared by Plaintiffs was a

26   material breach of the parties' settlement agreement.  Thus, objectively, the precise nature of the

27   stipulation was not a material element of the parties' contract.  *See* Witkin § 818 (substantial

28   performance may be found when the defects in performance are such "as may be easily remedied,

so that the promisee may get practically what the contract calls for."); *see also Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 415 (2007) ("[A]s every first-year law student is told, the *quantum* of consideration is generally irrelevant 'as long as it has some value.'" (quotation omitted; emphasis in original)).

Seemingly acknowledging the immateriality of the precise form of the stipulation, Plaintiffs argue Defendants breached the contract because they did not "stipulate to removal of McGrew *for cause* and act accordingly." Pls.' Opp'n at 6 (emphasis in original). Plaintiffs contend "[s]tipulation to remove McGrew *for cause* was material." *Id.* (emphasis in original). But Plaintiffs' argument fails for two reasons. First, the term "for cause"—or anything related to that requirement—is not in the parties' agreement. Plaintiffs have not articulated why this would be considered an implied term of the contract besides arguing that "[a] receiver cannot be removed without cause unless he, himself, stipulates to it. It is unreasonable and legally illogical to stipulate to remove a receiver without cause." *Id.* Plaintiffs provide no legal support or citation for this first contention, and the second contention is based on an assumption. Perhaps Defendants felt McGrew did nothing wrong, but in the interests of assuaging Plaintiffs' concerns agreed to stipulating to his removal. Plaintiffs failed to include the term "for cause" in the settlement agreement or to establish an implied basis for reading this term into the contract. And second, if Plaintiffs thought the "for cause" requirement was a critical aspect of the stipulation, that term was something they could have negotiated for and sought inclusion of in the settlement agreement. Plaintiffs cannot now challenge the existence of mutual consent based on their subjective and unexpressed intent. *See Paymaster Corp.*, 962 F.2d at 856 ("The relevant intent is 'objective'— that is, the intent manifested in the agreement and by surrounding conduct—rather than the subjective beliefs of the parties. . . . For this reason, the true intent of a party is irrelevant if it is unexpressed." (citations omitted)); *Newport Beach*, 109 Cal. App. 4th at 956 ("The parties' undisclosed intent or understanding is irrelevant to contract interpretation."). Moreover, the fact that Plaintiffs actually included in their mediation statement that they sought the stipulation to be "for cause" (Pls.' Opp'n at 6) and then omitted that term in the final settlement agreement further indicates they did not consider this a necessary or material term. This term was something

United States District Court
Northern District of California

15

1   Plaintiffs specifically contemplated going into settlement negotiations, but they did not pursue it in

2   the final agreement.  Plaintiffs have not shown that "for cause" was an actual or implied term of

3   the parties' agreement, let alone that the alleged breach of that term was material.  *See Provost*,

4   201 Cal. App. 4th at 1301 (suggesting that "[i]f it was not part of the stipulated settlement, it

5   cannot be either material or indefinite.").

6          Plaintiffs then attempt to show Defendants frustrated the parties' agreement and breached

7   the covenant of good faith and fair dealing in the way they opposed Plaintiffs' motion to remove

8   McGrew in state court.  Pls.' Mot. at 8-10.  However, Plaintiffs neglect to mention that rather than

9   just seeking McGrew's removal, they actually sought to entirely absolve the receivership as their

10   primary goal—something that was not included in the parties' settlement agreement.

11   Additionally, while Defendants opposed Plaintiffs' motion and affirmatively included their

12   proposed receiver, rather than waiting for the state court to "ask[] the parties for potential

13   receivers" (Settl. Term No. 2), Plaintiffs again have not shown that any of this constituted a

14   material breach or a material failure of consideration.  *See* Witkin § 813; *id.* § 814 ("*Material*

15   failure of consideration discharges the other party's duty" (emphasis in original)).  Again, the state

16   court essentially rejected both Plaintiffs' and Defendants' arguments in ruling on Plaintiffs'

17   motion.  Although Plaintiffs may wish it to be otherwise, none of Defendants' actions appear to

18   have had any impact on the state court's decision.  As Defendants point out:

19              The state court details its reasons for denying Plaintiffs' motion. It
                found it to effectively be an untimely motion for reconsideration
20              from two of the Court's prior order denying removal of the Receiver
                (one dated 10/30/12; the other 11/19/13). See Ex. "F" and "I" to
21              RJN. [footnoted omitted] It noted it had considered a varying
                number of Plaintiffs' exhibits well over 2 years ago, in Plaintiffs'
22              earlier motions. The state court further found many of the supporting
                exhibits lacked foundation and were improperly authenticated, and
23              therefore inadmissible. It further found Plaintiffs were premising
                McGrew's removal upon unrelated events. ("This Court is not
24              inclined to remove Mr. McGrew as a receiver in this case based on
                actions he purportedly took in other cases. Rather, if Defendants
25              seek to remove Mr. McGrew as a receiver in this case, they must
                make a showing - through competent, admissible evidence - that he
26              has breached his obligations to Defendants and to the Court in this
                case.") (Ex. D to RJN).
27

28   Defs.' Mot. at 19.  Having reviewed the state court's decision, there is no indication Defendants'

United States District Court
Northern District of California

actions—which Plaintiffs contend "frustrated" the parties' agreement—actually altered the state court's decision. Moreover, Plaintiffs' own actions appear to have largely created the conditions they now take issue with. There is no indication that even if Defendants had performed perfectly the parties' desire to have McGrew removed would have been gratified by the state court.

Ultimately, there is no objective basis on which the Court can find Defendants' alleged breaches of the contract or covenant of good faith and fair dealing were actually material to the parties' bargain. As previously indicated, the parties contemplated and ultimately assumed the risk as part of their contract that the state court would rule against their stipulation—regardless of how it was written, who the parties proposed as receivers, etc. In such circumstances, where the risk was contemplated and assumed, courts have declined to rescind contracts on such a basis. *See, e.g.*, *In re Acosta*, 182 B.R. 561, 568 (Bankr. N.D. Cal. 1994) (citing *Guthrie*, supra, in finding rescission inappropriate where parties assumed risk of adverse outcome in pending litigation). In short, there was no material failure of consideration here. *See Karz v. Dep't of Prof. & Vocational Standards*, 11 Cal. App. 2d 554, 557 (1936) (acknowledging that "the law is well settled in this state that a person is not entitled to rescind or abandon a contract for an alleged breach of that contract when the breach does not go to the root of the consideration." (citation omitted)). The Court has no basis to rescind the parties' agreement based on Plaintiffs' arguments related to Settlement Term No. 2.

## C.     Settlement Term No. 4: Mistake/Fraud and Breach

Plaintiffs' arguments as to Settlement Term No. 4 are essentially two-fold. First, since Defendants actually performed under Term No. 4 and produced emails showing City Defendants' knowledge of McGrew's misconduct, Plaintiffs have discovered evidence they believe Defendants should have produced earlier, and now Plaintiffs assert there was either a mistake at the time they formed the settlement agreement or their consent was not free "due to City Defendants' fraud of withholding [the documents]." Pls.' Opp'n at 19; Pls.' Mot. at 8-14. Plaintiffs do not assert Defendants made any affirmative representations on which they relied but generally argue Defendants' "silence" amounted to "actual and constructive fraud[] that caused Plaintiffs' ignorance of facts material to the settlement." Pls.' Mot. at 14. They contend the newly produced

1    documents provide "substantial evidence in support of Plaintiffs' Claims and argument that from

2    the beginning of the Receivership, City Defendants intended to improperly deprive Plaintiffs' [sic]

3    of their house, and Plaintiff Leroy of his home, by selling it." *Id.* at 11. Moreover, they contend

4    "[t]he newly discovered facts, if known, would have given Plaintiffs considerable leverage in the

5    settlement negotiations." *Id.*

6         Second, Plaintiffs essentially argue Defendants breached the contract. They point out that

7    the Defendants' production under the agreement did not contain any document after October 2014,

8    and they assert it "is not believable that the documents concerning McGrew after October 2014 do

9    not exist." Pls.' Opp'n at 20; Pls.' Mot. at 8-14. Finally, more recently, Defendants filed a letter

10   with the Court (as a result of a Demand Letter by Plaintiffs), which indicates their response to

11   Term No. 4 was missing a few documents and that Defendant Aljoe regularly deletes her emails

12   and may have deleted emails years ago that if they had still been around today would be

13   responsive to Term No. 4. Defs.' Ltr., Dkt. No. 215.

14        Defendants argue they performed and fulfilled their duties under Term No. 4. Defs.'

15   Opp'n at 12-13, Dkt. No. 196; Defs.' Mot. at 27.

16        1.    <u>Mistake and/or Fraud</u>

17        In California, a "party to a contract may rescind the contract . . . [i]f the consent of the

18   party rescinding, or of any party jointly contracting with him, was given by mistake . . . ." Cal.

19   Civ. Code § 1689(b)(1). The California Supreme Court has adopted section 153 of the Second

20   Restatement of Contracts as California law. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 281 (2001)

21   (adopting Restatement (Second) of Contracts § 153). Section 153 states: "Where a mistake of one

22   party at the time a contract was made as to a basic assumption on which he made the contract has a

23   material effect on the agreed exchange of performances that is adverse to him, the contract is

24   voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and (a)

25   the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b)

26   the other party has reason to know of the mistake or his fault caused the mistake." Restatement

27   (Second) of Contracts § 153.

28        California Civil Code section 1577 defines "mistake of fact" as "a mistake, not caused by

United States District Court
Northern District of California

18

the neglect of a legal duty on the part of the person making the mistake" with one of two elements: (1) "[a]n unconscious ignorance or forgetfulness of a fact past or present, material to the contract;" or (2) "[b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Cal. Civ. Code § 1577. As the California Supreme Court explained, "[w]here the [defendants have] no reason to know of and [do] not cause the [plaintiff's] unilateral mistake of fact, the [plaintiff] must establish the following facts to obtain rescission of the contract: (1) the [plaintiff] made a mistake regarding a basic assumption upon which the [plaintiff] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the [plaintiff]; (3) the [plaintiff] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." *Donovan*, 26 Cal. 4th at 282; *Amin v. Superior Ct.*, 237 Cal. App. 4th 1392, 1402 (2015).

California has adopted and applies section 154 of the Second Restatement of Contracts to determine the allocation of risk in instances of mistake. *Donovan*, 26 Cal. 4th at 283. "Under the Restatement (Second) of Contracts § 154, a party bears the risk of mistake when 'he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient.'" *Nash v. UCSF Med. Ctr.*, 2013 WL 4487503, at *2 (N.D. Cal. Aug. 19, 2013) (quoting *In re Mesatronic USA, Inc.*, 2010 WL 5175024, *2 (Bankr. N.D. Cal. Dec. 6, 2010)). As one court recognized:

> Every time parties enter a contract, they act with incomplete information. They make judgments about the desirability of acquiring (and waiting for) additional information, and of creating specific contractual provisions to handle particular eventualities. Where they have been explicitly concerned about an issue, but decide to press forward without further inquiry or explicit provision, it is reasonable to suppose that they intend the contract to dispose of the risk in question, i.e., to bar any reopening at the behest of the party who, it turns out, would have done better without the contract.

*Amin*, 237 Cal. App. 4th at 1402-03 (quotation omitted); *Stermer v. Bd. of Dental Exam'rs*, 95 Cal. App. 4th 128, 134 (2002) ("the kind of mistake which renders a contract voidable does not include 'mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk.'" (quotation omitted)). Rather, rescission is warranted only

1    when "the subject of uncertainty has not been a concern of the parties, i.e., where the post-contract

2    discovery comes out of left field . . . ." *Amin*, 237 Cal. App. 4th at 1402-03 (quotation omitted).

3            In light of the foregoing, Plaintiffs' mistake arguments are unavailing.  Plaintiffs admit that

4    "[a]t the time of discovery cut-off there were six discovery disputes pending," Pls.' Mot. at 5, 11,

5    but now argue "these documents [] show that Plaintiffs' discovery disputes had merit, and that

6    Plaintiffs were prejudiced by the lack of the foregoing . . . that should have been, but were not

7    produced before the settlement[,]" *id.* at 11.  The fact that Plaintiffs had these outstanding

8    discovery disputes—and indeed contracted to receive documents they might have otherwise

9    acquired through the discovery process—indicates Plaintiffs were conscious of the fact that the

10   information sought could contain information they would find useful against Defendants and

11   nonetheless contracted with Defendants with that risk in mind.  In other words, they treated their

12   "knowledge as sufficient" with regard to Defendants' discovery production.  Further, as noted in

13   *Amin*, rescission is not available if the purported mistake "relate[s] to one of the uncertainties of

14   which the parties were conscious and which it was the purpose of the compromise to resolve and

15   put at rest."  237 Cal. App. 4th at 1402-03 (quotation omitted); *Grenall v. United of Omaha Life*

16   *Ins. Co.*, 165 Cal. App. 4th 188, 193 (2008) ("[a] contracting party bears the risk of a mistake . . .

17   when the party is aware of having only limited knowledge of the facts relating to the mistake but

18   treats this limited knowledge as sufficient." (citations omitted)).

19           Imagine the possible implications of ruling in the manner Plaintiffs urge.  Essentially

20   Plaintiffs posit that where a defendant, to buy his or her freedom from litigation, agrees to settle on

21   the condition of producing information to a plaintiff, that plaintiff should be allowed to rescind the

22   settlement on the basis of the same information produced.  This strikes the court as a run-around

23   of the discovery process and frustrates the nature of settlement agreements in this form.  Nothing

24   required Plaintiffs to abandon their discovery disputes in this litigation.  They were aware the

25   information could be useful to their claims and contracted with that risk (and also the potential

26   benefit as to their litigation against McGrew).  Alternatively, Plaintiffs seem to argue that when

27   parties—albeit represented by counsel and involved in an adversarial relationship—settle a claim,

28   they cannot then be bound by that settlement agreement unless defendants made full disclosure to

United States District Court
Northern District of California

20

United States District Court
Northern District of California

plaintiffs of the detail of all their wrongful acts in connection with the subject matter of the prior litigation prior to settlement.  Plaintiffs have not cited a single case for that proposition.

Moreover, the weight of the case law also suggests against such a finding.  For instance in *A.J. Industries, Inc. v. Ver Halen*, a corporation's directors had accused its president and chairman of the board of using deposits of corporate funds to obtain personal loans, loaning corporate funds to a company which he controlled, and using corporate funds for his personal benefit.  75 Cal. App. 3d 751, 754-55 (1977).  The directors forced the executive to retire, and to resolve possible claims relating to his employment contract, the corporation entered into a settlement agreement with him which contained a mutual release of "all claims, liabilities, and demands of any kind . . . ."  *Id.*  The corporation then filed a complaint seeking to rescind the settlement agreement, arguing it discovered the executive had breached his fiduciary duties and had it known of the executive's dereliction of his duties, it would not have agreed to the settlement.  *Id.* at 756.  The corporation argued the executive's failure to disclose his wrongdoings permitted rescission based on "mistake or constructive fraud."  *Id.* at 758.  The court of appeal affirmed the judgment in favor of the executive, stating: "A settlement contract has the attributes of a judgment in that it serves to bar reopening of the issues settled.  Absent a fundamental defect in the agreement itself the terms are binding on the parties.  A party to a settlement agreement may not seek to rescind it by proving the merits of his original claim and then establishing that an erroneous assessment by him of that claim led to the settlement."  *Id.* at 759 (citations omitted).  Finding no material mistake of fact and no evidence the executive induced the corporation to settle, the court dismissed the complaint.

Other courts have come to the same conclusion where the fraud alleged to justify rescission was the very subject of the settlement and release at issue and part of the parties' bargain.  *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 527-29 (2d Cir. 1985) (dismissing complaints seeking rescission of reinsurance contracts and settlement agreements and rejecting argument that parties who have sought to settle a claim of fraud cannot be bound by a settlement agreement unless the alleged defrauder has made full disclosure to the other party prior to settlement); *Alleghany Corp. v. Kirby*, 333 F.2d 327 (2d Cir. 1964), *aff'd on reh'g*, 340 F.2d 311 (1965), *cert. dismissed*, 384 U.S. 28 (1966) (corporation's suit to set aside prior settlement of

21

United States District Court
Northern District of California

1    stockholders' derivative action on ground that settlement obtained by fraudulent concealment of

2    certain facts dismissed because the same fraudulent conduct gave rise to the prior suit); *see also*

3    *Maron v. Foster Wheeler Corp.*, 1998 WL 574965, at *16 (N.D. Cal. Sept. 4, 1998), *rev'd on*

4    *other grounds*, 211 F.3d 1274 (9th Cir. 2000) (dismissing case where plaintiffs had agreed to settle

5    fraud claim they then sought to re-assert against defendants, noting "[t]he same allegations were

6    made in the course of the dispute that was eventually resolved by the [settlement] Agreement.").

7         Like the cases above, the documents and information Plaintiffs now allege justify

8    rescission involve the same subject matter that was the basis of the suit they chose to settle.  *See*

9    Pls.' Mot. at 11-13; Pls.' Reply at 8-12, Dkt. No. 204.  Plaintiffs essentially argue that the newly

10   obtained information actually validates their claims of conspiracy and fraud, and thus they should

11   be permitted to maintain those claims.  *See id.*; *see also* TAC ¶ 98 (alleging Defendants Lowell,

12   Aljoe, the City, and others "jointly and severally acted, participated in or directed, and agreed and

13   had a meeting of the minds – pursuant to meetings and communications between Defendants . . . –

14   to unreasonably seize plaintiffs' house and personal property . . . and to . . . deny plaintiffs

15   meaningful access to the courts by threats of arrest and fraud on the court.").  But what this

16   demonstrates—and the purported validity of their discovery disputes demonstrates—is that

17   Plaintiffs contracted with the knowledge of what they did not know and in fact with the belief that

18   there was more evidence supporting and validating their claims.  They knew there was a chance

19   the information they contracted for would support and validate their earlier claims in this case, but

20   they chose to instead seek evidence against McGrew.  They did not ask the Court to resolve the

21   discovery disputes before the settlement, but rather decided to move forward without the

22   information, seemingly comfortable with what they did not know.  *See Estate of Hearst*, 2014 WL

23   7152356, at *6 (Cal. Ct. App. Dec. 16, 2014)[5] (rejecting arguments that rescission was available

24   because respondents thwarted petitioner's attempts during discovery to obtain information, noting

25   petitioner "could have moved to compel discovery responses," but "opted instead for mediation

26

27   _____

     [5] Federal courts may consider unpublished state cases as persuasive authority.  *See Emp'rs Ins. of*
28   *Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

and settlement.").

Ultimately, Plaintiffs contracted for the settlement they received—they knew the risk that the information they bargained for could validate their claims and that they were settling without the discovery they otherwise thought was important to their claims.[6]  The Court thus finds no grounds for rescinding the settlement agreement based on fraud or mistake.

2.      Breach

Plaintiffs' final argument as to Term No. 4 is essentially that Defendants breached the contract.  Specifically, they point out that Defendants did not provide any documents after October 2014, and it "is not believable that the documents concerning McGrew after October 2014 do not exist."  Pls.' Opp'n at 20; Pls.' Mot. at 8-14 ("City Defendants' production is also suspiciously lacking in Documents related to McGrew for Nov.-Dec. 2014, and the year 2015."); Pls.' Reply at 10 ("the Settlement Term No. 4 production did not include any documents later than Oct. 2015. . . . It is not believable that there are no McGrew related documents after this time."); Schwartz Decl. ¶ 15 ("No documents were produced that are dated after October 2014.").

More recently, Defendants' counsel filed a letter with the Court, which indicates Defendants' response to Term No. 4 was missing several documents.  *See* Defs.' Ltr.  They filed this letter in response to a demand letter by Plaintiffs, which first called Defendants' attention to the fact that McGrew, in the state court action, had produced documents that seemingly should have been, but were not, in Defendants' Term No. 4 production.  *Id.*, Ex. A.  In their letter, Defendants note Defendant Aljoe regularly deletes her emails and may have deleted emails years ago that, if they had still been around today, would be responsive to Term No. 4.  *Id.*  They further explain that Aljoe probably deleted the newly discovered emails before this lawsuit was filed or any discovery served.  *Id.*  Additionally, while none of those emails are from after October 2014, there is one document from April 2015, Bates No. 02143, which concerns McGrew.  *Id.*, Ex. C (emails).  Defendants' counsel acknowledges that the City provided him with that document and two other emails, stating: "[i]n my document review that has produced approximately 1,200 pages

---

[6] As discussed above, while Plaintiffs attempt to argue they were under duress at the time of signing the agreement, ultimately they have not provided evidence to support that contention.

United States District Court
Northern District of California

of material, I missed these three pages. I apologize to both the Court and Plaintiffs' counsel." *Id.*

Days after Defendants filed this letter, Plaintiffs' counsel filed a Request for Supplemental

Briefing, arguing this development supports their positions as to the Motions to Rescind and

Enforce.  Dkt. No. 217.  They indicate that the missing documents identified in Defendants' letter

are not the only documents McGrew produced that Defendants should have.  *Id.*; *see also* Dkt. No.

218, Ex. 1 (letter from Plaintiffs' Counsel to Defendants' counsel outlining concerns over

Defendants' production in light of recently acquired documents from McGrew).

        Plaintiffs do not seek to enforce Settlement Term No. 4, but rather argue that Defendants'

performance on this term justifies rescission.  The Court has reviewed Plaintiffs' Request for

Supplemental Briefing and its supporting documents.  The Court understands that Plaintiffs have

misgivings about Defendants' performance under Term No. 4, and the Court agrees that

Defendants' performance has been substandard.  The Court has admonished parties for missing

fewer documents in much larger document productions.  But ultimately the Court does not agree

that this development provides grounds for rescinding the agreement.  As discussed at length

above, Plaintiffs bargained for what essentially is discovery.  But there is no mistake here as they

knew that they were trading the traditional discovery process for the terms of their agreement.[7]

This was a risk they assumed.  Thus, the appropriate way to resolve Plaintiffs' dispute is not to

tear down the settlement agreement but rather to enforce it according to the parties' bargain.

        As discussed below in the section concerning Defendants' Motion to Enforce, the Court

will enforce the parties' agreement in the sense that it will Order Defendants to (1) search for all

---

[7] Plaintiffs assert a number of arguments about how they were prejudiced in negotiations with Defendants based on the idea that Defendants basically knew Aljoe had deleted emails and that Plaintiffs did not get all the discovery they had asked for in their prior discovery requests.  All of these arguments go to the notion of mistake.  But as discussed above, this mistake was an inherent, assumed risk of the parties' agreement, and there is no indication Defendants fraudulently induced Plaintiffs into accepting the agreement.  Plaintiffs contracted for whatever Defendants had in response to Term No. 4—and they have largely received the benefit of that bargain, even if it did not result in the outcome they had hoped.  The Court also cannot ignore that, as part of their agreement, Plaintiffs reserved "the right to make a Public Records Act Request under California law upon dismissal of the settling Defendants."  Settl. Term No. 4.  This indicates they were aware of and contemplated the possibility of an imperfect production under Term No. 4.

United States District Court
Northern District of California

documents that may be responsive to Term No. 4, (2) produce those documents to Plaintiffs within a reasonable time, and (3) file declarations under the penalty of perjury confirming they have done so.  The third point, while not in the parties' agreement, is used to satisfy the Court's enforcement of Term No. 4.  But the Court finds nothing about Defendants' actions as to Term No. 4 that justifies rescission.

**D.     Whether the Public Interest Will be Damaged if the Settlement is Not Rescinded**

As a final argument, Plaintiffs assert the "public interest will be damaged by permitting the agreement to stand."  Pls.' Mot at 16 (citing Cal. Civ. Code § 1689(b)(6)).  They contend "[t]he public interest in the maintenance of lawful and ethical receiverships requires the Settlement Agreement be rescinded as to the city Defendants."  *Id.*  This appears to be based on their contention that Defendants "remain[ed] silent as to McGrew's misconduct" and because Plaintiffs contend Defendants had a "duty to remove McGrew on their own motion."  *Id.*  In their Reply, Plaintiffs clarify that "[t]he public interest doesn't favor a corrupt receiver kept in office by public entity attorneys who remain silent as to the receiver's misconduct, who withhold documents material to settlement, and subvert the receiver's removal pursuant to the Settlement Terms."  Pls.' Reply at 14.  Defendants respond by noting, "Plaintiffs omit the Receiver works at behest of the state court; and that the other incidents [of McGrew's alleged misconduct] . . . are not necessarily grounds to remove McGrew in the instance action[,]" pointing out that the state court has consistently rejected Plaintiffs' attempts to remove McGrew.  Defs.' Opp'n at 22. Neither side cites any case law in support of their positions.

Ultimately, the Court finds no grounds for rescinding the agreement in the name of the public interest.  While generally the Court agrees with Plaintiffs that Defendants' actions in relation to McGrew's receivership do not appear in the best interests of the goals of that particular receivership or receiverships in general, this settlement agreement does not implicate the public interest in a particularized way.  There is no indication that if the Court did not rescind the agreement that public would be harmed—the agreement neither involves a large number of people nor any effects to persons outside the parties to the settlement agreement.  There are no potential health, environmental, financial, or governmental concerns implicated by the settlement

United States District Court
Northern District of California

agreement, and to the extent there is concern about actions Defendants have taken in the state court, there is no indication that the state court is not perfectly capable of making its own determinations about the propriety of Defendants' actions.  The greater public interest here is encouraging settlement agreements.  Indeed, public policy "wisely encourages settlements," *see McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994), and strongly favors enforcement of settlement agreements.  *Jeff D.*, 899 F.2d at 759.

Accordingly, the Court finds no grounds for rescinding the settlement agreement.

## MOTION TO ENFORCE

Having determined that Plaintiffs have raised no grounds for rescinding the settlement agreement, the Court now addresses whether the agreement may be enforced.  To be enforceable, a settlement must meet two requirements.  First, it must be a completed agreement.  *Callie*, 829 F.2d at 890-91.  Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute.  *Harrop*, 550 F.2d at 1144-45.[8]

The settlement agreement in this case meets both requirements.  It was memorialized and executed by all parties to the settlement agreement and, by all objective indications, those parties intended to agree to its terms.  *See id.*; *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976) (consent is judged objectively); *see also Doi v. Halekulani Corp.*, 276 F.3d 1131, 1141 (9th Cir. 2002) (noting that often "[a]t some point in the process, one party concludes that a final agreement has been reached; the other party, however, disagrees" and acknowledging that the court "can understand how a party could dispute having made a binding agreement in such a case[,]" but

---

[8] Although an evidentiary hearing is required "[w]here material facts concerning the existence or terms of an agreement to settle are in dispute," no hearing is necessary here because the terms set forth in the original settlement agreement are unambiguous, leaving no material facts in dispute. *See Callie*, 829 F.2d at 890 (finding district court abused its discretion of not holding a hearing to determine whether (1) the parties intended only to be bound upon the execution of a written, signed agreement, where no agreement was ultimately executed; and (2) the parties had agreed on a particular material, disputed term).  This case is different from *Callie* as the parties' agreement was memorialized and signed, and as the Court has found above, while some of the terms of the agreement were left for future determination, there is no indication those terms were essential.  *See City of L.A.*, 51 Cal. 2d at 433.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  finding the concern invalid where the parties expressed their agreement in open court).  Moreover,

2  as indicated in the analysis as to Plaintiffs' Motion to Rescind, the parties' contract has all the

3  essential elements: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and, (4)

4  sufficient cause or consideration.  Cal. Civ. Code § 1550.  The settlement agreement itself further

5  demonstrates each element of the parties' contract: "It identifie[s] the parties, facially evidence[s]

6  mutual consent, ha[s] a lawful object of resolving litigation, and contain[s] mutual promises

7  (sufficient consideration)."  *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005)

8  (footnote omitted).

9      Plaintiffs raise virtually all the same arguments in opposition to Defendants' Motion to

10  Enforce the settlement (*see generally* Pls.' Opp'n) as they did with regard to their Motion to

11  Rescind, but as discussed above, the Court has found that none of those arguments justify finding

12  the agreement unenforceable.  The only argument Plaintiffs raise with more clarity in their

13  Opposition is that enforcement of the agreement would be unconscionable.  Pls.' Opp'n at 2, 6, 9.

14  They only develop that argument in their Reply to their Motion to Rescind.  *See* Pls.' Reply at 4-6.

15      "An unconscionable contract ordinarily involves both a procedural and substantive

16  element: (1) oppression or surprise due to unequal bargaining power, and (2) overly harsh or one-

17  sided results."  *Donovan*, 26 Cal. 4th at 291 (citation omitted).  As one court explained:

18  > Unconscionability has both procedural and substantive elements.
19  > "'The procedural element focuses on two factors: "oppression" and
   > "surprise." . . . "Oppression" arises from an inequality of bargaining
20  > power which results in no real negotiation and "an absence of
   > meaningful choice." . . . "Surprise" involves the extent to which the
21  > supposedly agreed-upon terms of the bargain are hidden in the
   > prolix printed form drafted by the party seeking to enforce the
22  > disputed terms.'"  [Quotations omitted]  Substantive
   > unconscionability refers to overly harsh or unjustifiable one-sided
23  > results.  A contract is largely an allocation of risks between the
   > parties.  A contractual term is substantively suspect if, viewed at the
24  > time the contract was formed, it allocates the risks in an
   > unreasonable or unexpected manner.

25  *Zullo v. Superior Ct.*, 197 Cal. App. 4th 477, 484 (2011).  "Both forms of unconscionability must

26  be present in order to invalidate a contract for unconscionability but they need not be present in

27  equal parts."  *Id.*; *see also A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 487 (1982)

28  ("unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification'

27

United States District Court
Northern District of California

1    for it. . . . which is only to say that substantive unconscionability must be evaluated as of the time

2    the contract was made." (quotations omitted)).

3           Plaintiffs have not shown they were oppressed or surprised due to unequal bargaining

4    power.  They attended mediation with a neutral mediator and bargained for the terms of their

5    contract.  "During that conference, Plaintiff[s] had options other than to settle; specifically,

6    Plaintiff[s] could have proceeded with the litigation against defendants or demanded a higher

7    settlement amount."  *Rios v. Paramo*, 2015 WL 8492500, at *6 (S.D. Cal. Dec. 10, 2015).

8    Plaintiffs instead chose to settle in exchange for Defendants' agreement to (1) pay Plaintiffs

9    $50,000 within a date certain; (2) seek no more than $150/hour for the City's attorney-fee

10   recovery in the state-court abatement action; (3) stipulate to McGrew's removal as Receiver in the

11   state-court action; and (4) further search for any non-privileged communications regarding

12   McGrew.  The allocation of the risks in this bargain was expected, i.e., the possibility that the

13   stipulation would not be in the exact form Plaintiffs submitted to Defendants and the possibility

14   that the state court would not accept the parties' stipulation.  There was also the risk that

15   Defendants' performance of Term No. 4 would reveal information Plaintiffs might have found

16   useful against the settling Defendants.  While Plaintiffs argue "[t]he result of being forced to

17   perform an existing duty of [] Defendants unreasonably favorable to [] Defendants," Pls.' Reply at

18   5, they chose to engage in the settlement process as opposed to using the procedures in this Court

19   and the procedures in state court to accomplish their goals.  Unlike many adhesion contracts or

20   any other of the numerous contracts found to be unconscionable, here Plaintiffs bargained for the

21   contract they made—the allocation of risk was not unexpected or unreasonable.  Finally, while the

22   Court has some concerns about the way Defendants have performed under Term No. 4, there is no

23   indication that if the Court enforced the parties' agreement as it was originally established, it

24   would be unconscionable as to Plaintiffs.

25          Having reviewed the parties' arguments and evidence, the Court finds the parties entered

26   into an enforceable settlement agreement, and the Court will enforce that agreement.  In doing so,

27   as discussed above, the Court will also specifically ensure Defendants comply with Term No. 4.

28   //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="margin-left: auto;">

**CONCLUSION**

In light of the foregoing, the Court **DENIES** Plaintiffs' Motion to Rescind the settlement agreement and **GRANTS** Defendants' Motion to Enforce the settlement agreement.[9]  However, in doing so, the Court shall also enforce the agreement against Defendants to ensure they have complied with Settlement Term No. 4.  Accordingly, the Court **ORDERS** as follows:

(1) Defendants shall *again* review *all* of their communications regarding McGrew;

(2) Within a reasonable time period, i.e., the next 60 days, Defendants shall produce to Plaintiffs any non-privileged documents related to Receiver McGrew; and

(3) To ensure that Defendants have complied with their duties under the settlement agreement, within one week following their production to Plaintiffs (i.e., by August 22, 2016), each Defendant (and a representative for the City), shall file a declaration under the penalty of perjury attesting to their complete review and production of non-privileged communications related to Receiver McGrew.

(4) When the Court is satisfied that Defendants have complied with Term No. 4, the Court shall dismiss them.[10]

**IT IS SO ORDERED.**

Dated: June 15, 2016

_____

MARIA-ELENA JAMES
United States Magistrate Judge

</div>

_____

[9] The Court also notes Plaintiffs filed an Ex Parte Application to File a Sur-reply (Dkt. No. 207) and supporting declaration (Dkt. Nos. 207-2).  The Court reviewed Plaintiffs' Application and the attached Sur-reply (Dkt. No. 207-1), and although the information contained in the Sur-reply is not of much use in assessing the parties' arguments, the Court nevertheless shall allow it and the supporting declaration to be included as part of the record as it potentially involves some new evidence, and Defendants have filed objections and responded to Plaintiffs' arguments in these documents (Dkt. No. 210).  The Court thus **GRANTS** the Application to File the Sur-reply and the supporting declaration; however, as the documents are already in the record (*see* Dkt. Nos. 207-(1-2)), no further filing is necessary.

[10] The foregoing order in no way alters the parties' agreement that "Plaintiffs reserve the right to make a Public Records Act Request under California law upon dismissal of the settling defendants[.]"  Settl. Term No. 4.