1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    THOMAS A. SPITZER, et al.,              Case No.  13-cv-05442-MEJ

            Plaintiffs,
8                                            **ORDER RE: MOTION TO ALTER OR**
9        v.                                  **AMEND THE JUDGMENT OR FOR**
                                             **RELIEF FROM JUDGMENT**
10   TRISHA A. ALJOE, et al.,
                                             Re: Dkt. No. 237
            Defendants.
11

12

13          Plaintiffs Thomas "Leroy" Spitzer and Craig J. Spitzer (collectively, "Plaintiffs") move for

14   relief from judgment under Federal Rules of Civil Procedure ("Rules") 59(e) and 60(b).  Mot.,

15   Dkt. No. 237.  Two days before they filed this Motion, Plaintiffs appealed to the Ninth Circuit

16   Court of Appeals.  Notice of Appeal, Dkt. No. 236.  The Court heard Plaintiffs' Motion on

17   December 1, 2016.  Dkt. No. 225.  Having considered the parties' positions, the relevant legal

18   authority, and the record in this case, the Court **DENIES** Plaintiffs' Motion for the following

19   reasons.

20                                    **LEGAL STANDARD**

21          Under Federal Rule of Civil Procedure 59(e), "[r]econsideration is appropriate if the

22   district court (1) is presented with newly discovered evidence, (2) committed clear error or the

23   initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law."

24   *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc. (Multnomah Cty.)*, 5 F.3d 1255, 1263 (9th

25   Cir. 1993) (citation omitted).  "[A] Rule 59(e) motion is an 'extraordinary remedy, to be used

26   sparingly in the interests of finality and conservation of judicial resources.'" *Wood v. Ryan*, 759

27   F.3d 1117, 1121 (9th Cir.), *cert. denied*, 135 S. Ct. 21 (2014) (quoting *Kona Enters., Inc. v. Estate*

28   *of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

*United States District Court*
*Northern District of California*

Federal Rule of Civil Procedure 60(b) provides for reconsideration of a judgment where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief.   Fed. R. Civ. P. 60(b).  Relief under Rule 60(b)(6)—"any other reason justifying relief"—requires a party to "show 'extraordinary circumstances,'" such as circumstances showing "the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 393 (1993) (citations omitted).  Such relief "normally will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests." *United States v. Alpine Land & Reservoir Co.*, 984 F. 2d 1047, 1049 (9th Cir. 1993).

"Rule 59(e) permits a court to alter or amend judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (internal quotation marks omitted).  A party seeking reconsideration under either Rule 59 or Rule 60 must do more than rehash arguments or raise contentions that could have been considered prior to the challenged judgment.  *See Young v. Peery*, 163 F. Supp. 3d 751, 753 (N.D. Cal. Nov. 24, 2015); *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1130-31 (E.D. Cal. Mar. 13, 2001).

**DISCUSSION - MCGREW**

**A.    Overview**

Plaintiffs seek relief from the "6/15/16 Order denying leave to file 4th Amended Complaint as to McGrew, Doc. No 220" and the "4/6/165 Order denying Plaintiffs' Motion for leave to file 3rd Amended Complaint as to McGrew, Doc. No. 96."  Mot. at 2 (error in original). The Superior Court of Alameda County appointed J. Benjamin McGrew as receiver to oversee the abatement proceedings of Plaintiffs' property in Pleasanton, California (the "Property").  Plaintiff asserted claims against McGrew under 42 U.S.C. § 1983, alleging McGrew had unlawfully seized Plaintiff Leroy Spitzer's personal property without due process in furtherance of an "overall unlawful conspiracy" to unreasonably seize and deprive Plaintiffs of the Property and personal

2

property without due process of law.  As indicated, the Court has given Plaintiffs multiple opportunities to amend their Complaint to assert claims against McGrew.

McGrew initially moved to dismiss Plaintiffs' claims against him.  The Court granted that motion on June 30, 2014, finding that it lacked jurisdiction over McGrew because Plaintiffs had failed to satisfy a necessary precondition to the initiation of suit against him; namely, securing the Superior Court's permission to do so.  Order at 5-6, Dkt. No. 44 ("The requirement that a party obtain leave from the appointing court before suing a receiver in another venue "'is long-standing.'"  *Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*, 585 F.3d 1211, 1216 (9th Cir. 2009) (quoting *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 945 (9th Cir. 2002)); also citing *Barton v. Barbour*, 104 U.S. 126, 131 (1881) ("*Barton*")).  The Court also considered Plaintiffs' argument that they are not required to obtain permission because they are suing McGrew in his personal capacity.  But after considering Plaintiffs' asserted allegations against McGrew, the Court found all the allegations pertained to McGrew's receivership duties and were therefore not personal in nature.  *Id.* at 6-7 ("[T]he Court finds that Plaintiffs' allegations  fail to establish that any of McGrew's alleged acts or omissions came outside the scope of his statutory powers and the orders of the appointing court.").

On July 23, 2014, Plaintiffs brought a Motion to Alter the Court's Order dismissing McGrew.  Dkt. No. 55.  The Court denied that motion, finding Plaintiffs had failed to comply with the Local Rules and had failed to present any newly discovered evidence or to otherwise elucidate an error of law.  Dkt. No. 59.  The Court noted that "[a]s to the issue of clear error, Plaintiffs argue that the Court's findings regarding the need to seek leave of the superior court are erroneous because: (1) McGrew acted beyond the scope of his authority; and (2) the *Barton* rule should not be applied to claims under 42 U.S.C. § 1983. . . .  However, Plaintiffs raised these same arguments in their Opposition brief, and the Court considered them when ruling on McGrew's Motion to Dismiss."  *Id.* at 3.  As the Court pointed out then, "[e]ven if Plaintiffs disagree with the Court's ruling, re-litigating the same issues is improper."  *See, e.g.*, *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) ("Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought through—rightly or

United States District Court
Northern District of California

1    wrongly.").

2         Plaintiffs then filed a Motion for Leave to File a Third Amended Complaint ("TAC")

3    seeking to re-assert claims against McGrew (Dkt. No. 72), which the Court denied (TAC Order,

4    Dkt. No. 96).[1]  The Court found it lacked jurisdiction over McGrew because Plaintiffs failed to

5    secure leave of the appointing court to sue McGrew as required by *Barton*, and because Plaintiffs'

6    allegations failed to establish McGrew's alleged acts or omissions fell outside the scope of his

7    statutory powers or the orders of the appointing court.  *Id.*  The Court noted "Plaintiffs

8    reincorporated virtually all of the same facts and claims previously dismissed by the Court[,]" and

9    the new claims still "implicate this Court's earlier order finding that the Court lacks jurisdiction to

10   hear claims against McGrew that arise out of his duties as the court-appointed receiver where

11   Plaintiffs have not received leave to sue from the appointing court."  *Id.* at 27.

12        On September 1, 2015, Plaintiffs proceeded to file another Motion for Leave to File a

13   Motion for Reconsideration with respect to the Court's TAC Order as to claims against McGrew.

14   Dkt. No. 139; *see* Dkt. No. 96.  Alternatively, Plaintiffs sought leave to file a motion for leave to

15   amend their complaint to re-assert claims against McGrew.  Dkt. No. 139.  McGrew did not

16   respond to the motion.  The Court denied Plaintiffs' Motion for Leave to File a Motion for

17   Reconsideration but granted Plaintiffs' Motion for Leave to File a Motion for Leave to Amend.

18   Dkt. No. 145; *Spitzer v. Aljoe*, 2015 WL 5737199, at *2 (N.D. Cal. Oct. 1, 2015).  In doing so, the

19   Court recognized Plaintiff had new counsel, who might be able to allege new or different facts

20   showing how McGrew acted outside the scope of his duties.  In an abundance of caution, the

21   Court permitted Plaintiffs to file their Motion for Leave to Amend.  This was over a year after the

22   Court dismissed McGrew from this action.

23        Plaintiffs filed their Motion for Leave to File a Fourth Amended Complaint on November

24   30, 2015.  Dkt. No. 154.  They attached a 70-page proposed Fourth Amended Complaint, plus

25   numerous exhibits.  *See* Fourth Am. Compl., Dkt. No. 156-1.  After carefully considering their

26   Motion and the proposed Fourth Amended Complaint, the Court denied the Motion noting:

27   _____

28   [1] Plaintiffs also sought leave to amend to add claims against other Defendants, which the Court
     granted in part.  *See* TAC Order.

United States District Court
Northern District of California

While there is no question Plaintiffs adequately allege McGrew performed his duties poorly, there are no facts demonstrating that this Court could rightfully exercise jurisdiction over McGrew for his actions taken pursuant to his receivership duties.  The Alameda County Superior Court appointed McGrew as the receiver for Plaintiffs' property at issue in this case, and that court has not granted Plaintiff permission to sue its appointed receiver in this Court, removing any jurisdiction this Court may have over Plaintiffs' claims as alleged.  *See Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*, 585 F.3d 1211, 1216 (9th Cir. 2009) . . . .  Having reviewed Plaintiffs' proposed Fourth Amended Complaint, Plaintiffs have not shown the claims they seek to assert fall outside of the *Barton* doctrine, for instance by alleging facts that if proven show McGrew acted outside the scope of his receivership duties.  Like Plaintiffs' previous complaints and proposed complaints, the proposed Fourth Amended Complaint simply alleges facts indicating McGrew performed his duties poorly or badly.

Additionally, as the Court has previously noted, "a receiver appointed by a state court" is likewise entitled to "absolute derivative quasi-judicial immunity."  *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1303 (9th Cir. 1989) (noting that "cases from other circuits have held uniformly that state court-appointed receivers are entitled to absolute immunity" based on "the premise that 'receivers are court officers who share the immunity awarded to judges.'" (quoting *Kermit Constr. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 2 (1st Cir. 1976))).  The *New Alaska* court held a receiver is not entitled to judicial immunity if the receiver's alleged acts are not "intimately connected with his receivership duties." *Id.* at 1304 (receiver not entitled to immunity where he had "improperly retained [plaintiff's] assets long after [the state court] entered the final [judgment]").  A plaintiff who seeks to overcome the presumption of judicial immunity is therefore "required to allege" plausible facts demonstrating "the absence of judicial immunity," or the court must dismiss the case.  *Id.* at 1303 (further noting allegations that receiver negligently managed assets and charged inappropriate fees were "matters that [plaintiff] should have pursued before [state court judge who appointed receiver]").

Order re: Fourth Am. Compl. at 3, Dkt. No. 220.  The Court found that "[t]he proposed Fourth Amended Complaint includes a variety of new allegations about McGrew's actions in other cases and other character evidence" prohibited from consideration under Federal Rule of Evidence 404.  The Court ultimately found the proposed amendment did not "allege meaningfully new or different facts to overcome either *Barton*'s jurisdictional bar or the immunity associated with McGrew as a state-court appointed receiver."  *Id.* at 4.  In sum, "[t]he state court appointed McGrew, and the state court properly exercises jurisdiction over the matters related to his conduct taken in acting out his receivership duties." *Id.* (citing *Bennett v. Williams*, 892 F.2d 822, 825 (9th

1  Cir. 1989) ('[Plaintiff] is not remediless, for he retains his action against [the receiver] in state

2  court.'))."

3     Plaintiffs now move for relief from these Orders and final judgment.

4  **B.     Requests for Judicial Notice**

5     Before addressing the merits of Plaintiffs' Motion, the Court first addresses McGrew's and

6  Plaintiffs' requests for judicial notice ("RJN").  McGrew RJN, Dkt. No. 253; Pls.' RJN, Dkt. No.

7  260.

8     1.     McGrew's RJN

9     At the hearing, the Court asked McGrew to file a document the parties discussed during

10  oral argument, but which had not been made part of the record, specifically, an order entered by

11  the Superior Court of Alameda County on March 7, 2015.  McGrew complied with the Court's

12  request and requested the Court take judicial notice of the Superior Court's "March 7, 2015 Orders

13  on Respondents' Motions (1) to Vacate Receiver's Recorded Deed of Trust and Certificate of

14  Indebtedness No. 2, and (2) for Orders Permitting Suit Against Receiver McGrew and Declaratory

15  Judgment Concerning McGrew's Appearance in Federal Court" (the March 7, 2015 Order")

16  McGrew RJN at 1.

17     Notwithstanding the fact that the Court specifically requested McGrew file the State Court

18  Order, Plaintiffs object to McGrew's RJN.  Opp'n to RJN, Dkt. No. 259.[2]  Specifically, Plaintiffs

19  _____

20  [2] McGrew's RJN set off a rash of filings by Plaintiffs, who filed four separate sets of objections,
    all of which contain identical arguments.  *See* Dkt. Nos. 256-59.  The third objection (Dkt. No.

21  258) purports to correct the first (Dkt. No. 256), but not the second (*see* Dkt. No. 257).  *See* Dkt.
    Text re: Dkt. No. 256 ("Objections to Receiver McGrew's Request for Judicial Notice -

22  CORRECTION OF DOCKET 256: *OBJECTION TO REQUEST FOR JUDICIAL NOTICE
    FILED BY DEFENDANT MCGREW*" (capitalization and emphasis in original)).  The second

23  objection (Dkt. No. 257) differs only in that it includes as an exhibit Plaintiffs' "Motion to Vacate
    Receiver's Recorded Deed of Trust and Certificate of Indebtedness No. 2 with Memorandum of

24  Points of Authorities" (*see* Mot. to Vacate, Ex. 1, Dkt. No. 257), but Plaintiffs do not in that
    document request the Court take judicial notice of that exhibit.  Two days later, Plaintiffs filed a

25  yet another—their fourth—set of objections to McGrew's RJN.  Dkt. No. 259.  The fourth
    objection is identical to the previous three.  *Compare* Dkt. No. 259 *with* Dkt. Nos. 256-58.

26
27  Given the duplicative nature of these four sets of objections, the Court considers only Docket No.
    259 and **STRIKES** Docket Nos. 256, 257, and 258.  In the future, Plaintiffs should consider

28  whether their contemplated filings further the "just, speedy, and inexpensive determination of

United States District Court
Northern District of California

argue that the March 7, 2015 Order (1) is "misleading and unfair" because it "gives the impression that the court gave prior approval to issue a receiver's certificate with a power-of-sale" when it ostensibly did not (*id.* at 2 (citing March 7, 2015 Order at 3)); and (2) does not approve the deed of trust (*id.* at 4-5).

As the March 7, 2015 Order is a matter of public record, the Court **GRANTS** McGrew's request and takes judicial notice of it.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, [ ] including documents on file in federal or state courts." (internal citation omitted)).  Plaintiffs do not contest the authenticity of the March 7, 2015 Order or contend the document is not an accurate copy of the public record at issue.  Rather, Plaintiffs' objections appear to concern McGrew's interpretation of the March 7, 2015 Order and the issue of whether that order validly approved the deed of trust. *See* Opp'n to RJN at 2-5.  The Court overrules Plaintiffs' objections.  *See Deal v. Countrywide Home Loans, Inc.*, 2013 WL 3157914, at *1 (N.D. Cal. June 20, 2013) (granting defendant's request for judicial notice where plaintiff objected to request for judicial notice on ground that documents contained hearsay statements but did not challenge documents' authenticity); *Warner v. CMG Mortg. Inc*, 2015 WL 7454151, at *1 n.2 (N.D. Cal. Nov. 24, 2015) (granting request for judicial notice over objections that "turn[ed] on plaintiff's interpretation of their legal force, not their authenticity" and where objector "d[id] not claim the documents submitted are not accurate copies of the public records in question.").  In noting the existence of the March 7, 2015 Order, the Court does not purport to accept either Plaintiffs' or McGrew's interpretations of the documents.

2.   Plaintiffs' RJN

Plaintiffs request the Court take judicial notice of four documents: (1) "1/22/2015 Notice of Motion and Defendants' Motion to Vacate Receiver's Recorded Deed of Trust and Certificate of Indebtedness No. 2 with Memorandum of Points and Authorities" (*see* Dkt. No. 260-1 at ECF p.2-33); (2) "2/26/2014 Order on Receiver's Motion for Order Authorizing Receiver to Borrow Funds and Issue Receiver's Certificate" (*id.* at ECF p.35-36); (3) "9/18/2012 Order after Hearing

every action and proceeding."  Fed. R. Civ. P. 1.

United States District Court
Northern District of California

1   Confirming Appointment of Receiver" (*id.* at ECF p.38-43); and (4) "Plaintiffs' Notice and

2   Motion to Alter or Amend the Judgment and for Relief from Judgment; Memorandum of Points

3   and Authorities in Support, Doc. No, [sic] 237, ECF pgs. 20-21" (*id.* at ECF p.45-46).

4           The Court **STRIKES** Plaintiffs' RJN to the extent it seeks judicial notice of the instant

5   Motion, as it is already part of the record.[3]  And because this Order does not rely on the other

6   documents in Plaintiffs' RJN, the Court **DENIES AS MOOT** Plaintiffs' request as to them.

7   **C.     Analysis**

8           Amending judgment is an "extraordinary remedy," *Allstate Insurance Co. v. Herron*, 634

9   F.3d 1101, 1113 (9th Cir. 2011), and Rule 59(e) "may not be used to relitigate old matters, or to

10  raise arguments or present evidence that could have been made prior to the entry of judgment,"

11  *Exxon Shipping*, 554 U.S. at 485 n.5.  Nor is such rehashing of argument appropriate under a Rule

12  60 motion.  *See Young*, 163 F. Supp. 3d at 753; *Westlands Water Dist.*, 134 F. Supp. 2d at 1131.

13          As an initial matter, the Court finds that all of Plaintiffs' arguments or evidence either were

14  or could have been presented in Plaintiffs' prior briefings.  Plaintiffs' dissatisfaction with the

15  Court's ruling on arguments the parties already presented is not a valid basis for a motion under

16  Rule 59(e) or Rule 60(b).  This alone is a sufficient reason to deny the present Motion.

17          Nonetheless, the Court considers Plaintiffs' arguments related to allegedly new evidence

18  and asserted errors of law, including (1) new evidence showing "McGrew was under the

19  supervision of Aljoe not the receivership court" and therefore "was acting outside the scope of his

20  authority" (Mot. at 8); (2) "new McGrew documents have led to the discovery of five additional

21  contemporaneous receivership cases in which McGrew has been removed for misconduct, making

22  a total of ten known cases" showing he "is not competent or qualified to be a receiver" and "is not

23  immune from misconduct" (*id.* (emphasis omitted)); (3) "new McGrew documents contain

24  evidence of a usurious loan secured by an unlawful deed of trust, both being beyond the scope of

25  _____

26  [3] It is also improper for Plaintiffs to use a RJN to emphasize portions of their Motion when the
   Motion has been fully briefed.  *See* Pls.' RJN at 2 (requesting judicial notice of the Motion,

27  "[s]pecifically, subsection 2: 'The Court's evidentiary objection to McGrew' record of removal for
   misconduct, sanctions, findings of contempt, and money judgments against him in his personal

28  capacity in other cases is a mistake[.]'" (quoting Mot. at 8)).

United States District Court
Northern District of California

McGrew's authority, and in violation of Plaintiffs' property rights" (*id.* at 8-9); (4) an alleged mistake of law and/or fact based on the Court's prior finding that "Plaintiffs' evidence of McGrew's removal for misconduct and judgments against him in other cases is irrelevant and inadmissible 'character evidence' under Federal Rules of Evidence ('FRCP' [sic]) 404. See 6/15/16 Order, Doc. No. 404, at 2:22- 3:1-4" (*id.* at 14); (5) an error of law to hold McGrew to be entitled to any sort of immunity (*id.* at 15-19); and (6) an error of law to apply *Barton* to Plaintiffs' § 1983 allegations (*id.* at 19-20). Ultimately, the Court finds none of these arguments support overturning its prior Orders.

### 1. No Clear Error of Law

First, Plaintiffs have not shown the *Barton* doctrine is inapplicable. Although they have raised this same argument on numerous occasions (*see, e.g.*, Dkt. No. 42 at 2-6; Dkt. No. 55 at 8-9; Dkt. No. 139 at 4-8), they have not shown *Barton* is inapplicable or that it should not apply in this case. *See Hunt v. Horwitz, Cron & Armstrong LLP*, 2013 WL 3449051, at *3-4 (C.D. Cal. July 8, 2013) (citing *Barton* doctrine in finding court lacked jurisdiction over defendants alleged to have violated § 1983, noting "plaintiff's remedy is via the appeals process, not a collateral attack to their ongoing bankruptcy proceedings"), *aff'd on other grounds*, 599 F. App'x 691 (9th Cir. 2015). And contrary to Plaintiffs' arguments, this Court has never held *Barton* to be a "bright line barrier" (Mot. at 20); rather, the Court has consistently held that Plaintiffs need only allege how McGrew's alleged acts or omissions *in this case* went outside the scope of his statutory powers and the orders of the appointing court.[4] Ultimately, despite multiple opportunities to do so, Plaintiffs have failed to include such allegations in their pleadings and proposed pleadings.[5]

---

[4] Plaintiffs' argument that *Barton* requires an equitable exception is unnecessary given the exception already built into the *Barton* analysis.

[5] In a footnote and in their Reply, Plaintiffs argue the Court failed to consider the receivership court's finding that McGrew violated the order appointing him when he executed a contract without prior court approval. *See* Mot. at 16 n.7; Reply to McGrew Opp'n at 2, Dkt. No. 249; *see* Ex. E at 2 (Nov. 19, 2013 Order Denying Pls.' Mot. to Discharge Receiver), Dkt. No. 239-1. But the receivership court ultimately

> d[id] not find that the Receiver has engaged in malfeasance, dishonesty, or fraud, or that he is biased. Nor d[id] the [c]ourt find

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Second, this Court, like several others, has relied on the Ninth Circuit's decision in *New

2  Alaska Development Corp. v. Guetschow* for the proposition that a receiver appointed by a state

3  court is entitled to immunity in § 1983 cases, unless the receiver "acted in the clear absence of

4  jurisdiction."  869 F.2d 1298, 1303-04 (9th Cir. 1989)[6]; *see, e.g.*, *Ghosh v. City of Berkeley*, 2015

5  WL 3509297, at *4 (N.D. Cal. June 3, 2015) (adopting same); *Appleton v. Cty. of Sacramento*,

6  2006 WL 624894, at *4-5 (E.D. Cal. Mar. 9, 2006) (adopting same).  Plaintiffs now contend (1)

7  that *New Alaska* has been "implicitly overruled by U.S. Supreme Court and 9th Cases related to

8  quasi-judicial immunity" (Mot. at 16-17 (error in original)); but (2) it is error for the Court not to

9  follow *New Alaska* and *Lebbos v. Superior Court Judges*, 883 F.2d 810, 818 (9th Cir. 1989), both

10  of which Plaintiffs contend "hold[] that a state court receiver lacks immunity for violation of a

11  receivership defendants' constitutional rights in the performance of his duties" (Mot. at 17-18).

12  McGrew does not address these purported legal errors in his Opposition.

13  As to Plaintiffs' first argument, the Court does not agree that *New Alaska* has been

14  overruled.  Plaintiffs cite the following case law in support of their argument that *New Alaska* was

15  overruled:

16   *Antoine v. Byers & Anderson Co.*, 508 U.S. 429, 432-433, 435-436
    (1993) (The application of quasi-judicial immunity depends "on the

17   immunity historically accorded the relevant official at common law
    and the interests behind it . . . Even actions taken with court

18   approval or under a court's direction are not in and of themselves

19

20   that the Receiver wasted or converted Respondents' personal
    property; to the contrary, he allowed [Plaintiffs] approximately six

21   months of access to the subject property to remove any items of
    personal property they chose.

22

23  *Id.* at 3 (emphasis added).  Even if "[i]t is apparent on the face of the Order appointing the receiver

24  . . . that the receiver was not given jurisdiction and authority over Plaintiffs' valuable personal
    property" (Reply to McGrew Opp'n at 2), the Court did not err in concluding that Plaintiffs'

25  evidence regarding McGrew and the contract alone do not show that McGrew unlawfully deprived
    Plaintiffs of their personal property.

26  [6] "The . . . receiver functions as an arm of the court by making decisions about the operation of a

27  business that the judge otherwise would have to make. A receiver operates a business only because
    the court has directed him to do so in connection with a case pending before the court."  *New*

28  *Alaska*, 869 F.2d at 1303 n.6.

entitled to quasi-judicial, absolute immunity"); *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) ("[I]n determining immunity, we examine the nature of the function performed, not the identity of the actor who performed it"). *Curry v. Castillo* (*In re Castillo*) 297 F. 3d 940, 948 (9th Cir. 2002) ("In *Antoine*, the Supreme Court worked a sea change in the way in which we are to examine absolute quasi-judicial immunity. The Court announced that absolute quasi-judicial immunity will be extended to nonjudicial officers only if they perform official duties that are functionally comparable to those of judges, i.e., duties that involve the exercise of discretion in resolving disputes"); *Miller v. Gamie*, 335 F. 3d 889, 897 (9th Cir. 2003) (en banc) ("The relation of the action to a judicial proceeding . . . is no longer a relevant standard").

Mot. at 16-17 (errors in original). But *New Alaska* does not accord the sort of broad immunity to receivers Plaintiffs posit. *See id.* at 17. Indeed, *New Alaska* did not hold that receivers necessarily are subject to immunity; rather, it states that courts "start with the premise that 'receivers are court officers who share the immunity awarded to judges.'" 869 F.2d at 1303 (internal quotation marks and citations omitted). And "[t]o limit the harassment of receivers 'as quickly as possible,' a plaintiff is required to allege the absence of judicial immunity" by showing the "the judge's ultimate actions were not judicial or beyond the scope of the court's jurisdiction" requires dismissal. *Id.* (internal quotation marks omitted). Neither *New Alaska* nor the Court's prior Orders stand for the broad proposition that because someone is a court-appointed receiver, that person is automatically immune from suit. On the contrary, the immunity determination is made based on a review of the defendant's actions and scope of authority, not their mere title or position.

*Lebbos*' and *New Alaska*'s determinations that the court-appointed receivers in those cases were subject federal claims are not dispositive in this case. In *New Alaska*, the Ninth Circuit affirmed the district court's judgment in the receiver's favor under an immunity theory as to appellants' claims that he improperly exercised jurisdiction over New Alaska's assets, charged unreasonable fees, and mismanaged New Alaska during the underlying proceedings, noting "it constitutes a waste of precious judicial and party resources to pursue matters such as these in a collateral proceeding[.]" 869 F.2d at 1304. While the *New Alaska* court allowed some other claims to proceed, the associated allegations for those claims indicated the receiver "acted in the clear absence of jurisdiction" and acts of theft and slander, which are not judicial functions. *Id.* at

United States District Court
Northern District of California

11

1304-05.  Again, the inquiry was whether "plaintiff . . . allege[d] the absence of judicial

immunity[,]" i.e., "that the judge's ultimate actions were not judicial or beyond the scope of the

court's jurisdiction."  *Id.* at 1303 (quotation omitted).  Thus, the issue remains whether Plaintiffs

alleged facts demonstrating this; the Court found on each occasion it reviewed Plaintiffs'

pleadings or proposed pleadings they had not.  This is consistent with the Ninth Circuit's inquiry

in *New Alaska*.  As to *Lebbos*, that case considered the "*Younger* abstention doctrine," not quasi-

judicial immunity issues.  *See* 883 F.2d at 811.  There was no discussion of whether McGrew's

actions were taken pursuant to a court order or within the scope of the appointing court's

jurisdiction.  Plaintiffs have not shown this Court's Orders were clear error based on either of

these cases.

Finally, as to the consideration of McGrew's conduct in other cases, which the Court

declined to consider as character evidence, the Court also finds no clear error.  Plaintiffs

essentially argue their conclusory allegations of bad faith and misconduct are plausible because

McGrew was sanctioned and removed in other cases for misconduct; therefore, they conclude, he

must have committed some misconduct in this case.  *See* Mot. at 14-15; *see also* Proposed Fourth

Am. Compl. ¶¶ 124-26 (alleging "McGrew is an alcoholic, and that his alcoholism or his use of

alcohol caused or contributed to the cause of his misconduct pleaded herein.").  Using past

conduct for such a purpose contravenes Federal Rule of Evidence 404(b)(1), which provides

"[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order

to show that on a particular occasion the person acted in accordance with the character."  Fed. R.

Evid. 404(b)(1).  Evidence about McGrew's sanctions and removals in other cases is also not

"habit" evidence.  *See Henderson v. Prado*, 2007 WL 1229330, at *2 (N.D. Cal. Apr. 24, 2007).

Nor is it evidence of motive or plan; "[w]hen plaintiffs' theory is stripped of its 'semantic

camouflage,' all that remains is an attempt to establish [McGrew's] propensity" to commit

misconduct.  *Id.* (quoting *Clark v. Martinez*, 295 F.3d 809, 813 (8th Cir. 2002)).  And even if

Plaintiffs are correct this evidence shows McGrew "is not competent or qualified to be a receiver"

in the first place, it does not show that in *this* case he acted outside the scope of his court-ordered

duties when he became the receiver of the Property.  Ultimately, Plaintiffs' only relevant argument

United States District Court
Northern District of California

concerning these other cases is that where a state court appointed McGrew as the receiver, the state court was able to address the concerns about him and enter "money judgments . . . against McGrew in his personal capacity."  Mot. at 15 (emphasis omitted).  As the Court has repeatedly noted, Plaintiffs have a remedy for their concerns in state court.

In sum, the Court perceives no clear legal error justifying alteration of its prior orders.

2.     No New Evidence

The Court discusses the purportedly "new evidence" in turn.  First, as to "the discovery of five additional contemporaneous receivership cases in which McGrew has been removed for misconduct," (Mot. at 8), as discussed above, the Court does not find any of that evidence relevant to the matter of how McGrew acted in this case and whether he acted outside the scope of his court-ordered receivership duties.  Plaintiffs' contention that "[t]his evidence . . . shows McGrew . . . *is not immune from suit for misconduct*" is misguided.  *Id.* (emphasis in original).  Nor does it indicate that McGrew should be denied immunity; McGrew is not necessarily subject to the Court's jurisdiction simply because he has been amenable to suit in state court.  On the other hand, these cases indicate the state court is capable of handling Plaintiffs' claims of misconduct.

Second, as to the new evidence showing "McGrew was under the supervision of Aljoe not the receivership court[,]" the Court has reviewed this evidence and does not find that it shows he "was acting outside the scope of his authority" as Plaintiffs argue.  *Id.*  Plaintiffs have not demonstrated how McGrew was acting outside the authority of the receivership court.  Rather, the email Plaintiffs emphasize in their Notice of Motion (*id.* at 1-2) indicates the City of Pleasanton's Special Counsel Trisha A. Aljoe was asking McGrew to perform his court-ordered receivership duties, not go outside of them.  In any event, the evidence Plaintiffs cite does not show the state court was no longer supervising McGrew's conduct.  *See id.* at 7 (discussing various communications "primarily from Aljoe and McGrew").

Finally, Plaintiffs contend the "new McGrew documents contain evidence of a usurious loan secured by an unlawful deed of trust, both being beyond the scope of McGrew's authority, and in violation of Plaintiffs' property rights[.]"  *Id.* at 8-9.  Specifically, they assert "[t]he new McGrew documents also contain new evidence in support of Plaintiffs' claim that McGrew

13

1    unlawfully seized title to Plaintiffs' real property by signing and recording an unlawful deed of

2    trust unlawfully granting title [to be held by a trustee] to Plaintiffs' house to lenders as security for

3    the loan McGrew obtained from them to repair Plaintiffs' house.[] The new evidence shows that

4    the loan was usurious, and that the unlawful deed of trust was the lender's condition for the loan."

5    *Id.* at 9 (footnote omitted).[7]  They argue the loan was "usurious under the California Constitution

6    and statutory law because it did not involve more than a pro forma letter from a registered real

7    estate agent."  *Id.* at 3.

8           The Court does not find this evidence justifies overturning its prior Orders.  This is the first

9    time Plaintiffs have contended the loan was usurious.  But Plaintiffs did not explain why this

10   evidence was unavailable to them before the Court issued its Orders.  *See Dixon v. Wallowa Cty.*,

11   336 F.3d 1013, 1022 (9th Cir. 2003) ("To justify an amendment, [movant] must also show that the

12   evidence was discovered after the judgment, that the evidence could not be discovered earlier

13   through due diligence, and that the newly discovered evidence is of such a magnitude that had the

14   court known of it earlier, the outcome would likely have been different.").  And in fact, it appears

15   this information was available to Plaintiffs several months prior to their filing the instant Motion.

16   At the hearing, Plaintiffs explained they obtained evidence of the allegedly usurious loan in April

17   2016 after additional document production, but a lack of resources prevented them from promptly

18   reviewing those documents.[8]  However, it also appears Plaintiffs had knowledge of the loan and

19

20   ───────────────────

21   [7] In a footnote, Plaintiffs identify a misstatement by the Court about the deed of trust.  *See* Mot. at
     3.  Plaintiffs take this misstatement out of context and argue the Court must reconsider its prior
     orders because it has misunderstood their claims.  This is plainly not the case—the rest of the
22   Order identifies this allegation just as Plaintiffs describe it here and on prior occasions.  *See* TAC
     Order at 4, 31 (noting among other things, "Plaintiffs allege that McGrew acted outside the scope
23   of his authority by recording a Deed of Trust on May 28, 2014").

24   [8] At the hearing, Plaintiffs indicated the Court's Order prohibited further briefing, which prevented
     them raising the issue of the allegedly usurious loan prior to this Motion.  Plaintiffs appear to
25   reference the Order Regarding the Motion to Rescind and Motion to Enforce the Settlement.  *See*
     Order re: Settlement at 29 n.9, Dkt. No. 222.  But that Order did not prohibit Plaintiffs from filing
26   *any* briefs; it stated only that Plaintiff did not need to refile their Sur-reply.  *See id.* ("The Court
     thus **GRANTS** the Application to File the Sur-reply and the supporting declaration; however, as
27   the documents are already in the record (*see* Dkt. Nos. 207-(1-2)), no further filing is necessary.").

28

14

United States District Court
Northern District of California

1    the interest rate charged on that loan as early as February 2015, when they brought a motion

2    before the receivership court to "[v]acate Receiver's Certificate of Indebtedness." *See* March 7,

3    2015 State Court Order at 1.  The state court noted that at the February 17, 2015 hearing on the

4    motion that "agents for the lenders testified that the interest rates and points charged for the

5    subject loan are standard for high risk loans of the type at issue in this case." *Id.* at 4; *see also*

6    *Bonner v. Redwood Mortg. Corp.*, 2010 WL 1267069, at *9 (N.D. Cal. Mar. 29, 2010) ("There are

7    four essential  elements of usury: "(1) the transaction must be a loan or forbearance of the use of

8    money; (2) the loan or forbearance must be made by a non-exempt lender and in a nonexempt

9    transaction; (3) the interest received by the lender must be in excess of the statutory maximum rate

10   that is applicable to the transaction; and (4) the lender must have a willful intent to enter a usurious

11   transaction." (quoting *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994)).  It thus appears that

12   Plaintiffs knew or should have known about a usury claim before this point.  Accordingly, the

13   Court finds this is not new evidence that justifies amendment.

**DISCUSSION – THE CITY DEFENDANTS**

15        Plaintiffs also move for relief from the "8/26/16 Order denying Plaintiffs' Motion for Stay,

16   Doc. No. 234" and "6/15/16 Order denying Plaintiffs' Motion to Rescind Settlement and Granting

17   Defendants Motion to Enforce Settlement, Doc. No. 222."  Mot. at 2.

18   **A.    Overview**

19        Despite Plaintiffs' unsuccessful efforts to sue McGrew, they proceeded against the City of

20   Pleasanton, Aljoe, Jonathan P. Lowell, George Thomas, Walter Wickboldt, and City of Pleasanton

21   Police Officer Ryan Tujague and Sergeant Robert Leong (collectively, the "City Defendants").

22   *See* TAC, Dkt. No. 98.  Plaintiffs and the City Defendants engaged in private mediation and

23   reached a settlement on August 7, 2015.  *See* Certification of Mediation, Dkt. No. 149.  On

24   November 6, 2015, the Court granted the parties' Application for Good Faith Settlement.  Dkt.

25   No. 152.  But the parties' agreement was short-lived.  On March 31, 2016, the City Defendants

26   filed a Motion to Enforce and Plaintiffs filed a Motion to Rescind the Settlement.  Mot. to

27

28

1    Enforce, Dkt. No. 183; Mot. to Rescind, Dkt. No. 188.[9]

2          In their Motion to Rescind, Plaintiffs argued the City Defendants violated Settlement Term

3    Nos. 2 and 4.[10]  Mot. to Rescind at 8-16; *see* Settlement Terms ¶¶ 2 & 4, Ex. A, Schwartz Decl.

4    Plaintiffs contended the City Defendants violated Term No. 2 by refusing to sign Plaintiffs'

5    stipulation removing McGrew as receiver (the "Stipulation"), opposing in bad faith Plaintiffs'

6    Motion to remove McGrew, and failing to acknowledge "the misconduct of McGrew in Plaintiffs'

7    receivership action, and multiple other cases, and the damages that misconduct caused Plaintiffs."

8    Mot. to Rescind at 8-9.  Plaintiffs also argued that the documents the City Defendants produced in

9    response to Term No. 4 should have been produced before settlement and that the City

10   Defendants' failure to do so prejudiced Plaintiffs during negotiations. *Id.* at 11-13.  The City

11   Defendants' "silence" constituted "actual and constructive fraud[] that caused Plaintiffs' ignorance

12   of facts material to the settlement."  Mot. to Rescind at 14.  In their Opposition to the City

13   Defendants' Motion to Enforce, Plaintiffs further alleged the City Defendants breached Term No.

14   _____

15   [9] Plaintiffs separately filed their Notice of Motion to Set Aside the Settlement (Dkt. No. 187) and
     Memorandum of Points and Authorities (Dkt. No. 188), in violation of Civil Local Rule 7-2(b).

16   For purposes of this Order, citations to "Mot. to Rescind" refers to Plaintiffs' Memorandum of
     Points and Authorities.

17

18   [10] Settlement Term No. 2 states

19            Defendants will sign a stipulation prepared by Plaintiffs and
              acceptable to Defendants for McGrew's removal as receiver in the
20            state-court abatement action, and request the state court appoint a
              qualified receiver.  Defendants will consider Plaintiffs' proposed
21            receiver (Edwin Heath).  If Defendants consider him materially
              unqualified, they will notify the Court.  If the Court asks the parties
22            for potential receivers, Defendants will submit names for
              consideration.  The parties will leave it to the Court's discretion to
23            appoint the new receiver[.]

24   Settlement Terms ¶ 2.  Settlement Term No. 4 provides

25            Defendant will look again for any non-privileged communications
              regarding Receiver McGrew.  Upon conclusions of Defendants'
26            review, they will contact Plaintiffs' counsel and either: (1) provide
              him additional documents; or (2) inform him no such documents
27            exist.  Plaintiffs reserve the right to make a Public Records Act
              Request under California law upon dismissal of the settling
28   *Id.* ¶ 4.   defendants herein[.]

United States District Court
Northern District of California

4 by not producing "any documents after October 2014" given that "[i]t is not believable that documents concerning McGrew after October 2014 do not exist."  Dkt. No. 200 at 20.

The Court denied Plaintiffs' Motion to Rescind and granted the City Defendants' Motion to Enforce.  *See* Order re: Settlement.  The Court found the City Defendants' refusal to sign the Stipulation and their opposition to Plaintiffs' state court motion to terminate McGrew's receivership did not constitute a material breach of Term No. 2, and thus did not provide a basis to rescind the Settlement.  *Id.* at 11-17.  As to Term No. 4, the Court rejected the notion that Plaintiffs' discovery of evidence that allegedly should have been produced before settlement constituted grounds for rescission.  *Id.* at 17-23.  The Court found that Plaintiffs negotiated and reached the Settlement while six discovery disputes were pending; in so doing, they settled with full knowledge that resolution of those disputes could lead to useful evidence against the City Defendants.  *Id.* at 20.  Because Plaintiffs were aware of and assumed this risk, the Court concluded there was no evidence of mistake or fraud when the parties settled to justify rescission.  *Id.*  And, while the City Defendants' performance of Term No. 4 was less than ideal, it did not constitute a material breach.  *Id*. at 23-25.  "Plaintiffs bargained for what essentially is discovery. But there is no mistake here as they knew that they were trading the traditional discovery process for the terms of their agreement."  *Id.* at 24.  As such, the Court determined it was more appropriate to enforce the bargained-for terms of the Settlement as written, rather than rescind it.  *Id.*  The Court held it would dismiss the City Defendants once it was satisfied they had complied with Term No. 4.  *Id.* at 29.

In an effort to avoid dismissal, Plaintiffs moved to stay the Settlement Order for six months.  Mot. to Stay, Dkt. No. 230.  The Court denied that motion, as it had already considered Plaintiffs' arguments in its Settlement Order, the state court proceedings did not warrant a stay in this case, and Plaintiffs' objections regarding the sufficiency of the declarations were unconvincing.  Order Denying Mot. to Stay at 2, Dkt. No. 234.  Satisfied the City Defendants had fulfilled their obligations under Term No. 4, the Court dismissed them with prejudice.  Order Denying Mot. to Stay at 2.

//

United States District Court
Northern District of California

**B.      Analysis**

As a preliminary matter, the City Defendants argue the Court cannot consider Plaintiffs'

Rule 60(b) motion because Plaintiffs' appeal, filed prior to the instant Motion, divested the Court

of jurisdiction over the matter.  City Defs.' Opp'n at 10, Dkt. No. 245.  But Federal Rule of

Appellate Procedure 4 provides that

> If a party files a notice of appeal after the court announces or enters
> a judgment--but before it disposes of any motion listed in Rule
> 4(a)(4)(A)--the notice becomes effective to appeal a judgment or
> order, in whole or in part, when the order disposing of the last such
> remaining motion is entered.

Fed. R. App. P. 4(a)(4)(B)(i).  One of the motions listed in Rule 4(a)(4)(A) is motion for relief

under Rule 60(b) if the motion is filed no later than 28 days after the judgment is entered.

Plaintiffs filed their Rule 60 Motion 27 days after the Court issued its judgment on September 22,

2016.  Thus, the Court retains jurisdiction to consider the merits of their Motion despite Plaintiffs'

appeal.

Nonetheless, the Court notes that Plaintiffs' arguments regarding the City Defendants

again are largely ones that have already been litigated.  Plaintiffs' arguments relate to new

evidence (1) produced in response to Settlement Term No. 4 that support "Plaintiffs' conspiracy

claims . . . against defendants Aljoe, Lowell, City of Pleasanton, and McGrew" (Mot. at 7); (2) of

the City Defendants' bad faith, fraud, and misrepresentation regarding the Settlement's

procurement and execution (*id.* at 9-11); and (3) that the City Defendants fraudulently and in bad

faith executed Settlement Term No. 2 (*id.* at 11-12).  Plaintiffs further contend that extraordinary

relief is justified under Rule 60(b)(6) to protect the public's interests and to deter future

misconduct .  *Id.* at 21-22.  Having considered Plaintiffs' arguments, the Court ultimately finds no

basis for amendment.

1.      <u>No New Evidence</u>

Plaintiffs argue that emails the City Defendants produced in response to Settlement Term

No. 4 provide new evidence that is "relevant and material to proof of [and amendment of]

Plaintiffs' conspiracy claims in this Court against defendants Aljoe, Lowell, City of Pleasanton,

and McGrew."  Mot. at 7 (errors and brackets in original).

Plaintiffs and the City Defendants settled while there were six outstanding discovery disputes, a fact known to Plaintiffs.  *See* Mot. to Rescind at 5 ("At the time of discovery cut-off there were six discovery disputes pending.").  Plaintiffs nonetheless settled their claims against the City Defendants.  This was a calculated move: "Plaintiffs' settlement strategy was to settle with the City and pursue McGrew. [] The purpose of Settlement Term 4 was to provide evidence to support the planned motion to amend as to McGrew.  It appears the Court has failed to apprehend this point."  Reply to City Defs.' Opp'n at 7 n.1 (citation omitted).  But Plaintiffs had the opportunity to acquire these documents through the resolution of their discovery disputes; they instead made a strategic decision to voluntarily forgo the discovery process and proceed with settlement in the hopes of obtaining documents to support their claims against McGrew.  That Settlement Term No. 4 also produced "new" evidence that ostensibly supports Plaintiffs' conspiracy claims against the City Defendants does not mandate amendment; this was a risk they assumed in the bargain.

Plaintiffs argue that "[p]art of the basis of the Court's judgment is the Court's speculation that discovery dispute letters would have produced the 8/12/2016 documents.  There is no basis for that speculation."  Reply to City Defs.' Opp'n at 6.  Plaintiffs posit that "[b]ased on City Defendants' past performance, Plaintiffs' [sic] reasonably figured that pursuing the discovery disputes would be fruitless, or would produce only pro forma not substantive results as represented by the 8/12/2016 production."  *Id.*  Plaintiffs assumed a certain response from the City Defendants, and acted in accordance with that assumption.  While Plaintiffs could have resolved the discovery disputes before settling—or waited to see if the City Defendants would comply with an order to produce, if any—they chose a different route.  That they deliberately proceeded without these documents and discovered them in response to the settlement, does not meet it is now new evidence that was previously unavailable to them.

Nor is this a mistake that justifies amendment under Rule 60(b)(1).  "Rule 60(b)(1) is not intended to remedy the effects of a litigation decision that a party later comes to regret through subsequently-gained knowledge that corrects the erroneous legal advice of counsel.  For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of

themselves and their chosen counsel." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101

(9th Cir. 2006).  Plaintiffs' choice to focus on McGrew, despite the possibility they could learn

new facts about the City Defendants, is a litigation strategy by which they are bound.

   2. <u>No Fraud, Misrepresentation, or Misconduct</u>

  Plaintiffs also fail to show the City Defendants engaged in fraud, misrepresentation, or

misconduct.  Plaintiffs argue that they "would not have settled if they properly had possession of

the new Settlement Term 4 evidence before Settlement." Mot. at 11.  But Rule 60(b)(3) "requires

that fraud not be discoverable by due diligence before or during the proceedings." *Casey v.

Albertson's Inc*., 362 F.3d 1254, 1260 (9th Cir. 2004) (internal quotation marks and edits omitted).

As the Court previously noted,

> [t]he fact that Plaintiffs had these outstanding discovery disputes—
> and indeed contracted to receive documents they might have
> otherwise acquired through the discovery process—indicates
> Plaintiffs were conscious of the fact that the information sought
> could contain information they would find useful against Defendants
> and nonetheless contracted with Defendants with that risk in mind.

Order re: Settlement at 20.  The City Defendants' alleged fraud—i.e, withholding material

documents prior to settlement negotiations—was clearly known to Plaintiffs at the time, yet they

made the decision to settle nonetheless.  Plaintiffs cannot now claim that the fact that they

willingly settled without possessing all documents means the City Defendants acted fraudulently.

  Nor is there evidence the City Defendants fraudulently executed the terms of the

Settlement.  Plaintiffs' dissatisfaction with the City Defendants' performance in response to

Settlement Term No. 4 has been noted several times in this and prior briefings.  *See* Mot. at 12;

Mot. to Stay at 4-5; Mot. to Rescind at 12.  According to Plaintiffs, "[i]t should go without saying

that Plaintiffs bargained for timely full production pursuant to Settlement Term 4." Reply to City

Defs.' Opp'n at 7, Dkt. No. 248.

  "Failure to disclose or produce materials requested in discovery can constitute

'misconduct' within the purview of this subsection." *Jones v. Aero/Chem Corp.*, 921 F.2d 875,

879 (9th Cir. 1990) (citation omitted).  But the City Defendants did not produce these documents

through discovery; they did so in accordance with the settlement.  As the Court noted previously,

United States District Court<br>Northern District of California

1    Plaintiffs "knew that they were trading the traditional discovery process for the terms of their

2    agreement." Order re: Settlement at 24. Moreover, the Settlement did not impose a deadline for

3    production. *See* Settlement Terms ¶ 4. As such, even if production occurred later than Plaintiffs

4    anticipated, that does not mean the City Defendants did not comply with the Term, let alone

5    engaged in fraud or misconduct.

6        3.    Relief under Rule 60(b)(6)

7        Plaintiffs further urge the Court grant relief under Rule 60(b)(6). Mot. at 21-22. Plaintiffs

8    argue such relief is necessary because (1) the public has an interest in "just and fair receiverships

9    involving elderly citizens and their paid for [sic] homes" and (2) denying relief would ratify the

10   City Defendants' "pleaded misconduct . . . in the receivership action" and "spoliation of evidence

11   and the fraud, misrepresentation, and other misconduct related to it[.]" *Id.*

12       Rule 60(b)(6) allows a court to "relieve a party or its legal representative from a final

13   judgment, order, or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P.

14   60(b)(6). But relief under Rule 60(b)(6) is permitted only where the movant demonstrates

15   "extraordinary circumstances prevented [it] from taking timely action to prevent or correct an

16   erroneous judgment." *Latshaw*, 452 F.3d at 1104. Thus, "a party who moves for such relief must

17   demonstrate both injury and circumstances beyond his control that prevented him from proceeding

18   with the action in a proper fashion." *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 941 (9th Cir. 2007)

19   (internal quotation marks and ellipses omitted).

20       Ultimately, Plaintiffs have not shown that extraordinary circumstances justify relief under

21   Rule 60(b)(6). First, the Court declines to grant relief in the name of public interest. Rule

22   60(b)(6) does not articulate specific factors that justify relief. *See United States v. State of*

23   *Washington*, 98 F.3d 1159, 1163 (9th Cir. 1996). Nonetheless, the Ninth Circuit has suggested

24   that courts in this circuit do not recognize "public interest" as a factor that constitutes

25   "extraordinary circumstances" justifying relief under Rule 60(b)(6). *See Miller v. Pacific*

26   *Micronesia Corp.*, 31 F. App'x 481, 482 (9th Cir. 2002) ("The [movant's] 'extraordinary

27   circumstances' consist merely of a 'public interest' factor, unrecognized in this circuit . . . ."). In

28   any event, there is no indication that the public would be harmed if the Court does not grant relief.

United States District Court
Northern District of California

Plaintiffs assert, without citation, that "[r]eceivership actions pursuant to the California State Housing Law receivership statute [H&S Code 17980.7] are now being newly applied by California municipalities against paid-for owner-occupied single-family homes without tenants." Mot. at 21-22 (second brackets in original).  According to Plaintiffs, "[t]his case is an example of the potential for exploitation of the receivership statute by Cities, private attorneys, and receivers that should be curtailed, especially because it involves abuse of the fundamental right of a person to be secure in his home; and fraud, misrepresentation and other misconduct by officers of the court." *Id.* at 22.  The mere fact that municipalities are bringing receivership actions, as Plaintiffs allege, does not warrant relief in this case.  Even if there is a "potential for exploitation"—and assuming "potential" exploitation justified amendment—there is nothing to suggest that the state court presiding over those matters is not capable of protecting homeowners' rights.

Second, Plaintiffs' arguments that failure to grant relief will improperly ratify the City Defendants' conduct are likewise unpersuasive.  Plaintiffs cite no cases supporting their proposition that this constitutes "extraordinary circumstances" that justifies relief under Rule 60(b)(6).  Moreover, as Plaintiffs themselves note, any "ratification" would concern "*pleaded* misconduct." Mot. at 22 (emphasis added).  The Court never ruled on the merits of Plaintiffs' claims or made any findings regarding Plaintiffs' allegations of misconduct or spoliation of evidence.  Denying Plaintiffs relief thus would not necessarily encourage misconduct.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion.  Plaintiffs have not presented any new arguments or evidence demonstrating relief is warranted under either Rule 59(e) or 60(b).

**IT IS SO ORDERED.**

Dated: December 12, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

22